IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SARAH WALKER,

       Plaintiff,

vs.                                                  No. CIV 09-0060 JB/RLP

THI of NEW MEXICO at Hobbs Center d/b/a
HOBBS HEALTH CARE CENTER, DIANA
MELTON, JAIME ANDUJO, DEBBIE
LOTHRIDGE, KAREN HOOD, THI OF NEW
MEXICO, LLC, FUNDAMENTAL CLINICAL
CONSULTING, LLC, AND FUNDAMENTAL
ADMINISTRATIVE SERVICES, LLC,

       Defendants,

and

THI of NEW MEXICO AT HOBBS CENTER,
LLC, THI OF NEW MEXICO, LLC,
FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC, AND FUNDAMENTAL
CLINICAL CONSULTING, LLC,

       Counter-Plaintiffs,

vs.

SARAH WALKER,

       Counter-Defendant.

**ADDENDUM TO ANSWERS, STATING COUNTERCLAIM FOR MALICIOUS ABUSE
OF PROCESS AND PUNITIVE DAMAGES IN RESPONSE TO SECOND AMENDED
COMPLAINT**

As a matter of right under Federal Rule of Civil Procedure 15(a)(1)(A), Defendants THI

of New Mexico at Hobbs Center, LLC ("Hobbs"), THI of New Mexico, LLC ("THINM"),

Fundamental Administrative Services, LLC ("FAS"), and Fundamental Clinical Consulting, LLC ("FCC") (collectively, "Counter-Plaintiffs"), within 21 days of having filed Answers (respectively, Docs. 153, 152, 143, and 149) to Plaintiff Sarah Walker ("Walker")'s Second Amended Complaint ("SAC") (Doc. 142), hereby amend such Answers with this Addendum, to state the following counterclaim under Federal Rule of Civil Procedure 13.

### PARTIES AND JURISDICTION

1. Counter-Plaintiffs bring this Counterclaim pursuant to the common-law of New Mexico regarding Malicious Abuse of Process ("MAP") and Punitive Damages. Counter-Plaintiffs contend that Walker has initiated judicial proceedings against Counter-Plaintiffs. Walker, directly and/or indirectly, through her authorized agents, filed claims without probable cause and engaged in acts in the use of process other than such as would be proper in the regular prosecution of the claim. Upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker acted with a primary motive to accomplish an illegitimate end. And in so doing, Walker caused damages to Counter-Plaintiffs as a direct and foreseeable result. Further, upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith, thus entitling Counter-Plaintiffs to recover punitive damages.

2. Supplemental jurisdiction over these state claims is proper under 28 U.S.C. §

1367 because the state claims are so related to the federal claims[1] that they are part of the same case or controversy and derive from the same common nucleus of operative fact. Venue is proper in New Mexico pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, including but not limited to Walker having committed the misuse of process in the present proceeding, as it was pending before this Court.

3. Defendant/Counter-Plaintiff THI of New Mexico at Hobbs Center, LLC ("Hobbs") is a foreign limited liability company authorized to do and doing business in the state of New Mexico.

4. Defendant/Counter-Plaintiff THI of New Mexico, LLC ("THINM") is a foreign limited liability company authorized to do and doing business in the state of New Mexico. THINM is the sole non-managing member of Hobbs.

5. Defendant/Counter-Plaintiff Fundamental Administrative Services, LLC ("FAS") is a foreign limited liability company authorized to do and doing business in the state of New Mexico.

6. Defendant/Counter-Plaintiff Fundamental Clinical Consulting, LLC ("FCC") is a foreign limited liability company authorized to do and doing business in the state of New Mexico.

7. Upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Plaintiff Sarah Walker is a resident and domiciled in Hobbs, New Mexico.

---

[1] Walker filed this lawsuit in federal court, invoking "federal question" jurisdiction on grounds that she asserted claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et. seq., and 42 U.S.C. §1981 in her original Complaint [Doc. 1].

## BACKGROUND

8.     Hobbs employed Walker as the Business Office Manager at Hobbs Health Care Center in Hobbs, New Mexico from August 2005 until January 8, 2007.

9.     In January 2007, Hobbs terminated Walker's employment for reasons including continuing unsatisfactory performance.

10.    On May 1, 2007, Plaintiff filed an EEOC/New Mexico Human Rights Division Charge of Discrimination, solely naming "THI Health Care Fund" as the Employer/ discriminating party, and simply alleging a belief that she was discharged on the basis of race, because—while told the basis was "poor performance"—she had never before been disciplined. *See* Charge (Doc. 104-1).

11.    Neither during her employment with Hobbs, in her Charge of Discrimination with the EEOC, nor—upon information and belief—in her interviews and statements with EEOC investigators did Walker ever claim to have been subjected to racial comments or slurs during her employment at Hobbs—whether by employees of Counter-Plaintiffs or by anyone else.

12.    When the EEOC concluded its handling of her Charge, Walker, on or about September 18, 2008, requested a list of attorneys.

13.    On December 5, 2008, Walker's present attorney, Daniel Yohalem, wrote to the EEOC, representing Walker, and obtained for Walker a complete copy of the EEOC's file.

14.    On January 22, 2009, Walker, through attorney Yohalem, as well as attorney Richard Rosenstock, filed the Complaint (Doc. 1) initiating this lawsuit.

15.    In the filing of her Complaint, as well as in subsequent efforts to amend and broaden that Complaint, Walker has exaggerated allegations, made claims and allegations

without probable cause or reasonable investigation, and has engaged in irregularities or improprieties suggesting extortion, delay, or harassment, by and through conduct including but not limited to the following.

16. In filing the Complaint two years after her employment with Hobbs ended, Walker for the first time alleged that a number of persons had made racist remarks in the Hobbs workplace.

17. On December 14, 2009, Walker filed an Amended Complaint (Doc. 50), which added six more defendants in the lawsuit.

18. In both the Complaint and the Amended Complaint, Walker repeatedly made allegations against "Defendants," in numerous cases without giving any indication whose conduct was actually being challenged, resulting in the confusing suggestion that perhaps each and every Defendant had separately, redundantly engaged in the same conduct.

19. On August 2, 2010, Walker filed a Motion to File Second Amended Complaint (Doc. 89), which is notable as follows.

20. The SAC that Walker proposed on August 2, 2010 (Doc. 89.1) would have added five more defendants in the lawsuit.

21. The SAC that Walker proposed on August 2, 2010 (Doc. 89.1) would have brought the total parties being sued to thirteen, including Walker's admitted employer, Hobbs, its non-managing member—THI of New Mexico, LLC ("TNM"); TNM's sole member, THI of Baltimore, Inc. ("TBI"); TBI's sole shareholder, Fundamental Long Term Care Holdings, LLC ("FLTCH"); and FLTCH's alleged individual members, "Murray Foreman and Leonard Grunstein," in addition to numerous individual employees of alleged, separate TBI and FLTCH

subsidiaries—Fundamental Clinical Consulting, LLC ("FCC") and FAS.

22. The SAC that Walker proposed on August 2, 2010 (Doc. 89.1) specifically accused Christine Zack, Foreman, and Grunstein each of having specific, racist intent, causing her termination, and structuring corporations specifically to frustrate civil rights laws:

    a. "Defendant Christine Zack was at all times material hereto the Senior Vice President for FAS with responsibility over the operations of Defendant THI of New Mexico at Hobbs Center, over Defendants Diana Melton, Jaime Andujo, Debbie Lothridge and Karen Hood (Miller), and over Plaintiff and her immediate supervisor in Hobbs, Billy Cummings.  Zack provides updates regarding operations and legal matters at the facility level to FLTCH owner Defendant Murray Foreman. Defendant Zack, acting in concert with the other Defendants, was responsible for the illegal termination of Plaintiff's employment.  Defendant's actions that are the subject of this SAC were taken within the course and scope of her employment by Defendant FAS."  Initial SAC (Doc. 89-1), ¶15.

    b. "Defendants Murray Foreman and Leonard Grunstein … and Zack created and ratified the illusory structure of fragmented limited liability corporations with the intent and purpose to enable their supervisory employees to act without regard to the lawful right of the employees of their health care facilities to be free from illegal discrimination, including but not limited to race discrimination, and to frustrate claimants' ability to vindicate their right to be free from race discrimination by obscuring where the ultimate authority

        and liability for these employees' illegal conduct lie."  Initial SAC (Doc. 89-1), ¶16.

    c. "Defendants Zack, Foreman and Grunstein devised and instituted a corporate structure with the intent and purpose, inter alia, of permitting violations of employees' rights to be free from race discrimination, while attempting to shield decision-makers from liability and frustrating the collection of judgments against FLTCH and its owners for such conduct.  This corporate structure creates the illusion that Defendant Corporations are separate entities, deliberately obfuscating the authority and responsibility of the various corporate defendants in order to avoid discovery disclosures in litigation, hide culpability, and perpetuate Defendants' ability to subject employees to race discrimination.  On information and belief, Defendant Zack was directed by and/or acted in concert with Defendants Murray Foreman and Leonard Grunstein to institute the current corporate structure by dividing the different operations of FLTCH into separate limited liability corporations which in reality function as a single integrated enterprise.  Defendants Foreman, Grunstein and Zack knew or should have known that the supervisory employees in their integrated enterprise were engaging in acts of race discrimination directed at employees in the health care facilities, including the Hobbs Health Care Center."  Initial SAC (Doc. 89-1), ¶17.

23.    The SAC that Walker proposed on August 2, 2010 (Doc. 89.1) asserted claims against all Defendants—including Zack, Foreman, and Grunstein—under Title VII, stating:

"The conduct of Defendants described in this Second Amended Complaint, including but not limited to their termination of Plaintiff's employment, violated rights secured to Plaintiff by 42 U.S.C. §2000e-2 and -3 and the New Mexico Human Rights Act as to Defendant THI at Hobbs." Initial SAC (Doc. 89-1) at ¶89.

24. By asserting claims under Title VII against all "Defendants," Walker represented that (a) she had exhausted administrative remedies against each and every Defendant, and (b) that Title VII holds individual persons liable in damages. However, as a matter of both fact and law, neither of these representations was correct.

25. The SAC that Walker proposed on August 2, 2010 (Doc. 89.1) asserted claims against all "Defendants"—including Zack, Foreman, and Grunstein, as well as all Counter-Plaintiffs—for "breach of contract." Initial SAC (Doc. 89-1) at ¶84.

26. By asserting "breach of contract" claims against all "Defendants," Walker represented that (a) she had an employment contract directly with each Defendant, and (b) that the termination of her employment by Hobbs had breached each such contract. However, as a matter of both fact and law, neither of these representations was correct.

27. The SAC that Walker proposed on August 2, 2010 (Doc. 89.1) asserted claims against all "Defendants"—including Zack, Foreman, and Grunstein, as well as all Counter-Plaintiffs—for "Intentional Infliction of Emotional Distress." Initial SAC (Doc. 89-1) at ¶83.

28. By asserting claims under the New Mexico common-law of Intentional Infliction of Emotional Distress against all "Defendants," Walker represented that (a) each and every proposed defendant had engaged in specific intentional, outrageous conduct against Walker and (b) each and every proposed Defendant had done so with intent to harm, and with the

consequence of causing Walker severe emotional distress. However, as a matter of both fact and law, neither of these representations was correct.

29. The SAC that Walker proposed on August 2, 2010 (Doc. 89.1) asserted claims against all "Defendants"—including Zack, Foreman, and Grunstein, as well as all Counter-Plaintiffs—for violating 42 U.S.C. 1981. Initial SAC (Doc. 89-1) at ¶83.

30. By asserting claims under 42 U.S.C. 1981 against all "Defendants," Walker represented that each and every proposed defendant had engaged in specific intentional racial discrimination against Walker. However, as a matter of both fact and law, this representation was false.

31. Counter-Plaintiffs had a direct interest in resisting the referenced allegations in the SAC. The SAC's allegations harassed and attempted to embroil in litigation persons and entities simply for having an indirect passive membership interest in, or providing consulting services to Counter-Plaintiffs. In addition, the SAC argued the conduct of all persons as forming the basis for direct liabilities against Counter-Plaintiffs. As proposed on August 2, 2010, the SAC claimed each corporation in the purported "integrated enterprise"—including Hobbs, FAS, and FCC—was, itself, responsible for any conduct of the individuals, including Zack, Foreman, and Grunstein. *See* Initial SAC (Doc. 89.1) ¶¶18, 42, 82.

32. If Walker had merely believed, but not yet had evidence, that each of these allegations was true, she was authorized, under the Federal Rules of Civil Procedure, to so state, and to qualify these allegations.

33. Walker chose not to qualify the bulk of these allegations in any way, and instead stated them as matters of unqualified fact.

34. By doing so, Walker, by and through her attorneys acting in the course and scope of their employment, certified that a reasonable investigation already had been completed and that Walker already had evidentiary support for each of the allegations.

35. Upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker made the above allegations without, at the time, either having evidentiary support for some of the allegations or conducting a reasonable investigation to determine whether good ground existed.

36. Upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker intentionally misrepresented facts to her lawyers and, because they had received the EEOC file and knew that Walker never alleged to the EEOC that racial slurs were involved (or higher up officers aided and abetted the discrimination), her lawyers had an affirmative duty to verify the basis for the slurs and failed to comply with the Federal Rule of Civil Procedure 11 and the probable cause requirement under New Mexico MAP law, making Walker liable to the Counter-Plaintiffs.

37. Walker filed the initial proposed SAC with the Court with, effectively, no lead notice to Defendants of its content; while the proposed SAC was 27 pages long, it was not provided to Counter-Plaintiffs until just a few hours before Walker filed it with the Court on August 2, 2010.

38. As a direct result of the Walker filing the motion for leave to file an SAC in the form that she proposed on August 2, 2010, Counter-Plaintiffs incurred substantial, reasonable

expense in seeking for Walker either to disclose the true basis for the allegations or, alternatively, to withdraw the allegations.  Counter-Plaintiffs' expenses included, but were not limited to, attorney's time researching, preparing, filing, and corresponding regarding the following:

- a. Response in Opposition re Motion to Amend/Correct to File Second Amended Complaint and Memorandum in Support filed by Hobbs and THINM (Doc. 104);
- b. Response in Opposition re Motion to Amend/Correct to File Second Amended Complaint and Memorandum in Support filed by FAS, Karen Hood (Miller), Debbie Lothridge, Diana Melton (Doc. 105);
- c. Response in Opposition re Motion to Amend/Correct to File Second Amended Complaint and Memorandum in Support filed by Jaime Andujo, FCC (Doc. 107);
- d. FAS's First Request for Admissions, First Set of Interrogatories and First Request for Production of Documents (Certificate of Service at Doc. 109);
- e. Hobbs First Request for Admissions, Second Set of Interrogatories, and Second Set of Requests for Production to Plaintiff (Certificate of Service at Doc. 113);
- f. THINM's First Request for Admissions, First Set of Interrogatories, and First Set of Document Production Requests to Plaintiff (Certificate of Service at Doc. 114);
- g. Motion for Discovery on Rule 11 Issues, and Exempt from JSR and PDP

       Limitations filed by Hobbs, THINM, and FAS (Doc. 116);

  h. Response in Opposition re Motion to Extend Deadline for Responding to FAS's First Discovery Requests and Memorandum in Support filed by FAS (Doc. 117);

  i. Receipt and Review of Plaintiff's Response to Hobbs First Request for Admissions, Second Set of Interrogatories, and Second Set of Requests for Production (Certificate of Service at Doc. 119);

  j. Receipt and Review of Plaintiff's Response to THINM's First Request for Admissions, First Set of Interrogatories, and First Set of Document Production Requests (Certificate of Service at Doc. 120);

  k. Reply to Response to Motion re Motion for Discovery on Rule 11 Issues, and Exempt from JSR and PDP Limitations filed by Hobbs, THINM, and FAS (Doc. 127); and

  l. Motion to Continue November 3, 2010 Hearing all Defendants (Doc. 130).

  39. After all of this activity, and less than 24 hours before the Court was to address the SAC in a hearing, Walker on November 4, 2010 withdrew or narrowed a number of the above-referenced allegations, in a court filing that she captioned "Plaintiff's Notice of Revised Second Amended Complaint."

  40. The manner in which Walker withdrew and narrowed the allegations was, itself, irregular and improper. There is no court rule authorizing the filing of such a document, without first obtaining the consent of an opposing party. Walker did not seek such consent. Further, court rules for the submission of any proposed amended pleading require that any proposed

amendment be attached to the original motion.  Yet Walker attempted to change the form of amendment after all briefing had been completed, and less than 24 hours before the hearing.  And while doing so, she also opposed Counter-Plaintiffs' request for more time to respond to the new form of amendment.

41. After all of these events, Counter-Plaintiffs stipulated to orders under which Counter-Defendant filed a substantially modified form of Second Amended Complaint (Doc. 142).  Counter-Plaintiffs did so reasonably, in an effort to stem the spiraling expenses being caused by Counter-Defendant.  However, in the process of negotiating those stipulated orders, Counter-Plaintiffs preserved and did not relinquish any right of recovery that they now pursue.  And at no point in the process of stipulating to such orders did Walker—either in fact, or with any reasonable basis—understand that Counter-Plaintiffs were waiving or relinquishing their future ability to preserve affirmative relief including but not limited to the present Counterclaim.

## COUNT I – MALICIOUS ABUSE OF PROCESS

42. Counter-Plaintiffs incorporate as if fully set forth herein the allegations of paragraphs 1-41 (including all subparts) of its Counterclaims.

43. Upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker brought the above-referenced claims and allegations without probable cause.

44. In the context of a claim for Malicious Abuse of Process, "probable cause" means "reasonable belief, founded on known facts established after a reasonable pre-filing investigation."

45. Upon information and belief, after a reasonable opportunity for further

investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker stated allegations without a reasonable foundation on known facts and/or without having conducted a reasonable pre-filing investigation.

46. Alternatively, upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker has prosecuted her claims through some irregularity or impropriety suggesting extortion, delay, or harassment.

47. Upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker made claims without probable cause and/or engaged in procedural irregularities or improprieties for the primary purpose of an illegitimate end.

48. Upon information and belief, after a reasonable opportunity for further investigation and discovery, Counter-Plaintiffs will likely have evidentiary support to show Walker pursued a claim knowing that it is meritless, misused the law primarily for the purpose of harassment or delay, and/or initiated proceedings against some of the proposed defendants primarily for the purpose of inducing settlement from Counter-Plaintiffs.

49. Counter-Plaintiffs have been damaged in having to respond to these claims, in amounts including but not limited to their costs and attorney fees, for which they now sue.

## COUNT II – PUNITIVE DAMAGES

50. Counter-Plaintiffs incorporate as if fully set forth herein the allegations of paragraphs 1-49 (including all subparts) of its Counterclaims.

51. In all above respects, Walker acted in reckless disregard of the basis for

allegations, for the interests of Counter-Plaintiffs, and/or was otherwise malicious, willful, reckless, wanton, fraudulent, or in bad faith, thus entitling Counter-Plaintiffs to punitive damages.

**WHEREFORE**, Counter-Plaintiffs respectfully request that the Court enter a judgment for Counter-Plaintiffs and against Walker for compensatory and punitive damages in an amount to be determined at trial, and for other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 10th day of December, 2010.

*/s/ Trent A. Howell*
Danny W. Jarrett
Trent A. Howell
JACKSON LEWIS LLP
4300 San Mateo Blvd. NE, Suite B-260
Albuquerque, NM 87110
Telephone:    505.878.0575
Facsimile:    505.878.0398
*Attorneys for Defendants THI of New Mexico at Hobbs Center, LLC, and THI of New Mexico, LLC*

*/s/ Barbara G. Stephenson*
Barbara G. Stephenson
Quentin Smith
SHEEHAN & SHEEHAN, P.A.
P. O. Box 271
Albuquerque, NM 87103
*Attorneys for Defendants Fundamental Administrative Services, LLC, Karen Hood (Miller), Debbie Lothridge, Diana Melton*

      /s/ John A. Bannerman
John A. Bannerman
Margaret A. Graham
BANNERMAN & JOHNSON, P.A.
2201 San Pedro NE
Building 2, Suite 207
Albuquerque, New Mexico 87110
*Attorneys for Defendants Fundamental Clinical Consulting, LLC and Jaime Andujo*

I hereby certify that I electronically transmitted the above to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to any non-registrants, this 10th day of December, 2010:

Daniel Yohalem
Richard Rosenstock
Katherine Murray
1121 Paseo de Peralta
Santa Fe, NM  87501
*Attorneys for Plaintiff Sarah Walker*


  *s/     Trent Howell*
Trent A. Howell

4819-3094-6567, v.  1