# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SARAH WALKER,

      Plaintiff,

vs.                                                              No. CIV 09-0060 JB/KBM

THI OF NEW MEXICO AT HOBBS CENTER d/b/a
HOBBS HEALTH CARE CENTER, DIANA
MELTON, JAIME ANDUJO, DEBBIE
LOTHRIDGE, KAREN HOOD (MILLER),
THI OF NEW MEXICO, LLC, FUNDAMENTAL
CLINICAL CONSULTING, LLC, FUNDAMENTAL
ADMINISTRATIVE SERVICES, LLC,
THI OF BALTIMORE, INC., and FUNDAMENTAL
LONG-TERM CARE HOLDINGS, LLC,

      Defendants,

and

THI OF NEW MEXICO AT HOBBS CENTER, LLC,
THI OF NEW MEXICO, LLC, FUNDAMENTAL
ADMINISTRATIVE SERVICES, LLC, AND
FUNDAMENTAL CLINICAL CONSULTING, LLC,

      Counter-Plaintiffs,

vs.

SARAH WALKER,

      Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Dismiss Defendants'

Counterclaim and Memorandum in Support, filed January 18, 2011 (Doc. 174). The Court held a

hearing on April 6, 2011. The primary issues are: (i) whether the Court has subject-matter

jurisdiction over the malicious-abuse-of-process counterclaim; and (ii) whether, if the Court has subject-matter jurisdiction over the malicious-abuse-of-process counterclaim, Counter-Plaintiffs THI of New Mexico at Hobbs Center, LLC ("THI of Hobbs"), THI of New Mexico, LLC ("THI of New Mexico"), Fundamental Administrative Services, LLC ("FAS"), and Fundamental Clinical Consulting, LLC ("FCC")(collectively "Counterclaimants") have stated a claim upon which the Court may grant relief. The Court will deny Plaintiff Sarah Walker's motion. The Court believes that the Counterclaimants' malicious-abuse-of-process counterclaim is a permissive, not a compulsory, counterclaim. Regardless whether the counterclaim is permissive, however, the Court does not believe it has supplemental jurisdiction over the counterclaim, because the counterclaim and Walker's claims do not arise from a common nucleus of operative fact. Although the Court does not have supplemental jurisdiction over the counterclaim, it has diversity jurisdiction over the counterclaim. Because the Counterclaimants have pled sufficient facts to state a claim for relief for malicious abuse of process that is plausible on its face, the Court will deny Walker's request that it dismiss the malicious-abuse-of-process counterclaim.

## **FACTUAL BACKGROUND**

Walker was employed as a Business Office Manager ("BOM") at THI of Hobbs, a nursing home in Hobbs, New Mexico, from August 2005 until January 2007. See, e.g., Amended Complaint ¶ 3, at 2, filed December 14, 2009 (Doc. 50); Fundamental Clinical Consulting, LLC's Answer to Plaintiff's Amended Complaint ¶ 3, at 2, filed February 3, 2010 (Doc. 56). Walker, an African American, alleges that Defendants THI of Hobbs, Diana Melton, Jaime Andujo, Debbie Lothridge, Karen Hood (Miller), THI of New Mexico, FCC, and FAS unlawfully subjected her to numerous acts of racial discrimination, and terminated her employment with THI of Hobbs because of her race. See Amended Complaint ¶ 1, at 1. Additional background on the case is set forth in

the Court's Memorandum Opinion and Order deciding Walker's first motion to compel discovery. See Walker v. THI of New Mexico at Hobbs Ctr., No.CIV 09-0060 JB/RLP, 2010 WL 552661, at *1-4 (D.N.M. Feb. 8, 2010)(Browning, J.).

## PROCEDURAL BACKGROUND

Walker filed this case on January 22, 2009.  See Complaint, filed January 22, 2009 (Doc. 1). The Complaint originally named THI of Hobbs and three Doe Corporations as Defendants.  See Complaint ¶¶ 4-5, at 2.  On December 14, 2009, Walker filed an Amended Complaint adding Melton, Andujo, Lothridge, Hood, THI of New Mexico, FCC, and FAS.  See Amended Complaint, filed December 14, 2009 (Doc. 50)("FAC").  On November 15, 2010, Walker filed a Second Amended Complaint, adding THI of Baltimore, Inc., and Fundamental Long Term Care Holdings, LLC. See Doc. 142 ("SAC").

On December 10, 2010, the Counterclaimants filed Addendum to Answers, Stating Counterclaim for Malicious Abuse of Process and Punitive Damages in Response to Second Amended Complaint.  See Doc. 161 ("Addendum and Counterclaim").  The Counterclaimants contend that Walker "directly and/or indirectly, through her authorized agents, filed claims without probable cause and engaged in acts in the use of process other than such as would be proper in the regular prosecution of the claim."  Addendum and Counterclaim ¶ 1, at 2.  The Counterclaimants allege that, after THI of Hobbs terminated Walker, she filed an Equal Employment Opportunity Commission ("EEOC")/New Mexico Human Rights Division Charge of Discrimination in which she alleged a belief that she was discharged on the basis of race, because while she was told that the basis for her termination was poor performance, she had never before been disciplined.  The Counterclaimants allege that Walker never alleged that she was subjected to racial comments or slurs during her employment at THI of Hobbs.  The Counterclaimants allege that Daniel Yohalem,

Walker's attorney, obtained a copy of the EEOC's file in December 2008, before Walker filed her Complaint in January 2009 and that, in her Complaint, Walker for the first time alleged that she was subjected to racial slurs.  The Counterclaimants allege that Walker filed a Motion to File Second Amended Complaint on August 2, 2010, and attached a proposed Second Amended Complaint ("proposed SAC").  The Counterclaimants allege that, in the proposed SAC, Walker made incorrect representations of fact and law.  The Counterclaimants allege that, upon information and belief, they will likely have evidentiary support to show Walker made the allegations without having evidentiary support or conducting a reasonable investigation to determine whether good grounds existed.  The Counterclaimants alleged that they suffered damages in the form of attorneys' fees and costs, and that they are entitled to punitive damages.

On January 18, 2011, Walker filed the Plaintiff's Motion to Dismiss Defendants' Counterclaim and Memorandum in Support.  See Doc. 174.  Walker moves the Court to dismiss the Defendants' counterclaim for malicious abuse of process and punitive damages.  Walker sets forth a procedural history of the case, which includes her bases for filing the initial Complaint, the FAC, the proposed SAC, and the SAC.  Walker contends that the Counterclaimants fail to plead sufficient facts to support a malicious-abuse-of-process claim under a manifest lack of probable cause theory, because she had probable cause to file the original, FAC, and SAC as a matter of law.  Walker also argues that the Counterclaimants fail to plead sufficient facts to support a malicious-abuse-of-process claim under the procedural impropriety theory of malicious abuse of process, because she did nothing irregular or improper.  Walker also argues that the Counterclaimants fail to plead sufficient facts to support a malicious-abuse-of-process claim, because they lack standing to pursue such a claim based on allegations asserted in Walker's proposed SAC.  Walker argues that the Counterclaimants fail to plead any facts supporting a plausible claim that Walker's primary motive

was to achieve an illegitimate end.

On February 4, 2011, the Counterclaimants filed their Response to Plaintiff's Motion to Dismiss Defendants' Counterclaim. <u>See</u> Doc. 189. The Counterclaimants argue that Walker's motion improperly offers matters outside the Counterclaim and that, if the Court considers these matters, it should convert Walker's motion to dismiss into a motion for summary judgment and grant the Counterclaimants an opportunity for discovery. The Counterclaimants also argue that their Counterclaim sufficiently pleads a malicious-abuse-of-process claim. They argue that the Court cannot, as a matter of law, find that Walker had probable cause to file each of her complaints. They also argue that, in their Addendum and Counterclaim, they sufficiently allege a procedural irregularity, or a misuse of procedural devices such as discovery, subpoenas, and attachments. They also argue that they sufficiently plead a primary motive in the use of process to accomplish an illegitimate end and damages.

On March 16, 2011, Walker filed the Plaintiff's Reply to Defendants' Response to Motion to Dismiss Counterclaim. <u>See</u> Doc. 235. Walker argues that the Counterclaimants have pled insufficient facts to support a plausible malicious-abuse-of-process claim, and that the Court should not grant the Counterclaimants leave to amend their Addendum and Counterclaim, because, even with additional allegations, the Counterclaimants would fail to state a plausible claim. Walker also argues that the Counterclaimants' Counterclaim is a permissive counterclaim which does not fall within the Court's supplemental jurisdiction.

On May 5, 2011, the Counterclaimants filed the Defendants' Surreply to Plaintiff's Motion to Dismiss Counterclaim (Doc. 174). <u>See</u> Doc. 288. The Counterclaimants argue that the Court has jurisdiction over the Counterclaim, because the Counterclaim is within the Court's diversity jurisdiction, and because the Counterclaim is within the Court's supplemental jurisdiction.

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10thCir.1994)(citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P.12(b)(1). The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. Mar.11, 2009)(Browning, J.)(citations omitted). As the United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10thCir.1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56. See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which

-7-

relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a

-8-

reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

**RELEVANT LAW REGARDING SUPPLEMENTAL JURISDICTION**

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by [the] Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331 and 1332.

1.      **Supplemental Jurisdiction.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may exercise pendent jurisdiction over state-law claims when "state and

-9-

federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Ancillary jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

**2.    District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman

v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726. Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four

instances described therein."); <u>Executive Software N. Am. v. U.S. Dist. Court</u>, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of <u>Gibbs</u> in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); <u>Palmer v. Hosp. Auth.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."). At least one other district court in the Tenth Circuit has reached the same conclusion. See <u>Gudenkauf v. Stauffer Commc'ns, Inc.</u>, 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated."). This Court has stated that, "[i]n circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction." <u>Krumm v. Holder</u>, No. CIV 08-1056, 2009 WL 1563381, at *14 (D.N.M. May 27, 2009)(Browning, J.)(citing <u>Bonadeo v. Lujan</u>, No. CIV-08-0812, 2009 WL 1324119, at *8 (D.N.M. 2009)(Browning, J.)(citing <u>Estate of Harshman v. Jackson Hole Mountain Resort Corp.</u>, 379 F.3d at 1165).

## <u>RELEVANT LAW REGARDING COUNTERCLAIMS</u>

Subject to restrictions that the Federal Rules of Civil Procedure and the limits of federal court jurisdiction impose, a defendant may bring a counterclaim in a pending action, and assert any and all claims that he has against the plaintiff. See Fed. R. Civ. P. 13. Under rule 13, counterclaims are categorized as either being "compulsory" or "permissive." Fed. R. Civ. P. 13(a), (b). A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). See <u>Arch Mineral Corp. v. Lujan</u>, 911 F. 2d 408, 412 (10th Cir. 1990). A compulsory counterclaim, as distinguished from a permissive

counterclaim, must be pled or is barred. See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974); Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1053 (10th Cir. 1988).

"By and large, the courts have refrained from making any serious attempt to define the transaction-or-occurrence concept in a highly explicit fashion." 6 C. Wright, A. Miller, M. Kane & R. Marcus, Fed. Prac. & Proc. Civ. § 1410, at 52 (3d ed. 2010). "Most courts, rather than attempting to define the key terms of Rule 13(a) precisely, have preferred to suggest standards by which the compulsory or permissive nature of specific counterclaims can be determined." 6 C. Wright, supra § 1410, at 52. The Tenth Circuit has taken this approach, stating that a counterclaim is compulsory if: (i) it involves the same issues of law and fact as the principal claim; (ii) res judicata would bar the defendant from bringing a subsequent suit on the same claim; (iii) it involves the same evidence as the principal claim; and (iv) there is a logical relationship between the principal claim and the counterclaim. See FDIC v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994). In recognition of the principles of judicial economy that support rule 13, a number of courts, including the Tenth Circuit, give special weight to the "same evidence" and "claim preclusion" factors. Jones v. Ford Motor Credit Co., 358 F.3d 205, 209-10 (2d Cir. 2004)(classifying counterclaim as permissive because the essential facts needed to prove the principal claim and the counterclaim were not so similar that combining the lawsuits would yield judicial efficiency); FDIC v. Hulsey, 22 F.3d at 1487 (finding counterclaims compulsory because res judicata would bar the defendant from bringing a subsequent claim arising out of the same creditor/debtor relationship and any evidence presented would necessarily encompass the parties' entire relationship); Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc., 31 F.3d 445, 448 (7th Cir. 1994)(describing the United States Court of Appeals for the Seventh Circuit's test whether a counterclaim is compulsory as asking "little more than whether the plaintiff's claims would be barred by res judicata"); Painter v.

-13-

Harvey, 863 F.2d 329, 332 (4th Cir. 1988)("Where, as here, the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory.").

Before Congress enacted 28 U.S.C. §1367, courts found that compulsory counterclaims were within the court's supplemental jurisdiction and does not require an independent basis of subject matter jurisdiction. See 28 U.S.C. § 1367(a); Unique Concepts, Inc. v. Manuel, 930 F.2d 573, 547 (7th Cir. 1991)("A federal court has supplemental jurisdiction over compulsory counterclaims."); Naranjo v. County of Rio Arriba, 862 F. Supp. 328, 334 (D.N.M. 1994)(Conway, J.).

Rule 13 also permits a party to raise as a counterclaim "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b). The permissive counterclaim rule, therefore, allows the court to dispose of all the claims between the parties in one proceeding, irrespective whether the claims all arise from the same transaction or occurrence. See Baker v. Gold Seal Liquors, Inc., 417 U.S. at 469 n.1.

The Tenth Circuit has stated that, because permissive counterclaims do not arise from the same transaction or occurrence as the main claim, they generally do not fall within the court's supplemental jurisdiction and thus require an independent basis for federal jurisdiction. See NLRB ex rel. Int'l Union of Elec., Radio, & Mach. Workers v. Dutch Boy, Inc., 606 F.2d 929, 932 (10th Cir. 1979). "Since Congress enacted Section 1367 in 1990, [however,] the Tenth Circuit has not determined whether supplemental jurisdiction over counterclaims depends on the compulsory/permissive distinction." Wilhelm v. TLC Lawn Care, Inc., No. CIV 07-2465-KHV2008, WL 640733, at *1 n.1 (D. Kan. Mar. 6, 2008). See Crow v. Uintah Basin Elec. Telecomms., No. 2:09-CV-1010, 2010 WL 5069852, at *4 n.30 (D. Utah Dec. 6, 2010)(recognizing that the Tenth Circuit has not yet adopted the approach in which courts determine supplemental

jurisdiction over counterclaims on the basis of whether they are compulsory or permissive).

The United States Court of Appeals for the First Circuit has stated, as a matter of first impression:

> 28 U.S.C. § 1367, enacted in 1990, gives federal courts supplemental jurisdiction over both compulsory and at least some permissive counterclaims. This alters this circuit's former rule, adopted before the enactment of § 1367, that required permissive counterclaims to have an independent basis for jurisdiction. See McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 248 (1st Cir. 1982). Our ruling brings us into line with the Second and Seventh Circuits, as we describe below. Jones v. Ford Motor Credit Co., 358 F.3d 205, 210-14 (2d Cir. 2004); Channell v. Citicorp Nat'l Servs., Inc., 89 F.3d 379, 384-87 (7th Cir. 1996).

Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 76 (1st Cir. 2010). The First Circuit noted:

> Some decisions before the enactment of § 1367 adopted a rule that federal courts could exercise supplemental jurisdiction over compulsory but not permissive counterclaims. E.g., McCaffrey [v. Rex Motor Transp., Inc.], 672 F.2d [246,] 248 [(1st Cir. 1982)]; see also 6 [C. Wright, A. Miller & M. Kane, Federal Practice & Procedure] §1422, at 169-70 [(1990)]. Permissive counterclaims needed to have an independent federal jurisdictional basis. McCaffrey, 672 F.2d at 248; 6 Wright et al., supra § 1422, at 169-70.
>
> This distinction arose from judge-made law of jurisdiction over what are now called supplemental claims -- claims that lack an independent basis for federal jurisdiction -- law which evolved in the absence of explicit congressional authorization. Put simply, courts distinguished jurisdiction over pendent claims -- those brought by the plaintiff -- and ancillary claims -- those brought by other parties. Pendent claims had to arise from the same "common nucleus of operative fact" as the underlying claim having a basis for federal jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 725 . . . (1966). Lower courts held that ancillary claims, such as counterclaims, had to arise from the same transaction or occurrence. See W.A. Fletcher, "Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test, 74 Ind. L.J. 171, 174-75 (1998); 13 Wright et al., Federal Practice and Procedure § 3523, at 176-77 (3d ed. 2008). The Supreme Court never reconciled these lines of cases. See generally 13 Wright et al., supra § 3523, at 157-85 (tracing this history); W.C. Perdue, Finley v. United States: Unstringing Pendent Jurisdiction, 76 Va. L. Rev. 539, 541-51 (1990) (same).
>
> Courts drew the line for ancillary jurisdiction at the transaction-or-occurrence test for practical reasons. Some counterclaims needed to be raised to avoid

preclusion in a later proceeding. Courts, hesitant to expand federal judicial power, limited supplemental jurisdiction to counterclaims which had to be raised or waived: that is, compulsory counterclaims arising out of the same transaction or occurrence as the underlying suit. See . . . 13 Wright et al., supra § 3523, at 177.

. . . .

In 1990 Congress enacted a supplemental jurisdiction statute, 18 U.S.C. § 1367. The statute does not use the terminology of "permissive" or "compulsory." It gives federal courts supplemental jurisdiction over all claims that are part of the same Article III case or controversy . . . .

By its plain text, then, § 1367(a) governs supplemental jurisdiction over counterclaims. See Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 558-59 . . . (2005) (interpreting § 1367(a)'s plain text, which confers a "broad grant of supplemental jurisdiction"). We join two circuits and virtually all commentators in holding that Article III's case-or-controversy standard is the jurisdictional limit for counterclaims. Jones, 358 F.3d at 212-13; Channell, 89 F.3d at 385; see also, e.g., C.D. Floyd, Three Faces of Supplemental Jurisdiction after the Demise of United Mine Workers v. Gibbs, 60 Fla. L. Rev. 277, 290 (2008).

In so doing, we hold that § 1367 supersedes case law on supplemental jurisdiction that had distinguished between compulsory and permissive counterclaims.

603 F.3d at 85-86 (footnotes omitted).

Other courts have reached the same conclusion. See Jones v. Ford Motor Credit Co., 358 F.2d at 207 (2d Cir. 2004)("We conclude that supplemental jurisdiction authorized by 28 U.S.C. § 1367 may be available for the permissive counterclaims, . . . ."); Martin v. Law Offices of John F. Edwards, 262 F.R.D. 534, 536-37 (S.D. Cal. 2009)("Permissive counterclaims require an independent basis for subject matter jurisdiction. When there is no independent basis for jurisdiction . . . , the Court may still exercise supplemental jurisdiction over such claims if they are 'so related to the claims in the action . . . that they form part of the same case or controversy.'" (citations omitted)); Frisby v. Keith D. Weiner & Assocs. Co., 669 F. Supp. 2d 863, 872 (N.D. Ohio 2009)(stating that "the Sixth Circuit, like the Seventh and Second, reads § 1367 as a 'sweeping grant

-16-

of supplemental jurisdiction,'" and holding "that a permissive counterclaim need not independently satisfy federal jurisdictional requirements[;] [i]nstead, this Court may exercise supplemental jurisdiction over the counterclaim as long as the counterclaim is part of the same 'case or controversy' as the underlying claim").

## RELEVANT LAW REGARDING MALICIOUS-ABUSE-OF-PROCESS COUNTERCLAIMS

The authorities have split on the question whether an abuse-of-process counterclaim is a compulsory counterclaim in the action which is allegedly abusive.  See Pochiro v. Prudential Ins. Co. of Am., 827 F.2d 1246, 1252 (9th Cir. 1987).

Several courts have found that an abuse of process counterclaim is a compulsory counterclaim in the action which is allegedly abusive.  See Carteret Sav. & Loan Ass'n v. Jackson, 812 F.2d 36, 38 (1st Cir. 1987)(rejecting the defendants' argument that, because they served no pleading -- instead the court issued default judgment against them -- rule 13(a) did not become applicable to find that the defendants' claims against the plaintiff for negligence, fraud, abuse of process, and unfair-and-deceptive business practices should have been asserted as compulsory counterclaims pursuant to rule 13(a)); Podhorn v. Paragon Group, 795 F.2d 658, 659 (8th Cir. 1986)(finding that a party's claims for constructive eviction, breach of the warranty of habitability, breach of the covenant of quiet enjoyment, prima-facie tort, invasion of privacy, abuse of process, conversion of the security deposit, wrongful garnishment, and negligence were compulsory counterclaims, because Missouri intermediate appellate courts have determined that a defendant in an action in an associate circuit court must file a statement of a counterclaim); Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 633-34 (3d Cir. 1961)(finding that a party's counterclaim was a compulsory counterclaim within the meaning of rule 13(a), because allegations

-17-

that claims were unjustified, and brought in bad faith without color of right and with the sole object of harassing, entailed determination of many of the same facts and law relating to the underlying claim); Hampton v. Nustar Mgmt. Fin. Group, No. 2:05-CV-0824-BES-GWF, 2007 WL 119146, at *2 (D. Nev. Jan. 10, 1997)(citing Pichoro v. Prudential Insurance Co. of America,Inc. in finding that an abuse-of-process claim is a compulsory counterclaim, because, although the merits of the substantive claim are not controlling on the question of abuse of process, they are necessarily significant in the assessment of a possible ulterior motive, and thus the similarity of the facts necessary for the determination of both actions reveals that Hampton's substantive claims and Handy Cash's abuse-of-process claim stem from the same basic controversy between the parties); Miami Herald Publ'g Co., a Division of Knight-Ridder Newspapers, Inc. v. Ferre, 636 F. Supp. 970, 972-73 (S.D. Fla. 1985)(finding that a counterclaim for abuse of process, violation of right to privacy, malicious threats, interference with right to hold office, and malicious prosecution was a compulsory counterclaim under rule 13(a), because "the plaintiffs' action arises out of defendant['s] . . . alleged preparation and subsequent destruction of certain documents relating to the firing of the Miami City Manager and plaintiffs' efforts to obtain access to those documents," and the defendant's "counterclaim asserts various causes of action arising from plaintiffs' efforts to obtain access to the documents in question and their allegedly wrongful actions taken after they did not obtain the documents," noting that "the fact that additional allegations must be proved in order for FERRE to recover on the counterclaim does not eliminate its compulsory nature," and finding that the claims were essentially offshoots of the same controversy between the parties, and that therefore fairness and considerations of convenience and economy dictate that the court should exercise ancillary jurisdiction).

In Pochiro v. Prudential Insurance Co. of America, the United States Court of Appeals for

-18-

the Ninth Circuit addressed whether an abuse-of-process claim could be considered a compulsory counterclaim.  See 827 F.2d at 1252.  In January 1983, Prudential Insurance Co. of America ("Prudential Insurance") sued the Pochiros in Arizona state court, "pleading various causes of action based upon allegations that Pochiro appropriated for his own use confidential customer information obtained while Pochiro was an employee of Prudential (the Prudential action)."  827 F.2d at 1248. In December 1983, "the Pochiros sued Prudential in Arizona state court, pleading various causes of action based upon allegations that Prudential defamed John Pochiro by calling him 'a crook' and engaged in other wrongful conduct intended to damage his competing insurance business (the Pochiro action)."  827 F.2d at 1248.  Prudential Insurance removed the Pochiro action to federal district court, and in 1985, the Arizona court entered a final judgment for Prudential Insurance in the Prudential action.  See 827 F.2d at 1248.  Several months later, the federal district court entered a final judgment dismissing the Pochiro action as a compulsory counterclaim to Prudential Insurance's state court action.  See 827 F.2d at 1248.  The Pochiros appealed, arguing that the district court erred in dismissing the claims set out in their original complaint as compulsory counterclaims to the Prudential action.  See 827 F.2d at 1248.  The Ninth Circuit noted that, in the state court action, Prudential Insurance pled causes for breach of contract, unfair competition, and intentional interference with business relations.  See 827 F.2d at 1250.  The Pochiros asserted that their abuse-of-process claim could not be considered a compulsory counterclaim to the Prudential action.  See 827 F.2d at 1252.  The elements of an abuse-of-process claim in Arizona are an ulterior purpose and a wilful action in the use of process not in the regular conduct of the proceeding.  See 827 F.2d at 1252.  "Thus, a claim for abuse of process under Arizona law does not require that the prior dispute be resolved in favor of the abuse of process claimant, only that the opposing party has attempted to pervert the judicial process to an improper purpose."  827 F.2d at 1252.  The Ninth

-19-

Circuit noted that an abuse-of-process claim in Arizona "may therefore be distinguished from a claim for malicious prosecution which does require a termination of the prior action favorable to the claimant." 827 F.2d at 1252 n.10.

      In this case, to prove "abuse of process" arising out of the Prudential action, the Pochiros would have to demonstrate that Prudential had a wrongful purpose in pursuing its action. Certainly the presence of a legitimate justification for that action -- suing to enjoin the Pochiros from unfairly competing with Prudential -- would greatly influence the determination of whether Prudential's purpose was wrongful. Thus, the similarity of the facts necessary for the determination of both actions reveals that Prudential's substantive claims and the Pochiros' abuse of process claim are "offshoots of the same basic controversy between the parties." Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961).

      We recognize that despite a similar overlap in most abuse of process cases, the courts have split on the question whether an abuse of process claim is a compulsory counterclaim in the very action which allegedly is abusive. Compare Carteret Savings & Loan Assoc. v. Jackson, 812 F.2d 36, 38-39 (1st Cir. 1987) (compulsory counterclaim); Podhorn, 795 F.2d at 660-61 (same); Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d at 633-34 (same); Miami Herald Publishing Co. v. Ferre, 636 F. Supp. 970, 972-73 (S.D. Fla.1985) (same); Linker, 594 F. Supp. at 899-90 (same); Hospital Bldg. Co.[v. Trustees of Rex Hosp.], 86 F.R.D. [694,] 697-700 [(D.C.N.C. 1980)](same), with Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254, 262-64 (8th Cir.) (not a compulsory counterclaim), cert. denied, 442 U.S. 921 . . . (1979); Anderson v. Central Point School Dist. No. 6, 554 F. Supp. 600, 604-05 (D. Or.1982) (same), aff'd in part, rev'd in part, 746 F.2d 505 (9th Cir. 1984); North Carolina Electric Membership Corp. v. Carolina Power & Light Co., 85 F.R.D. 249, 251-54 (M.D.N.C. 1979) (same); Bose Corp. v. Consumers Union of the United States, Inc., 384 F. Supp. 600, 603 (D. Mass. 1974) (same).   Because we believe that the liberal reading of the "transaction or occurrence" standard is more in keeping with the pronouncements of the Supreme Court, we now reject the line of cases that has refused to find an abuse of process claim a compulsory counterclaim.

      As early as 1926, the Supreme Court admonished the courts that the "transaction or occurrence" standard was to be read broadly. Moore v. New York Cotton Exchange, 270 U.S. 593, 610 . . . (1926) (discussing Equity Rule 30, from which Rule 13 was adapted). More recently, the Court reemphasized this point, stating, "Under Rule 13(a)'s predecessor this Court held that 'transaction' is a word of flexible meaning which may comprehend a series of occurrences if they have logical connection, Moore v. New York Cotton Exchange, 270 U.S. 593 [46 S.Ct. 367], and this is the rule generally followed by the lower courts in construing Rule 13(a), e.g., Great Lakes, supra; United Artists Corp. v. Masterpiece Productions, 221

F.2d 213, 216." <u>Baker v. Gold Seal Liquors, Inc.</u>, 417 U.S. 467, 469 n.1 . . . (1974). We find instructive the two cases cited with approval by the Court for their liberal construction of Rule 13.   <u>Great Lakes</u> raised the question whether an abuse of process claim and an unfair competition claim were logically related. The Third Circuit found the relationship "unquestionable." <u>Great Lakes</u>, 286 F.2d at 634. Moreover, <u>United Artists</u> found various "harassing manuevers," [sic] including the filing of the lawsuit, to be compulsory counterclaims to an action for alleged copyright infringement. 221 F.2d at 216.  In light of the Supreme Court's approval of these holdings, we must disagree with those courts which have found abuse of process claims to be unrelated to the underlying substantive claims.  As mentioned above, even though the merits of the substantive claim are not controlling on the question of abuse of process, they are necessarily significant in the assessment of possible ulterior motive.  We therefore hold that the Pochiros' abuse of process claim is a compulsory counterclaim to the Prudential action.

827 F.2d at 1252-53.

In <u>Hospital Building Co. v. Trustees of Rex Hospital</u>, 86 F.R.D. 694, 696-97 (E.D.N.C. 1980), the United States District Court for the Eastern District of North Carolina addressed whether a counterclaim for abuse of process and defamation was permissive, thus meaning that the court should dismiss it because it lacked an independent jurisdictional basis, or whether the counterclaim was compulsory, thus meaning that ancillary jurisdiction exists.  <u>See</u> 86 F.R.D. at 695.

Bearing in mind these elements of the claim and counterclaim, we proceed now to the four tests set out in Sue & Sam.  First are the issues of fact and law raised by the antitrust claim and counterclaim for abuse of process and defamation largely the same? On this question, the parties agree that there is a general dissimilarity in the ultimate legal issues raised by plaintiff's antitrust claims and the counterclaim for abuse of process and defamation.  Nevertheless, it would appear that there are substantial issues which overlap. Thus, significant underlying facts for the claim and counterclaim involve the series of actions in connection with the petition for a certificate of need, the proceedings before the Medical Care Commission, and the filing of the State court appeal from the Commission's decision. Moreover, should plaintiff be successful in its antitrust claim, this would in all likelihood be a defense to the counterclaim for defamation.

Instructive is <u>Albright v. Gates</u>, 362 F.2d 928 (9th Cir. 1966).  There plaintiff claimed that defendants had slandered it in uttering defamatory words about plaintiff's oil security selling operations.  Defendants filed a counterclaim against plaintiff and against additional new parties for the price paid for alleged worthless oil rights or securities.  The court held that the counterclaim was a compulsory one

-21-

both as to plaintiff and the new parties on the ground that there was "sufficient identity or overlapping of the events of the factual background to put the whole together as a transaction." 362 F.2d at 929. See also Sun Shipbuilding & Dry Dock Co. v. Virginia Electric & Power Co., 69 F.R.D. 395 (E.D. Pa.1975). Similar considerations are present here. Here substantial issues overlap in plaintiff's antitrust claim and Rex's counterclaim for abuse of process. Further, the most significant ultimate issue of fact and law involved in plaintiff's antitrust claim is also a significant issue in Rex's counterclaim for defamation.

86 F.R.D. at 697. The district court next considered whether res judicata would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule. See 86 F.R.D. at 697.

With respect to this test, a final determination of plaintiff's complaint for antitrust violations would materially resolve Rex's counterclaim for defamation. The defense by Rex to plaintiff's claim of antitrust violations is that there were no such violations. Similarly, as a part of its counterclaim for defamation, Rex asserts that the allegations of the complaint are false. Plaintiff has necessarily responded to the counterclaim allegations by denying their truth. Thus, if plaintiff is successful on its antitrust claim, collateral estoppel, if not res judicata, would bar Rex, in a subsequent defamation action, from denying the truth of plaintiff's allegations of antitrust violations.

It is true that a final determination of plaintiff's antitrust suit would not be res judicata of Rex's counterclaim for abuse of process. However, that claim for abuse of process is so intertwined with the claim for defamation as to make severance inappropriate. Among other things, both involve the question of malice and both involve proof of punitive damages. And on each of these two elements the facts and legal issues are identical.

86 F.R.D. at 697-98. The district court then addressed whether substantially the same evidence would support or refute the claim as well as the counterclaim. See 86 F.R.D. at 698.

Rex says that it intends to present evidence in defense of the action showing that it did not violate the antitrust laws and that plaintiff suffered no damages as the result of any conduct by Rex. In particular, Rex asserts that its evidence in defense of the alleged antitrust violations will also tend to show that there was lack of any credible evidence on which plaintiff could base its allegations and that plaintiff used frivolous allegations to further ulterior and improper purposes. Such evidence in defense of plaintiff's antitrust claim would of course have probative value on Rex's counterclaim for abuse of process and defamation.

What is more, the jury considering the claim and counterclaim must necessarily learn about the various proceedings before the Medical Care

-22-

Commission; Rex's appearance therein; allegations made in the complaint; plaintiff's evidence of antitrust violations and damages and Rex's defenses; and the plaintiff's and Rex's plans for and completion of construction of new hospital facilities. Thus it would appear that substantial evidence will be introduced that both supports the counterclaim for abuse of process and simultaneously refutes plaintiff's claim of antitrust violations and damages.

86 F.R.D. at 698.  The district court then considered whether there was a logical relation between

the antitrust claim and the counterclaim.  See 86 F.R.D. at 698.

As noted above, there is substantial similarity between the evidence in Rex's defense of the plaintiff's claim of antitrust violations and damages and the evidence Rex must present in the prosecution of its counterclaim. See, e.g., City of Cleveland v. Cleveland Electric Illuminating Co., 570 F.2d 123 (6th Cir. 1978).  This duplication in and of itself demonstrates the logical relationship of the complaint for antitrust violations and the counterclaim.  As the Supreme Court noted in Moore, the fact that additional allegations must be proved for Rex to recover on the counterclaim does not eliminate their compulsory nature.  Moore v. New York Cotton Exchange, supra, 270 U.S. at 610 . . . .

In fact, the Second Circuit has on several occasions held that counterclaims which are based on allegations that the subject complaint was one of a series of harassing maneuvers against the defendant counterclaimants are compulsory. Newburger, Loeb & Co. v. Gross, 563 F.2d 1057 (2d Cir. 1977), cert. den. 434 U.S. 1035 . . . (1978); United Artists Corp. v. Masterpiece Productions, 221 F.2d 213 (2d Cir. 1955). In Newburger, Loeb, the plaintiff corporation received the assignment of a claim by a client of a brokerage firm. This assigned claim was the subject of a complaint alleging that the defendant had churned an account of the assignors and caused substantial damages. The defendant alleged that the claim was taken by the predecessor in interest to the corporate plaintiff in bad faith and for the sole purpose of creating a colorable claim against defendant to induce defendant to accept other improper and unrelated demands. The court held that defendants' counterclaims, based on the alleged bad faith conduct of plaintiffs in obtaining an assignment of and initiating the subject claim for the purpose of harassment and improper inducement, was compulsory. In United Artists Corp. v. Masterpiece Productions, supra, one of the main issues was whether a counterclaim alleging unfair trade practices and conspiratorial activities by plaintiff and additional defendants was compulsory.  The Second Circuit held that the counterclaims were compulsory where one of the elements of the counterclaim was an allegation that the plaintiff's original action for copyright infringement and unfair trade practices was one of a series of harassing maneuvers by plaintiff designed to interfere with defendants' exploitation of rights acquired on the advice of the additional defendants.

In this case there seems a similar nexus between the counterclaim and the

complaint. Just as in <u>Newburger</u>, Loeb and United Artists, Rex's evidence in defense of plaintiff's allegations of antitrust violations and resulting damages appears closely related to Rex's counterclaim.  Thus, the counterclaim alleges that plaintiff's complaint was an intimidating maneuver constituting tortious conduct against Rex. Hence it would appear that in the course of trying plaintiff's claim and Rex's defenses thereto, the reasoning process of the jury will require it to substantially determine Rex's rights pursuant to its counterclaim.  <u>See City of Cleveland v. Cleveland Electric Illuminating Co.</u>, <u>supra</u>, 570 F.2d at 127.

In support of its motion for dismissal, plaintiff relies heavily on <u>North Carolina Electric Membership Corp. v. Carolina Power & Light Co.</u>, 85 F.R.D. 249 (M.D.N.C. 1979), <u>affirmed per curiam</u> 618 F.2d 102 (4th Cir. March 26, 1980) (unpublished) (hereafter <u>NCEMC</u>). There, plaintiffs brought an antitrust action alleging defendants and others conspired to and actually monopolized the power production market by, among other things, preventing plaintiffs from entering that market. Defendants denied the allegations of the complaint and Carolina Power & Light counterclaimed for abuse of process and tortious interference with its business relationships, both of which causes of action were grounded on North Carolina law. These counterclaims arose primarily out of two occurrences: an application filed in 1974 by plaintiff North Carolina Electric Membership Corp. to the Federal Power Commission to obtain the license for the Walters Hydroelectric Development and the institution by all plaintiffs of the instant antitrust suit. The court held that the counterclaims were permissive and not compulsory for the reasons that the issues of fact and law involved in the antitrust and State law claims were separate and distinct; success on the monopolization claim would not have barred a subsequent suit for the State law violations; the same evidence would not have supported or refuted the antitrust claim and counterclaim; and there was no logical relationship between them.

I believe, however, that the situation in <u>NCEMC</u> bears little resemblance to the situation here. For here in contrast to <u>NCEMC</u> there are substantial issues which overlap, including the series of actions in connection with the petition for a certificate of need, the proceedings before the Medical Care Commission, and the filing of the State court appeal from the Commission's decision. Also, a final determination in favor of plaintiff would collaterally estop Rex from denying the truth of plaintiff's allegations of antitrust violations. Moreover, it would appear that substantial evidence will be introduced that both supports the counterclaim for abuse of process and simultaneously refutes plaintiff's claim of antitrust violations. And finally there is a logical relation between the counterclaim and the complaint. In sum, unlike the counterclaim in the present case, the counterclaim in <u>NCEMC</u> seems far removed in time and circumstance from the transaction or occurrence that is the subject matter of the allegations of the plaintiff's complaint.

Also distinguishable is <u>Harris v. Steinem</u>, 571 F.2d 119 (2d Cir. 1978). In that case, plaintiff sued defendants for securities law violations arising out of the

-24-

repurchasing of plaintiff's stock in a magazine. Defendants counterclaimed for libel which consisted of the filing of a lawsuit and the making of several public statements regarding the lawsuit which referred solely to the allegations contained in the complaint which was a matter of public record. The court held that while plaintiff's success on the main claim would probably have defeated the counterclaim, various essential issues involved in the claim and counterclaim were so different that the logical relationship between them was at best attenuated. Additionally, the court was of the view that the case fell within the well established narrow line of decisions holding that counterclaims which are based solely on the filing of the main complaint and allegedly libelous publication thereafter are not compulsory. In this connection, the court added that "postponement of suits that will ordinarily not arise if plaintiff wins the main action and avoidance of the 'dangerous potentialities of counterclaims (in the nature of) malicious prosecutions as a defensive stratagem' are strong policy reasons supporting that line of cases." 571 F.2d at 125.

It is apparent against this background that the counterclaim here is quite different from the counterclaim involved in the Harris v. Steinem line of cases. In the first place, a significant portion of the present counterclaim involves alleged abuse of process and on this score is similar to Newburger, Loeb & Co. v. Gross, supra, 563 F.2d 1057, and United Artists Corp. v. Masterpiece Productions, supra, 221 F.2d 213.  Second, although as in Harris v. Steinem the other portion of the present counterclaim involves defamation based on publication of the allegations of the complaint, that claim seems to intertwined with the claim for abuse of process that a separate trial for each would involve a needless duplication of judicial effort.

Lastly, plaintiff relies on National Bowl-O-Mat Corp. v. Brunswick Corp., 264 F. Supp. 221 (D.N.J. 1967), an antitrust action in which the defendant counterclaimed for defamation, alleging that plaintiff had widely publicized its litigation allegations that defendant violated the antitrust laws. The trial judge dismissed the counterclaim for failure to state a cause of action for defamation under State law. Given that circumstance, the court commented that "(t)here is no need here to determine whether this is a compulsory or permissive counterclaim or whether this Counterclaim 'arises out of the transaction' which is the subject matter of this litigation." 264 F.Supp. at 225. Thus that case is irrelevant to any issue here.

86 F.R.D. at 698-700 (footnote omitted).  The district court thus denied the plaintiff's motion to

dismiss the counterclaim for lack of subject-matter jurisdiction.  See 86 F.R.D. at 700.

Other courts have found that an abuse-of-process counterclaim is not a compulsory

counterclaim in the action which is allegedly abusive.  See Anderson v. Ctr. Point Sch. Dist. No. 6,

554 F. Supp. 600, 604-05 (D. Or. 1982), rejected by Pochiro v. Prudential Ins. Co. of Am., 827 F.2d

1246 (9th Cir. 1987)(finding that an abuse-of-process counterclaim was permissive rather than compulsory, because the abuse-of-process claim was not logically related to the first-amendment claim, and stating "Anderson's claim is that he was disciplined for exercising his first amendment rights; Groshong's abuse of process claim is that Anderson's present action is not for the legitimate purpose of recovering damages, but for the collateral purpose of coercing the district into accepting a proposed collective bargaining agreement," and finding that the "two claims require different proof and have different factual bases"); Bose Corp. v. Consumers Union of U.S., Inc., 384 F. Supp. 600, 601-02 (D. Mass. 1974)(finding that the counterclaim for malicious abuse of process was permissive, because the issues of fact and the issues of law raised by the claims and the counterclaims were significantly dissimilar, judgment on the plaintiff's claims would not operate as res judicata in a suit for malicious abuse of process, because the logical relation standard was too vague to be satisfactorily applied as the claims and counterclaim was too dissimilar, and because the alleged malicious abuse of process constituted no part of the transaction or occurrence of which the plaintiff claimed).

In Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254 (8th Cir. 1979), the United States Court of Appeals for the Eighth Circuit addressed whether the appellants' claims were compulsory counterclaims. See 596 F.2d at 262. The Eighth Circuit noted that the central theme of the appellants' complaint was abuse of legal process and stated that "[i]n no substantial sense can appellants' claims for relief for abuse of process be found to have arisen out of the alleged breach of contract . . . and out of the alleged breach of fiduciary duties [which were the subjects of the other actions]." 596 F.2d at 263.

This conclusion is supported by the scholarly opinion of Judge Julian in a similar case, Bose Corporation v. Consumers Union of United States, Inc., (D. Mass. 1974) 384 F.Supp. 600. After a review of the applicable case law and the various

tests described in 6 Wright & Miller, <u>Federal Practice and Procedure</u> s 1410, Judge
Julian concluded:

> The counterclaims can be read to allege malicious abuse of
> process. The analysis is similar to the analysis concerning
> defamation; The counterclaims are permissive and are barred unless
> operation of the statute of limitations was suspended. The
> counterclaims also can be read to assert a claim for malicious
> prosecution of a civil action. Such a claim is premature; the
> defendant must, and cannot, allege a favorable termination of this suit
> if it is to proceed on a theory of malicious prosecution. (Emphasis
> added and citation omitted.) 384 F.Supp. l.c. 603.

The varying tests for determining whether the claim in question arose out of
the same transaction or occurrence, within the meaning of Rule 13(a) are set forth
in 6 Wright & Miller, <u>Federal Practice and Procedure</u> s 1410 at page 42 as follows:

> 1) Are the issues of fact and law raised by the claim and counterclaim
> largely the same?
>
> 2) Would res judicata bar a subsequent suit on defendant's claim
> absent the compulsory counterclaim rule?
>
> 3) Will substantially the same evidence support or refute plaintiff's
> claim as well as defendant's counterclaim?
>
> 4) Is there any logical relation between the claim and the
> counterclaim? (Footnotes omitted.)

Under these tests, as concluded by Judge Julian in the Bose Corporation case,
Supra, the claims for relief of appellants for abuse of process did not arise out of the
transaction or occurrence described in appellees' complaints in the Northern District
of Iowa.

The reasoning of Judge Julian and the authorities cited are fully applicable
to this case, in which the factual contrast between the claims of appellants and the
transaction or occurrence of appellees' claim for relief is much clearer.

596 F.2d at 263-64 (footnote omitted).

In <u>North Carolina Electric Membership Corp. v. Carolina Power & Light Co.</u>, 85 F.R.D. 249

(M.D.N.C. 1979), the United States District Court for the Middle District of North Carolina found

that the abuse-of-process and tortious-interference counterclaims were permissive, and concluded

that it should be dismiss the counterclaims for lack of subject-matter jurisdiction.  See 85 F.R.D. at

254.  The district court concluded that the issues of fact and law which the main action raised, and

which the counterclaims raised, were in no way largely the same.  See 85 F.R.D. at 251.

> The elements of a s 1 Sherman Act violation are proof of "interstate or foreign commerce, two or more parties, an agreement, a restraint of trade, and the unreasonability of such restraint."  Unibrand Tire & Product Co. v. Armstrong Rubber Co., 429 F. Supp. 470, 474 (W.D.N.Y. 1977).  Proof of a s 2 violation requires a showing that defendant possesses monopoly power and that it willfully acquired or maintained such power.  Structure Probe, Inc. v. Franklin Institute, 450 F. Supp. 1272, 1281 (E.D. Pa. 1978).  Abuse of process consists of an ulterior purpose in the use of process and an act in the use of that process not proper in the ordinary prosecution of the proceeding.  Edwards v. Jenkins, 247 N.C. 565, 567, 101 S.E.2d 410, 412 (1958).  Tortious interference has as its essential elements: a valid contract between plaintiff and a third person; knowledge of the defendant that the contractual relationship existed; intentional inducement by the defendant to the third person not to perform under the contract; and an absence of justification for that inducement.  Childress v. Abeles, 240 N.C. 667, 673, 84 S.E.2d 176, 181 (1954).  If the tort is based on interference with future relations, the plaintiff must show lack of justification for inducing a third party to refrain from entering into a contract with the plaintiff which contract would have ensued but for the interference.  Spartan Equipment Co. v. Air Placement Equipment Co., 263 N.C. 549, 558, 140 S.E.2d 3, 11 (1965).

> It is clear from the above list of elements that the issues of law and fact involved in the antitrust and state law claims are separate and distinct.  The only overlap the Court perceives is, perhaps, the question of reasonableness.  For instance, CPL may try to show that the prices it charged the plaintiffs for various power exchange services were reasonable, and thus it committed no antitrust violation. CPL might also offer that evidence to show, rather indirectly, that the plaintiffs had an ulterior motive for filing their antitrust suit.

85 F.R.D. at 251.  The district court found that res judicata and/or related doctrines would not bar

a subsequent suit based on the counterclaims.  See 85 F.R.D. at 253.

> As the Fourth Circuit implicitly recognized in Sue & Sam, this test is considerably broader than the traditional boundaries of the doctrine of res judicata. 538 F.2d at 1052 (". . . if not on the grounds of res judicata, then on the grounds of estoppel by judgment, or collateral estoppel, or related doctrines, however called."). Accord, Wright, Federal Courts s 79 (1976). Although the Fourth Circuit cited s 68 of the Restatement, Judgments (1942), in discussing this question, the Court is persuaded that s 58 of the Restatement is more on point. Comment c to that section

-28-

states that:

> "Where the same facts constitute a ground of defense to the plaintiff's claim and also a ground for a counterclaim, and the defendant alleges these facts as a defense but not as a counterclaim, and after litigation of the defense judgment is given for the plaintiff, the defendant is precluded from maintaining an action against the plaintiff based on these facts."

> Section 68, on which the Court relied in Sue & Sam, states that

> "(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. . . ."

Since Comment c to s 58 states that the rule set out therein "is in accordance with the rule as to collateral estoppel stated in s 68," the clear implication of Comment c is that the facts which constitute a ground of defense and a ground for a counterclaim must be essential to the judgment for the plaintiff in order for that judgment to stand as a bar to the use of those facts as the basis for a later suit by the defendant. In the present case, again focusing on the issue of the reasonableness of the charges levied by CPL for various power exchange services, the Court cannot say that the question of reasonableness constitutes a ground for a defense to the antitrust claims and a ground for a counterclaim based on either abuse of process or tortious interference. It may constitute an entire theory of defense to antitrust liability based on the particular charges in question, but due to the slight probative value of those charges as they relate to ulterior motive, it is much less than an entire theory or ground of either counterclaim.  In effect, all that can be said of the facts surrounding the question of reasonableness is that they comprise some slight evidence of the plaintiffs' ulterior motive in filing its application before the FPC and the instant antitrust action. Thus, even if such facts are litigated adversely to CPL in this suit, it will hardly foreclose a successful action against NCEMC and others for abuse of process or tortious interference. For example, in connection with the 12(b)(6) motion, CPL referred to the remarks of Heyward McKinney, Manager of the Pee Dee Electrical Membership Corporation, in whose deposition he allegedly stated that "forcing CP&L to sell nuclear generating facilities to NCEMC was a primary purpose of filing an antitrust suit." Defendant CPL's Brief in Opposition to Plaintiffs' Motion to Dismiss for Failure to State a Claim at 2 n. 10. Such evidence, if true, would be vastly more probative of ulterior motive than evidence that CPL's charges were reasonable.

85 F.R.D. at 251 (footnotes omitted).  The district court did not find that substantially the evidence

would support or refute the antitrust claim as well as the counterclaims.  See 85 F.R.D. at 253.  The

district court also concluded that there was no logical relationship between the antitrust claims and

the counterclaims. See 85 F.R.D. at 254.

CPL asserts that the attitude which provoked the license application and the antitrust suit developed over a much longer period of time than plaintiffs would have the Court to believe. It urges that the failure of the plaintiffs to acquire generating facilities is bound up with the license application and the negotiations for CPL's nuclear facilities which CPL apparently has refused to sell to the plaintiffs, all of which serves as the basis of the antitrust action and the counterclaims. It, therefore, concludes that the logical relationship between the antitrust claim and the counterclaims is quite strong, and that even though the first three questions have been answered in the negative, the answer to this last question should be dispositive of the motion to dismiss. Defendant CPL in this regard places great emphasis on the case of Great Lakes Rubber Corp. v. Herbert Cooper Co., Inc., 286 F.2d 631 (3rd Cir. 1961). That case, however, involved a different factual scenario than does this case. There the plaintiff brought an action against Cooper claiming various acts of unfair competition. Cooper answered Great Lakes' complaint, denying the contentions and making two counterclaims. One was based on alleged antitrust violations, the other on what CPL interprets as abuse of process. Cooper then moved the Court to dismiss the complaint for lack of jurisdiction due to an absence of diversity. That motion was granted, but in answering the counterclaims of Cooper, Great Lakes repeated the allegations of unfair competition set out in its original complaint. Cooper then sought to have the counterclaims of Great Lakes dismissed for lack of ancillary jurisdiction, but the Third Circuit overruled the trial court's order granting that motion.

By contrast, our case involves a plaintiff who has brought an antitrust action and a defendant who seeks to counterclaim for abuse of process. In Great Lakes the party bringing the antitrust action and the abuse of process claim were one and the same. The motion to dismiss in Great Lakes was based on the argument that the abuse of process claim had no relation to the state-based unfair competition claims, while in our case the argument of CPL is that there is a logical relation between the abuse of process claim and the federal antitrust action. Thus Great Lakes cannot control the result in this case.

To the contrary, the Court is persuaded that Great Lakes should be given little weight in the resolution of the 12(b)(1) motion. The main claim "falls within the very narrow scope of a federal statute, the defendant's within the very broad range of state remedies." Roberts v. National School of Radio & Television Broadcasting, 374 F.Supp. 1266, 1271 (N.D. Great American. 1974). Plaintiffs' claim is pursuant to a stated federal legislative policy. Id. Should the Court allow the counterclaims to proceed, there almost certainly would have to be severed trials of the antitrust claims and the counterclaims. The Court also notes that in an analogous context the majority of courts faced with the question have held a counterclaim for the amount due on a

-30-

loan transaction to be permissive in a suit in which the plaintiff seeks redress for alleged violations of the Truth in Lending Act. 15 U.S.C. s 1601 et seq. See e. g., Basham v. Finance America Corp., 583 F.2d 918 (7th Cir. 1978); Meadows v. Charlie Wood, Inc., 448 F. Supp. 717 (M.D. Great American. 1978); Daughtrey v. First Bank & Trust Co. of South Bend, 435 F. Supp. 218 (N.D. Independent. 1977); Gammons v. Domestic Loans of Winston-Salem, Inc., 423 F. Supp. 819 (M.D.N.C. 1976). The policy reasons operative in that context are influential in the present as well, and the Court concludes for all of the reasons heretofore stated that there is no logical relationship between the antitrust claims and the counterclaims.

85 F.R.D. at 253-54 (footnotes omitted).

In Regents of the University of New Mexico v. Knight, No. CIV 99-577 JC, Memorandum Opinion and Order, filed June 18, 2003 (Doc. 383), the Honorable John Edwards Conway, Senior United States District Judge, found that Knight's counterclaims for intentional interference with prospective economic advantage and malicious abuse of process were not compulsory counterclaims. See Memorandum Opinion and Order at 6-7. Judge Conway noted that the issues of law and fact in the counterclaims were not the same as those that the University of New Mexico ("UNM") asserted in its original complaint, and that neither of the counterclaims contained issues of law or fact which were similar to UNM's principle claims concerning breach of contract, ownership of patents, and inventorship. See Memorandum Opinion and Order at 6-7. Judge Conway noted that, because of the factual differences surrounding UNM's principal claims and Knight's counterclaims, res judicata would not be a bar to a subsequent lawsuit. See Memorandum Opinion and Order at 7. Judge Conway also noted that, moreover, "the evidence required to prosecute a subsequent suit would not be substantially the same." Memorandum Opinion and Order at 7. "Finally, the Court cannot find anything exceeding an attenuated relationship between UNM's claims and the Defendant's counterclaims 2 and 3." Memorandum Opinion and Order at 7.

## RELEVANT NEW MEXICO LAW REGARDING MALICIOUS ABUSE OF PROCESS

In DeVaney v. Thriftway Marketing Corp, 124 N.M. 512, 953 P.2d 277 (1998), overruled

on other grounds by Durham v. Guest, 145 N.M. 694, 204 P.3d 19 (2009), the Supreme Court of

New Mexico reviewed the purposes and elements of the two torts of abuse of process and malicious

prosecution.  See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 517, 953 P.2d at 282.  The

Supreme Court of New Mexico concluded that the two torts would no longer be separate causes of

action and restated their elements into a single tort -- malicious abuse of process.  See DeVaney v.

Thriftway Mktg. Corp., 124 N.M. at 518, 953 P.2d at 283.  In New Mexico, the tort of malicious

abuse of process is disfavored, because of "the potential chilling effect on the right of access to the

courts."  Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. 150, 156, 164 P.3d 31, 37

(2007)(citation omitted).  New Mexico courts state that the tort of malicious abuse of process should

be construed narrowly to protect the right of access to the courts.  See  Durham v. Guest, 145 N.M.

at 701, 204 P.3d at 26; Weststar Mortg. Corp. v. Jackson, 133 N.M. 114, 119, 61 P.3d 823, 828

(2002).  Malicious-abuse-of-process claims involve balancing "the interest in protecting litigants'

right of access to the courts and the interest in protecting citizens from unfounded or illegitimate

applications of the power of the state through the misuse of the courts."  DeVaney v. Thriftway

Mktg. Corp., 124 N.M. at 517, 953 P.2d at 282.  "[T]he filing of a proper complaint with probable

cause, and without any overt misuse of process, will not subject a litigant to liability for malicious

abuse of process, even if it is the result of a malicious motive."  DeVaney v. Thriftway Mktg. Corp.,

124 N.M. at 520, 953 P.2d at 285.

        The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial

proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii)

a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages.  See

Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.  An improper use of process may be shown by:

(i) filing a complaint without probable cause; or (ii) an irregularity or impropriety suggesting

extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process.  See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.

The Supreme Court of New Mexico has defined probable cause in the malicious-abuse-of-process context as "a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury." Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (internal quotations and citation omitted).  "The lack of probable cause must be manifest."  Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (citation omitted).  "Probable cause . . . is to be judged by facts as they appeared at the time, not by later-discovered facts." Weststar Mortg. Corp. v. Jackson, 133 N.M. at 122, 61 P.3d at 831 (citing Restatement (Second) of Torts § 662 cmt. e (stating that an accusation leading to the initiation of a criminal proceeding must be based on probable cause, determined as of the time the action was filed)(other citations omitted).  The existence of probable cause in the underlying proceeding is a question of law that the court should decide.  See  Weststar Mortg. Corp. v. Jackson, 133 N.M. at 123, 61 P.3d at 832 ("[T]he existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law and shall be decided by the trial judge.")(internal quotation marks and citation omitted).  A malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." DeVaney v. Thriftway Marketing Corp., 124 N.M. at 522, 953 P.2d at 287.

Lack of probable cause is not the only way to establish misuse of process; a plaintiff can also show misuse of process by pointing to "some irregularity or impropriety suggesting extortion, delay or harassment."  Id. at 522, 953 P.2d at 287.  A plaintiff may prove misuse of process through

-33-

procedural irregularity -- such as misuse of discovery, subpoenas, and attachments -- or an act that otherwise indicates wrongful use of proceedings -- such as an extortion attempt. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. Some examples of misuse of process include: (i) excessive execution on a judgment; (ii) attachment of property other than the property involved in the litigation; (iii) oppressive conduct in connection with an arrest or seizure of property; and (iv) extortion of excessive sums of money. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

Under the requirement of a primary improper motive, it is insufficient that the malicious-abuse-of-process defendant acted with ill will or spite. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287 (citing W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, Prosser and Keeton on the Law of Torts § 121, at 897 (5th ed. 1984)("[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.")(emphasis added)). There must be a purpose to accomplish an illegitimate end. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. The Supreme Court of New Mexico has given several examples of improper purpose, including: (i) a litigant who pursues a claim knowing that the claim is meritless; (ii) a litigant who pursues a claim primarily to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (iii) a litigant who misuses the law primarily for harassment or delay; or (iv) a litigant who initiates proceedings primarily for the purpose of extortion. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. An overt misuse of process may support an inference of an improper purpose, but a court may not infer from evidence of an improper purpose alone that there was not probable cause or that there was not a proper use of process. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

-34-

In <u>DeVaney v. Thriftway Marketing Corp.</u>, the Supreme Court of New Mexico stated:

> The requirement of a favorable termination in the action for malicious prosecution has affected the availability of a counterclaim by the defendant in the original proceeding.  Many courts have discouraged counterclaims founded on a lack of probable cause in order to avoid jury confusion.  However, the existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law.  Because we do not recognize favorable termination as an element of a cause of action for malicious abuse of process, we hold that such a claim may be raised by counterclaim.

124 N.M. 521, 953 P.2d at 286 (internal citations omitted).  The Supreme Court further stated that

a malicious-abuse-of-process plaintiff alleging a lack of probable cause before a termination of the

underlying claim must demonstrate the lack of probable cause by clear and convincing evidence.

<u>See</u> 124 N.M. at 521, 953 P.2d at 286.

> If a plaintiff chooses to delay the assertion of a malicious abuse of process claim until the termination of the underlying proceeding, the plaintiff must, instead, prove a lack of probable cause by a preponderance of the evidence.  The availability of a favorable-termination defense adequately safeguards honest litigants so that a higher standard of proof is unnecessary.

124 N.M. 521-22, 953 P.2d at 286-87 (internal citations omitted).

In <u>Fleetwood Retail Corp. of New Mexico v. LeDoux</u>, the Supreme Court of New Mexico

stated:

> This case highlights some of the challenges inherent in the malicious abuse of process tort when such a claim is based on lack of probable cause and is brought as a counterclaim in the original proceeding.
>
> . . . .
>
> This potential inconsistency that hindsight reveals in <u>DeVaney</u> goes to the entire question of why differing burdens of proof would even be necessary. If the malicious abuse of process claim is tried as a counterclaim to the underlying claims, then the jury's determination in the original plaintiff's favor on the underlying claims would trump any finding, even by clear and convincing evidence, of a lack of probable cause. It would be only when the original plaintiff loses on the underlying claims that the defendant/counterclaimant would have to prove lack of probable cause. The foregoing discussion touches on some of the challenges only now

-35-

apparent as effects of our opinion in DeVaney.

   While we do not attempt to resolve these challenges here, we do offer some
suggestions on how to structure the proceedings to make the resolution of malicious
abuse of process counterclaims less cumbersome. One way would be to bifurcate the
proceedings, having the jury decide the underlying claims first and then, if the
verdict is in favor of the original defendant, present the malicious abuse of process
counterclaim with the court deciding the ultimate issue of probable cause, if based
on undisputed facts and inferences or after the jury has found the facts. Similarly, if
the original defendant succeeds on a motion for directed verdict, then the malicious
abuse of process counterclaim could go forward. Another way would be to use
special verdict forms and jury instructions to the effect that the jury should not reach
the malicious abuse of process issues unless it finds in favor of the original defendant
on all of the underlying claims. Trial courts and practitioners should use the
procedural tools available to them to best structure the proceedings for each
particular case.

   In any event, it is apparent that there is no real reason for the heightened
burden of proof established in DeVaney. Whether the parties and the court choose
bifurcation or jury instructions to the effect that the malicious abuse of process
counterclaim should only be reached if the jury finds for the defendant on all the
underlying claims, it will be clear that the original plaintiff will have lost on its
claims before the jury considers the counterclaim. Therefore, the heightened burden
of proof established by DeVaney, 1998–NMSC–001, ¶ 25, 124 N.M. 512, 953 P.2d
277, is unnecessary. We encourage the UJI Civil Committee to consider revisions to
the jury instructions for malicious abuse of process claims that would address the
above-mentioned concerns. Cf. State v. Reed, 2005–NMSC–031, ¶ 46, 138 N.M.
365, 120 P.3d 447 (directing UJI Criminal Committee "to consider whether an
instruction can be formulated that helps the jury understand the function of the
phrase 'depraved mind' ").

142 N.M. at 158-59, 164 P.3d at 39-40.

   In Gonzalez v. Lopez, 132 N.M. 558, 52 P.3d 418 (Ct. App. 2002), the Court of Appeals of

New Mexico found that the district court did not abuse its discretion when it struck without

prejudice the malicious-prosecution counterclaim.  See 132 N.M. at 563, 52 P.3d at 423.  The Court

of Appeals stated:

   Defendants concede that their counterclaim did not arise until after the filing of the
   original complaint. See Rule 1-013(E) NMRA 2002. We characterize the
   counterclaim as permissive because it arose not from Defendants' conduct as alleged
   in the complaint but from the filing of the complaint itself. Rule 1-013(B) (defining

a permissive counterclaim as "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim"). Rule 1-013(B) does not compel the district court to entertain a permissive counterclaim, and Rule 1-013(E) requires the district court's permission to file a counterclaim maturing or acquired after pleading. Thus, in either case, allowing the counterclaim was within the district court's discretion. See Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 702, 704 (2nd Cir. 2000) (discussing counterclaims deemed as permissive under Rule 1-013(B) as being subject to the court's discretion). Allowing addition of the counterclaim would complicate trial of the basic estate claim, require additional discovery and potentially delay an imminent trial. Under these circumstances, it is not an abuse of discretion by the district court to deny inclusion of a permissive counterclaim.

132 N.M. at 563-64, 52 P.2d at 423-24.

## ANALYSIS

The Court believes that the Counterclaimants' malicious-abuse-of-process Counterclaim is a permissive and is not a compulsory counterclaim. The Court does not believe it has supplemental jurisdiction over the Counterclaim, because the Counterclaim and Walker's claims do not arise from a common nucleus of operative fact. Although the Court does not have supplemental jurisdiction over the Counterclaim, it has diversity jurisdiction over the Counterclaim. Because the Counterclaimants have pled sufficient facts to state a claim for relief for malicious abuse of process that is plausible on its face, the Court will deny Walker's request that it dismiss the malicious-abuse-of-process Counterclaim.

## I.    THE COURT IS NOT BOUND BY NEW MEXICO COURTS' INTERPRETATION WHETHER THE MALICIOUS-ABUSE-OF-PROCESS COUNTERCLAIM IS COMPULSORY OR PERMISSIVE IN FEDERAL COURT.

The Tenth Circuit has stated that it looks to state law to determine if a claim was a compulsory counterclaim with respect to earlier litigation in state court. See Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc., 497 F.3d 1096, 1100 (10th Cir. 2007). See also Am. Plastic Equip., Inc. v. Toytrackerz, LLC, No. 07-2253-DJW, 2008 WL 917635, at *5 (D. Kan. Mar.

31, 2009)(recognizing that it had held, on prior occasions, that "Kansas' compulsory counterclaim statute, K.S.A. 60-213(a), should be applied to determine whether a claim filed in federal court was a compulsory counterclaim with respect to an earlier action brought in Kansas state court" and that it had "also applied Kansas case law to determine the preclusive effect of the failure to raise such a compulsory counterclaim in the earlier state court action"); Shero v. City of Grove, Okla., No. 05-CV-0317-CVE-PJC, 2006 WL 2708612, at *3-4 (Sept. 20, 2006)("In cases such as this, where the initial action was filed in state court, the Tenth Circuit requires the district court to refer to state law to determine if the unlitigated counterclaims were compulsory or permissive." (citation omitted)).

When addressing issues whether a federal court has subject-matter jurisdiction over a claim, however, the Tenth Circuit has applied rule 13 of the Federal Rules of Civil Procedure. See Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc., 98 F.3d 1241, 1244-45 (10th Cir. 1996)(stating that the counterclaim was compulsory and citing rule 13 of the Federal Rules of Civil Procedure); Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd, 503 F.2d 1193, 1197-98 (10th Cir. 1974)(considering rule 13 of the Federal Rules of Civil Procedure and federal law in determining whether a district court had ancillary jurisdiction over a counterclaim); N.L.R.B. ex rel. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC v. Dutch Boy, Inc., 606 F.2d 929, 932 (10th Cir. 1979)(determining that a cross-application was not a compulsory counterclaim, and that the district court correctly dismissed the cross-application for lack of jurisdiction after considering federal law). Because the Court is not determining whether it should dismiss the Counterclaim as barred, because it should have been brought in previous state litigation, and because the Court must determine whether it has subject-matter jurisdiction over the Counterclaim, the Court believes that it should rely on rule 13 of the Federal Rules of Civil Procedure and on federal law. See Geoffrey E.

Macpherson, Ltd. v. Brinecell, Inc., 98 F.3d at 1244-45; Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd, 503 F.2d at 1197-98.  Even if, however, the Court looked to rule 13 of the New Mexico Rules of Civil Procedure, it would reach the same result.  Rule 13 of the New Mexico Rules of Civil Procedure and rule 13 of the Federal Rules of Civil Procedure are essentially identical. Compare N.M. R. Civ. P. 13A (stating that a "pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party," if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction"), with Fed. R. Civ. P. 13 ("A pleading must state as a counterclaim any claim that -- at the time of its service -- the pleader has against an opposing party if the claim:" "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim;" and "does not require adding another party over whom the court cannot acquire jurisdiction").  New Mexico courts have also relied on federal law in interpreting rule 13 of the Federal Rules of Civil Procedure. See, e.g., Heffern v. First Interstate Bank, 99 N.M. 531, 533-34, 660 P.2d 623-24 (Ct. App. 1983).

## II.   THE COURT DOES NOT BELIEVE THAT THE COUNTERCLAIMANTS' MALICIOUS-ABUSE-OF-PROCESS COUNTERCLAIM IS A COMPULSORY COUNTERCLAIM.

The authorities have split on the question whether an abuse-of-process counterclaim is a compulsory counterclaim in the action which is allegedly abusive.  See Pochiro v. Prudential Ins. Co. of Am., 827 F.2d at 1252.  The Court believes that, in the case before it, the authorities which find that a malicious-abuse-of-process counterclaim is a permissive counterclaim, not a compulsory counterclaim, are more persuasive.

The Court believes that this malicious-abuse-of-process Counterclaim is not compulsory. Courts which have held that a malicious-abuse-of-process counterclaim is not compulsory have done

so because the issues of fact and the issues of law raised by the claims and the counterclaims were significantly dissimilar, because judgment on the plaintiff's claims would not operate as res judicata in a suit for malicious abuse of process, and because there was not a sufficient logical relation between the claim and the counterclaim.  See Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254 (noting that the central theme of the appellants' complaint was abuse of legal process and stated that "[i]n no substantial sense can appellants' claims for relief for abuse of process be found to have arisen out of the alleged breach of contract . . . and out of the alleged breach of fiduciary duties [which were the subjects of the other actions]"); Anderson v. Ctr. Point Sch. Dist. No. 6, 554 F. Supp. 600 (finding that an abuse-of-process counterclaim was permissive rather than compulsory, because the abuse-of-process claim was not logically related to the first-amendment claim, and stating "Anderson's claim is that he was disciplined for exercising his first amendment rights; Groshong's abuse of process claim is that Anderson's present action is not for the legitimate purpose of recovering damages, but for the collateral purpose of coercing the district into accepting a proposed collective bargaining agreement," and finding that the "two claims require different proof and have different factual bases"); Bose Corp. v. Consumers Union of U.S., Inc., 384 F. Supp. at 601-02 (finding that the counterclaim for malicious abuse of process was permissive, because the issues of fact and the issues of law raised by the claims and the counterclaims were significantly dissimilar, because judgment on the plaintiff's claims would not operate as res judicata in a suit for malicious abuse of process, because the logical relation standard was too vague to be satisfactorily applied as the claims and counterclaim was too dissimilar, and because the alleged malicious abuse of process constituted no part of the transaction or occurrence of which the plaintiff claimed); N.C. Elec. Membership Corp. v. Carolina Power & Light Co., 85 F.R.D. at 251-54 (finding that the abuse of process and tortious interference counterclaims were permissive and concluded that it should be

dismiss the counterclaims for lack of subject matter jurisdiction).  The Tenth Circuit requires the Court to consider whether: (i) the counterclaim involves the same issues of law and fact as the principal claim; (ii) res judicata would bar the defendant from bringing a subsequent suit on the same claim; (iii) the counterclaim involves the same evidence as the principal claim; and (iv) there is a logical relationship between the principal claim and the counterclaim.  See FDIC v. Hulsey, 22 F.3d at 1487.

The issues of fact and law that Walker's claims for racial discrimination, retaliation, breach of contract, and intentional infliction of emotional distress raise, and that the malicious-abuse-of-process counterclaim raise, are not largely the same.  To prove her race discrimination claims, Walker must prove, by a preponderance of the evidence, that she was terminated and that her race was a motivating factor in the decision.  To prove her retaliation claims, Walker must prove that she engaged in a protected activity -- that she complained internally about racial discrimination, that an adverse employment action then occurred, that the adverse employment action was causally related to her protected activities and that she suffered damages as a proximate or legal result of such adverse employment action.  Cf. Noland v. City of Albuquerque, No. CIV 08-0056 JB/LFG, Court's Final Preliminary Jury Instructions (with citations), filed April 4, 2011 (Doc. 164).  To prove her breach-of-contract claim, Walker must prove that she had a contract with the Defendants, that they breached that contract, and that she suffered damages as a result of that breach.  See Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995)(stating that the elements of a breach-of-contract action are existence of a contract, breach of the contract, causation, and damages).  To prove her intentional-infliction-of-emotional-distress claim, Walker must prove: (i) the conduct in question was extreme and outrageous; (ii) the conduct of the defendant was intentional or in reckless disregard; (iii) the plaintiff's mental distress was extreme

-41-

or severe; and (iv) there is a causal connection between the defendant's conduct and the claimant's mental distress.  See Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 131 N.M. 607, 616, 41 P.3d 333, 342 (2001).  To prove their malicious-abuse-of-process Counterclaim, the Counterclaimants must prove the use of process in a judicial proceeding that would be improper in the regular prosecution of a claim or charge, with a primary motive to use process to accomplish an illegitimate end and damages.  See Mosley v. Titus, No. CIV 09-0794, 2010 WL 4927941, at *9 (D.N.M. Oct. 28, 2010)(Browning, J.).  As in North Carolina Electric Membership Corp. v. Carolina Power & Light Co., where the district court found that the issues of fact and law raised by the main action and the abuse-of-process counterclaim were in no way largely the same, because the elements of the claims showed that they were separate and distinct claims, the issues of law that Walker's claims and that the abuse-of-process Counterclaim raises are not largely the same, because the elements of the malicious-abuse-of-process counterclaim and Walker's claims are separate and distinct.

Similarly, there will not be a strong overlap between the factual issues.  In her SAC, Walker alleges that, during her employment with THI of Hobbs, the Defendants discriminated against her on the basis of her race.  See SAC ¶¶ 41-48, 51-54, at 12-15.  She alleges that she repeatedly complained to her supervisors and human resources personnel about the abusive and discriminatory conduct, but that the Defendants did not investigate, or did not properly investigate, the complaints and did not take disciplinary action.  See SAC ¶ 48, at 13.  She alleges claims under Title VII, the NMHRA, 42 U.S.C. §1981, and claims for breach of contract, intentional infliction of emotional distress and punitive damages.  See SAC ¶¶ 79-84, at 23-25.

In the Addendum and Counterclaim, the Counterclaimants allege that, in filing her Complaint, and subsequent amended Complaints, Walker exaggerated allegations, made claims and allegations without probable cause or reasonable investigation, and engaged in irregularities and

improprieties.  See Addendum and Counterclaim ¶ 15, at 4-5.  They allege that, when Walker filed her Complaint, she alleged for the first time "that a number of persons had made racist remarks in the Hobbs workplace."  Addendum and Counterclaim ¶ 16, at 5.  They contend that, by asserting Title VII claims against all "Defendants," Walker represented that she exhausted administrative remedies against each Defendant and that Title VII holds individual persons liable in damages, which are not correct representations.  See Addendum and Counterclaim ¶ 24, at 8.  The Counterclaimants assert that, by asserting breach-of-contract claims against all Defendants, Walker represents that she had an employment contract with each Defendant and that her termination breached a contract, which are not correct.  See Addendum and Counterclaim ¶ 26, at 8.  Similarly, the Counterclaimants allege the Walker's representations in alleging intentional-infliction-of-emotional-distress claims and 42 U.S.C. § 1981 claims against all "Defendants" are incorrect.  Addendum and Counterclaim ¶¶ 28-30, at 8-9.  The Counterclaimants state that, after discovery, they will likely have evidentiary support that Walker made these allegations without evidentiary support or conducting a reasonable investigation to determine whether good grounds existed.  See Addendum and Counterclaim ¶ 35, at 10.  The Counterclaimants assert that Walker filed the proposed SAC with no lead notice to the Defendants of its content and that Walker did not provide it to the Defendants until just a few hours before she filed it with the Court.  See Addendum and Counterclaim ¶ 37, at 10.  The Counterclaimants also assert that the manner in which Walker withdrew or narrowed the allegations in the proposed SAC was irregular and improper, because she did not first seek consent before filing a notice of revised proposed SAC.  See Addendum and Counterclaim ¶¶ 39-40, at 12.

While the facts in the discrimination and retaliation case will be used in the abuse-of-process case, and whether Walker has a valid claim will be an issue in both, the factual issues are mostly

different.   The factual issues underlying Walker's claims relate to whether the Defendants discriminated against her or retaliated against her, whether they had a contract with her which they breached, and whether they acted outrageously with reckless regard in discriminating or retaliating against her, causing her severe emotional distress.   In contrast, the factual issues relating to the Counterclaimants' Counterclaim relate to whether Walker had a reasonable belief, after conducting a pre-filing investigation that she could establish her claims, whether Walker engaged in procedural improprieties in the course of the litigation, and whether Walker's actions were intended to accomplish an illegitimate end.   The factual issues underlying Walker's claims and the Counterclaim are thus separated in time, and do not relate to the same occurrences.   The Court thus finds that the issues of fact and of law raised by the main action and the counterclaim are not largely the same. See N.C. Elec. Membership Corp. v. Carolina Power & Light Co., 85 F.R.D. at 251-52.

Res judicata would not bar a subsequent suit of the malicious-abuse-of-process counterclaim, absent the compulsory counterclaim rule.   As in North Carolina Electric Membership Corp. v. Carolina Power & Light Co., where the court found that res judicata would not bar a subsequent suit on the counterclaims, absent the compulsory counterclaim rule, because, even if the plaintiffs' action were litigated adversely to the defendant, res judicata would not foreclose a successful action against the plaintiffs for abuse of process, even if a jury finds for Walker on her claims, res judicata would not foreclose a successful action against Walker for abuse of process.   Under federal law, res judicata requires that the prior action involved identical claims and the same parties or their privies, and that there was a final judgment on the merits.   See Garcia v. Hoover, 223 F. App'x 785, 788 (10th Cir. 2007).   Because the Counterclaimants' abuse-of-process claim is not the same claim as any of the underlying claims, res judicata would not apply to bar the Counterclaimants' abuse-of-process claim.   Similarly, under New Mexico law, res judicata would not bar a subsequent action

-44-

for malicious abuse of process, because Walker's causes of action are not the same as the causes of action that the Counterclaim raises, and because New Mexico courts have stated that a malicious-abuse-of-process claim may be brought as a counterclaim in the underlying action or in a later separate action.  See Kirby v. Guardian Life Ins. Co. of Am., 148 N.M. 106, 124, 231 P.3d 87, 105 (2010)("The party asserting res judicata must satisfy the following four requirements: (1) [t]he parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits.")(internal quotation marks and citations omitted); Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 158-59, 164 P.3d at 39-40 (recognizing a party may bring a malicious-abuse-of-process claim as a counterclaim or in a separate action).  The Court thus finds that res judicata would not bar a subsequent suit on the Counterclaim absent the compulsory counterclaim rule.  See North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 85 F.R.D. at 253; Hosp. Bldg. Co. v. Trustees of Rex Hosp., 86 F.R.D. at 698 ("It is true that a final determination of plaintiff's antitrust suit would not be res judicata of Rex's counterclaim for abuse of process.").

The most substantial objection to the Court's conclusion is that, substantially, some of the same evidence will support or refute Walker's claims, and support or refute the Counterclaimants' Counterclaim.  Evidence tending to show that the Defendants did not discriminate against Walker may also tend to show that there was a lack of credible evidence on which Walker could base her allegations.  In North Carolina Electric Membership Corp. v. Carolina Power & Light Co., the court found that substantially the same evidence would not support or refute the claim and counterclaim, because although a factfinder could accept the defendant's defense that it acted reasonably, it was doubtful that a finding of reasonableness would demand a finding of ulterior motive and that a fact finder could conclude that the defendant's actions were reasonable and that the plaintiff filed its

action without any ulterior motive.  It is true that the factfinder could find that the Defendants did

not discriminate, but possibly this would not demand a finding that Walker filed her lawsuit with

an ulterior motive or without a reasonable belief in the validity of her allegations.  That probably

does not, however, mean that the evidence regarding Walker's alleged procedural improprieties

during this litigation will not support or refute Walker's claims.  The Court thus must conclude that

substantially the same evidence will support or refute Walker's claim, and the Counterclaim.

The Court also must concede that there is a logical relation between Walker's claims and the

Counterclaim.  It is true that the Counterclaim is removed in time and circumstances from the

transaction or occurrence that is the subject matter of the allegations in Walker's Complaint.  See

Hosp. Bld. Co. v. Trustees of Rex Hosp., 86 F.R.D. at 699 ("In sum, unlike the counterclaim in the

present case, the counterclaim in NCEMC seems far removed in time and circumstance from the

transaction or occurrence that is the subject matter of the allegations of the plaintiff's complaint.").

Many of the Counterclaim's allegations, however, relate to whether Walker had probable cause to

file her Complaints.

Thus, there are sound reasons for litigating the underlying claims and the abuse-of-process

claims in the same case.  Moreover, the factors in FDIC v. Hulsey point in different directions.

Litigating an abuse-of-process claim often involves looking at the evidence for the underlying

claims to see how strong or legitimate those claims are.  There is also a relation between the

underlying claims and the counterclaim.  On the other hand, there is often a relation between two

events, and the courts do not find that all claims, however, related, must be brought in the same suit.

Moreover, the legal issues are different in the underlying claims and the abuse-of-process

counterclaim.  The Tenth Circuit in FDIC v. Hulsey indicated that it gives special weight to the same

evidence and res judicata factors.  These factors, however, point in opposite directions.  In this

event, the Court believes that, under <u>FDIC v. Hulsey</u>, the most important factor here may be the factor of res judicata, and that suggests that the factors in <u>FDIC v. Hulsey</u> counsel for treating the malicious-abuse-of-process claim as permissive.

Also, rule 13's plain language supports a determination that the Counterclaim is permissive. "[T]he transaction or occurrence that is the subject matter of" the Counterclaim is Walker's decision to file her Complaint, FAC, proposed SAC, and SAC. The alleged malicious abuse of process in the Counterclaim is a different transaction or occurrence than the alleged discrimination and retaliation against Walker. While Walker would not have filed her claims but for the alleged discrimination and retaliation, that relationship between the events does not make the events at issue in the Counterclaim and at issue in the Complaint, FAC, proposed SAC, and SAC the same transaction or occurrence. And while the some evidence may be used, in part, to support or refute the claims and the Counterclaim, some cases use the same or similar evidence, but do not necessarily involve the same transaction or occurrence. For example, in a legal malpractice case, the parties use evidence in the underlying case for the legal malpractice case, but they likely remain distinct transactions or occurrences.

There are also practical policy reasons for not finding abuse-of-process claims to be compulsory counterclaims. First, there is not sound reason to encourage these claims to be brought in the underlying case. Abuse-of-process claims are disfavored, and if not brought, society will not usually lose. Most of the underlying claims settle, and all parties usually release all claims against each other, including abuse-of-process claims. There is no sound reason to force defendants to file early or lose their abuse-of-process claim; such a rule is likely to increase unnecessarily the number of disfavored claims.

Second, abuse-of-process claims in the underlying case create significant management

problems for all persons involved, especially the plaintiff and the court. The presence of the abuse-of-process claim puts the plaintiff's work product, billing statements, and attorney-client communications at possible issue. Again, there is no sound reason to find that these claims must be brought in the underlying action.

Third, while the Court must faithfully apply controlling federal law to the issue whether the Counterclaim is compulsory or permissive, if the federal court makes abuse-of-process claims based on New Mexico law compulsory, the federal court creates a situation where litigation in federal court invites more of these claims than the state courts, thus creating a different scenario for litigation in federal courts as opposed to in state courts. Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), litigating in federal court should look as much like it would in state court as possible to discourage forum shopping and to avoid inequitable administration of the laws. See Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1539 (10th Cir. 1996)("Otherwise, in 'the typical, relatively unguided Erie choice,' courts are to heed the outcome-determination approach while also relying on the policies underlying the Erie rule: 'discouragement of forum-shopping and avoidance of inequitable administration of the laws.'"). Also, the unwary defendant in federal court -- thinking that New Mexico law applies to his or her abuse-of-process claim -- may be surprised when he or she files the claim, and finds it is barred by res judicata and rule 13's requirements. Thus, one of the incidental benefits of finding a New Mexico abuse-of-process claim to be permissive is that litigation in state court and federal court will mirror each other in this respect.

The Court thus believes that the Counterclaim is a permissive counterclaim and not a compulsory Counterclaim.

III.    **THE COURT DOES NOT HAVE SUPPLEMENTAL JURISDICTION OVER THE COUNTERCLAIM.**

Section 1367 of Title 28 of the United States Code states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  A district court may decline to exercise supplemental jurisdiction over a claim that forms part of the same case or controversy if: (i) the claim raises a novel or complex issue of state law; (ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (iii) the district court has dismissed all claims over which it has original jurisdiction; or (iv), in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  See 18 U.S.C. § 1367(c).  A claim is part of the same case or controversy if it derives from a common nucleus of operative fact, such that the plaintiff would normally be expected to try the claims in one proceeding.  See United Mine Workers of Am. v. Gibbs, 383 U.S. at 725-26; Price v. Wolford, 608 F.3d 698, 702-03 (10th Cir. 2010)(citation omitted).

In her SAC, Walker alleges that, during her employment with THI of Hobbs, the Defendants discriminated against her on the basis of her race.  See SAC ¶¶ 41-48, 51-54, at 12-15.  She alleges that she repeatedly complained to her supervisors and human resources personnel about the abusive and discriminatory conduct, but that the Defendants did not investigate, or did not properly investigate, the complaints and did not take disciplinary action.  See SAC ¶ 48, at 13.  She alleges that Melton, Andujo, and Hood terminated her employment for pretextual reasons.  See SAC ¶ 62, at 18.  Walker alleges that THI of Hobbs and the corporate defendants, acting as a single, integrated enterprise, subjected her to discrimination on account of her race and to retaliation for having

-49-

complained about the racial discrimination.  See SAC ¶ 79, at 23.  She alleges claims under Title VII, the NMHRA, 42 U.S.C. §1981, and claims for breach of contract, intentional infliction of emotional distress and punitive damages.  See SAC ¶¶ 79-84, at 23-25.

In the Addendum and Counterclaim, the Counterclaimants allege that, in filing her Complaint, and subsequent amended Complaints, Walker exaggerated allegations, made claims and allegations without probable cause or reasonable investigation, and engaged in irregularities and improprieties.  See Addendum and Counterclaim ¶ 15, at 4-5.  They allege that, when Walker filed her Complaint, she alleged for the first time "that a number of persons had made racist remarks in the Hobbs workplace."  Addendum and Counterclaim ¶ 16, at 5.  They allege that, in her Complaint and amended Complaints, Walker repeatedly made allegations against "Defendants" without giving indication regarding whose conduct was being challenged.  Addendum and Counterclaim ¶18, at 5.  They allege that, when Walker filed her proposed SAC, she accused Zack, Foreman, and Grunstein of having specific, racist intent, causing her termination and structuring corporations to frustrate civil-rights laws.  See Addendum and Counterclaim ¶ 22, at 6.  They contend that, by asserting Title VII claims against all "Defendants," Walker represented that she exhausted administrative remedies against each Defendant and that Title VII holds individual persons liable in damages, which are not correct representations.  See Addendum and Counterclaim ¶ 24, at 8.  The Counterclaimants argue that, by asserting breach-of-contract claims against all Defendants, Walker represents that she had an employment contract with each Defendant and that her termination breached a contract, which are not correct.  See Addendum and Counterclaim ¶ 26, at 8.  Similarly, the Counterclaimants allege the Walker's representations in alleging intentional-infliction-of-emotional-distress claims and 42 U.S.C. § 1981 claims against all "Defendants" are incorrect.  Addendum and Counterclaim ¶¶ 28-30, at 8-9.  The Counterclaimants state that, after discovery, they will likely have evidentiary support

that Walker made these allegations without evidentiary support or conducting a reasonable investigation to determine whether good grounds existed.  See Addendum and Counterclaim ¶ 35, at 10.  The Counterclaimants assert that Walker filed the proposed SAC with no lead notice to the Defendants of its content and that Walker did not provide it to the Defendants until just a few hours before she filed it with the Court.  See Addendum and Counterclaim ¶ 37, at 10.  The Counterclaimants also assert that the manner in which Walker withdrew or narrowed the allegations in the proposed SAC was irregular and improper, because she did not first seek consent before filing a notice of revised proposed SAC.  See Addendum and Counterclaim ¶¶ 39-40, at 12.

Walker's claims and the malicious-abuse-of-process Counterclaim do not derive from a common nucleus of operative fact.  The facts upon which Walker's claims are based relate to Walker's employment at THI of Hobbs and how she was treated during her employment.  The facts upon which the Counterclaim are based relate to Walker's actions in filing her Complaint and amended Complaints, and her actions in the litigation.  These nuclei of operative fact are not related in time, space, or origin.  See In re Colonial Mortg. Bankers Corp., 228 B.R. 516 (1st Cir. 1999)(stating that, when determining whether claims derive from the same nucleus of operative facts, a court should consider whether the facts are related in time, space, origin or motivation); DiMaso v. Duo-Fast Corp., No. 88 C 1661, 1990 WL 205818, at *5 (N.D. Ill. Dec. 4, 1990)("Thus, the operative facts of the federal claim are separated in time from the operative facts of the state claim, lending further support to a finding of no common nucleus.").  Although the Addendum and Counterclaim asserts that Walker was terminated for reasons including unsatisfactory performance, and that Walker did not complain about discriminatory statements during her employment, these allegations do not change the nucleus of facts from which the Counterclaim arises -- facts regarding Walker's actions in filing the Complaints, facts regarding her subjective intent and beliefs in filing

-51-

the complaints, and facts regarding her actions in the litigation.

At this relatively early stage of the case, the Court can not say that the counterclaim forms a convenient trial unit with Walker's claims.  In some ways, if there is going to be an abuse-of-process claim at all, it may be best and easiest to bring all claims at the same time.  Some of the evidence will be the same, and there is some overlap of facts.  On the other hand, sending both claims to the jury at one time may confuse the jury, see Silva v. Massachusetts, 351 F. App'x 450, 458 (1st Cir. 2009)(stating courts should consider whether the facts form a convenient trial unit in determining whether the facts form a common nucleus), and the Court may have to consider using some of the guidance set forth in the Supreme Court of New Mexico's decision in Fleetwood Retail Corp. of New Mexico v. LeDoux to minimize confusion.  The Court cannot say at this early stage whether the facts underlying the claims form a convenient trial unit, but more likely than not, they will.

Nonetheless, because Walker's claims and the Counterclaim arise from separate occurrences, which are separated in time, space, and origin, the Court concludes that Walker's claims and the Counterclaim do not derive from a common nucleus of operative fact.  See Price v. Wolford, 608 F.3d at 702-03.  Because the Court finds that Walker's claims and the Counterclaim do not derive from a common nucleus of operative fact, the Court does not have supplemental jurisdiction over the counterclaim under 28 U.S.C. § 1367.

The Counterclaimants rely on Ashley Creek Phosphate Co. v. Chevron USA, Inc., 315 F.3d 1245 (10th Cir. 2003), in support of their argument that the Court has supplemental jurisdiction over the counterclaim.  In Ashley Creek Phosphate Co. v. Chevron USA, Inc., the Tenth Circuit noted that the district court denied the plaintiff's motion to dismiss on the merits, concluding that the defendants' "counterclaims stated claims for abuse of process which could be maintained as

counterclaims under Utah law.  It thereafter declined to exercise pendent jurisdiction and dismissed

the counterclaims without prejudice."  315 F.3d at 1265.  The Tenth Circuit stated that, because of

the nature of the arguments that the plaintiff presented on appeal, there was a real question whether

the personal stake requirement of Article III was satisfied.[1]  See 315 F.3d at 1265.  The Tenth Circuit

stated:

> Whether Chevron's and SF's counterclaims are properly categorized as sounding in
> abuse of process or wrongful use of civil proceedings answers in part the question
> whether Ashley Creek's appeal satisfies the personal stake requirement of Article III.
> If the counterclaims state a claim for abuse of process, they were properly brought
> as counterclaims and, pursuant to Jarvis, this court would have jurisdiction to
> determine whether the district court properly denied Ashley Creek's motion to
> dismiss the counterclaims with prejudice. This is so because a ruling in Ashley
> Creek's favor would prevent the refiling of the claims in state court and, thereby,
> reduce or eliminate Ashley Creek's future litigation costs.  If, on the other hand,
> Ashley Creek is correct that the counterclaims state only claims for wrongful use of
> civil proceedings, Article III's personal stake requirement is not satisfied unless the
> underlying proceedings were terminated in Chevron's and SF's favor.  If the
> counterclaims in question are for wrongful use of civil proceedings and the
> underlying proceedings have not been terminated in Chevron's and SF's favor, the
> appropriate response to Ashley Creek's motion to dismiss the counterclaims would
> be to dismiss the counterclaims without prejudice. Because this is exactly what the
> district court eventually did when it declined to exercise pendent jurisdiction, this
> court could provide Ashley Creek no further relief and the appeal would not present
> a live case or controversy.

315 F.3d at 1265 (internal citations and footnote omitted).  The Tenth Circuit agreed, for the most

part, that the counterclaims sounded in wrongful use of civil proceedings rather than abuse of

process.  See 315 F.3d at 1266.  The Tenth Circuit stated:

> Because the district court's ultimate dismissal of those claims without prejudice is
> all the relief to which Ashley Creek is entitled, its appeal of the district court's
> treatment of those claims does not present a live case or controversy to this court.

---

[1] The Tenth Circuit has stated that the standing requirement of Article III "ensures that a
plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or
controversy which renders judicial resolution appropriate."  In re Special Grand Jury 89-2, 450 F.3d
1159, 1171 (10th Cir. 2006)(citation omitted).

> Chevron's and SF's claims regarding proceedings in state and federal administrative tribunals and Utah state court regarding the validity of the right-of-way over which the pipeline travels, however, are ripe no matter how viewed because all of the proceedings referred to have been terminated in Chevron's and SF's favor. Accordingly, this court has jurisdiction to review the district court's refusal to dismiss those claims with prejudice.

315 F.3d at 1267. The Court believes this case is distinguishable, because the Tenth Circuit was addressing Article III jurisdiction, and was not conducting an analysis of whether a counterclaim arose from a common nucleus of operative fact to determine whether a district court had supplemental jurisdiction over a malicious-abuse-of-process claim.

## IV.   THE COURT HAS DIVERSITY JURISDICTION OVER THE COUNTERCLAIM.

The Counterclaimants assert that the Court has diversity jurisdiction over the Counterclaim. Subject-matter jurisdiction under 28 U.S.C. § 1332(a) requires, in addition to diversity of citizenship, that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). A limited liability company is a citizen of every state of citizenship of any of its members. See Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990). A corporation is a citizen of its state of incorporation and its principal place of business. See 28 U.S.C. § 1332(c)(1).

In the Addendum and Counterclaim, the Counterclaimants allege that the Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. They allege that THI of Hobbs, THI of New Mexico, FAS, and FCC are foreign limited liability companies authorized and doing business in the state of New Mexico, and that Walker is a resident of New Mexico. They also allege that they have been damaged in amounts including costs and attorneys' fees, and that they are entitled to punitive damages.

When a party challenges a court's subject-matter jurisdiction, the court has wide discretion

-54-

to refer to evidence outside the pleadings to determine whether it has subject-matter jurisdiction; this reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment. See Davis ex rel. Davis v. United States, 343 F.3d at 1296. To determine whether it has subject-matter jurisdiction over the Counterclaim, the Court will refer to evidence outside the pleadings. In their Surreply, the Counterclaimants represented that THI of Hobbs, THI of New Mexico, and FCC are citizens of Delaware and Maryland, because THI of Hobbs' sole member is THI of New Mexico, and THI of New Mexico and FCC's sole member is a Delaware corporation with its principal place of business in Maryland. They represent that FAS is a citizen of New York and New Jersey, in that its sole member is another limited liability company whose sole members are individual citizens of New York and New Jersey. Walker does not dispute these allegations. There is thus evidence of complete diversity between Walker and the Counterclaimants.

In their Surreply, the Counterclaimants also represent that, at the time they filed the Counterclaim, THI of Hobbs incurred $104,167.00 in costs and attorneys' fees, THI of New Mexico incurred $62,744.00 in costs and attorneys' fees, FAS incurred in excess of $84,119.00 in costs and attorneys' fees, and FCC incurred $49,184.00 in costs and attorneys' fees. There is thus evidence that THI of Hobbs and FAS meet the amount-in-controversy requirement. The Counterclaim also alleges that Counterclaimants are entitled to punitive damages. A claim for punitive damages may be included in the jurisdictional amount to the extent of recovery that New Mexico punitive-damage law allows. See Burrell v. Burrell, 229 F.3d 1162, at *2 (10th Cir. 2000)(citing Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 240 (1943)("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); Anthony v. Sec. Pac. Fin. Servs., Inc., 75 F.3d 311, 315 (7th Cir. 1996)(noting that a court may take a closer look where punitive damages make up the bulk of the

amount in controversy); Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc., 98 F.3d at 1245).  In economic injury cases, New Mexico courts have stated that, if the damages are significant and the injury not hard to detect, the ratio of punitive damages to the harm should not generally exceed ten to one.  See Burrell v. Burrell, 229 F.3d 1162, at *3 (citing Vickrey v. Dunivan, 59 N.M. 90, 94, 279 P.2d 853, 856 (1955); Weidler v. Big J Enters., Inc., 124 N.M. 591, 603, 953 P.2d 1089, 1101 (Ct. App. 1997)).  The Court recently has questioned whether an award of more than one to one can satisfy due process.  See Guidance Endodontics, LLC v. Dentsply International, Inc., No. CIV 08-1101 (D.N.M. filed May 9, 2011)(Doc. 632).  In any case, a punitive damage award of no more than 20% ($12,256.00) in THI of New Mexico's favor and an award of no more than 60% ($25,816.00) in FCC's favor would satisfy the jurisdictional amount.  These amounts are less than what they may potentially recover under current New Mexico punitive-damages law and perhaps federal law. "Thus, without making a determination that [THI of New Mexico or FCC are] entitled either to a specific punitive damage award or to any damages at all, we conclude that [they] has satisfied the jurisdictional requirement of $75,000."  Burrell v. Burrell, 229 F.3d 1162, at *3.  Looking at evidence outside the Addendum and Counterclaim, the Court determines that it has diversity jurisdiction over the Counterclaim.  Because the Court's jurisdiction does not clearly appear from the face of the Counterclaim, however, the Court gives the Counterclaimants leave to amend the Counterclaim to cure the defects in its pleadings regarding the Court's jurisdiction.

## V.   THE COURT WILL NOT DISMISS THE COUNTERCLAIMANTS' COUNTERCLAIM FOR LACK OF STANDING.

Walker argues that much of the Counterclaimants' Counterclaim concerns the proposed SAC's allegations against Grunstein, Foreman, and Zack.  Walker argues that the Counterclaimants do not have standing to assert a claim based upon the alleged injury to Grunstein, Foreman, and

Zack.

The Counterclaimants respond that Walker improperly characterizes the counterclaim as only a challenge to the proposed SAC's allegations against Zack, Foreman, and Grunstein.  They argue that the Counterclaim makes allegations regarding Walker's conduct throughout the proceeding, and does not relate solely to the proposed SAC.  The Counterclaimants also argue that their allegations concerning the proposed SAC do not relate solely to Grunstein, Foreman, and Zack.  The Counterclaimants further argue that the proposed SAC alleged that the conduct of all persons formed a basis for direct liabilities against the Counterclaimants, thus the need to defend themselves was real, the costs they incurred were real, and they have standing to proceed with their claim on the grounds of damages including, but not limited to expenses incurred in challenging the proposed SAC.

A federal court may hear cases only where the plaintiff has standing to sue.  Standing has two components.  First, standing has a constitutional component arising from Article III's requirement that federal courts hear only genuine cases or controversies.  Second, standing has a prudential component.  See Habecker v. Town of Estes Park, Colo., 518 F.3d 1217, 1224 n.7 (10th Cir. 2008)(noting that, in addition to constitutional standing requirements, "the Supreme Court recognizes a set of 'prudential' standing concerns that may prevent judicial resolution of a case even where constitutional standing exists").  The burden of establishing standing rests on the plaintiffs.  See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. at 104.  The plaintiffs must "allege . . . facts essential to show jurisdiction.  If they fail to make the necessary allegations, they have no standing."  FW/PBS v. City of Dallas, 493 U.S. 215, 231 (1990)(internal citations and quotations omitted).

"Article III of the Constitution limits the jurisdiction of federal courts to Cases and

Controversies." San Juan County, Utah v. United States, 503 F.3d 1163, 1171 (10th Cir. 2007). See U.S. Const. art. III, § 2. "In general, this inquiry seeks to determine 'whether [the plaintiff has] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" Wyo. ex rel. Crank v. United States, 539 F.3d 1236, 1241 (10th Cir. 2008)(quoting Massachusetts v. EPA, 549 U.S. 497 (2007))(brackets in Wyoming ex rel. Crank v. United States, further internal quotation marks omitted). "[A] suit does not present a Case or Controversy unless the plaintiff satisfies the requirements of Article III standing." San Juan County, Utah v. United States, 503 F.3d at 1171. To establish standing, a plaintiff must show three things: "(1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision." Protocols, LLC v. Leavitt, 549 F.3d 1294, 1298 (10th Cir. 2008)(internal quotation marks omitted). "Standing is determined as of the time the action is brought." Smith v. U.S. Court of Appeals, for the Tenth Circuit, 484 F.3d 1281, 1285 (10th Cir. 2007)(quoting Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005)).

"Prudential standing is not jurisdictional in the same sense as Article III standing." Finstuen v. Crutcher, 496 F.3d 1139, 1147 (10th Cir. 2007). Prudential standing consists of "a judicially-created set of principles that, like constitutional standing, places limits on the class of persons who may invoke the courts' decisional and remedial powers." Bd. of County Comm'rs of Sweetwater County v. Geringer, 297 F.3d 1108, 1112 (10th Cir. 2002)(internal quotation marks omitted). Generally, there are three prudential-standing requirements: (i) "a plaintiff must assert his own rights, rather than those belonging to third parties"; (ii) "the plaintiff's claim must not be a generalized grievance shared in substantially equal measure by all or a large class of citizens"; and

(iii) "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." Bd. of County Comm'rs of Sweetwater County v. Geringer, 297 F.3d at 1112 (internal quotation marks and citations omitted).

The Court will not dismiss the Counterclaim for lack of standing. The Court notes that the Counterclaim is not limited to allegations regarding the proposed SAC, and that the Counterclaim's allegations regarding the proposed SAC are not limited to allegations regarding Zack, Foreman, and Grunstein. The Counterclaimants have standing to assert claims that they suffered damages in the form of costs and attorneys' fees as a result of Walker's filing claims against them without probable cause, and of Walker's procedural improprieties in the litigation. See Protocols, LLC v. Leavitt, 549 F.3d at 1298 (stating that the plaintiff must have suffered an injury in fact that is both concrete and particularized, as well as actual or imminent; that there must be a causal relationship between the injury and the challenged conduct; and that there must be a likelihood that the injury would be redressed by a favorable decision); Bd. of County Comm'rs of Sweetwater County v. Geringer, 297 F.3d at 1112 (stating that a plaintiff must assert his own rights, that the claim must not be a generalized grievance, and that the grievance must fall within the zone of interests that the statutory provision or constitutional guarantee invoked by the suit protects or regulates). Insofar as any of the Counterclaimants' claims are based on allegations in the proposed SAC about Zack, Foreman, and Grunstein, the Court finds that the Counterclaimants have standing, because the proposed SAC alleged that each of the corporate entities, which were allegedly part of an integrated enterprise, were liable for the conduct of the individual defendants, including Zack, Foreman, and Grunstein, under the doctrine of respondeat superior. See Proposed SAC ¶¶ 18, 42, at 81-86. See also Lopez v. Council on Am.-Islamic Relations Action Network, Inc., 741 F. Supp. 2d 222, 233 (D.D.C. 2010)(stating that an allegations that the plaintiffs were harmed by an employee of the Council on

American-Islamic Relations Action Network, Inc. ("CAIR") and that CAIR bore legal responsibility for an employee's conduct under the doctrine of respondeat superior was sufficient to demonstrate standing to bring tort claims).  The Counterclaimants allege that they incurred substantial expenses seeking Walker to disclose the true basis for the allegations or to withdraw allegations in the proposed SAC, which included, but were not limited to, the allegations regarding Zack, Foreman, and Grunstein.  Because the proposed SAC alleged that the Counterclaimants were liable for the conduct of all the individual defendants, including Zack, Foreman, and Grunstein, the Counterclaimants are asserting their own rights when they incurred the damages; they are not asserting only Zack's, Foreman's, or Grunstein's legal rights.  See Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161, 1187 (D.N.M. 2010)(Browning, J.)(stating that most relevant to prudential standing is the rule that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (citation omitted)).  The Court thus will not dismiss the Counterclaimants' claim for lack of standing.

## VI.   THE COURT WILL NOT DISMISS THE COUNTERCLAIM, BECAUSE THE COUNTERCLAIMANTS HAVE PLED SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM TO RELIEF.

The parties spent much of the space in their briefing arguing about and citing evidence outside the four corners of the Addendum and Counterclaim.  Because the Court now will determine whether the counterclaim should survive the motion to dismiss under rule 12(b)(6), the Court will not weigh the evidence or consider matters outside the pleading, but will instead determine whether the Counterclaimants' Counterclaim is legally sufficient to state a claim for which relief may be granted.  See Ford v. West, 222 F.3d 767, 772 (10th Cir. 2000)("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." (citation omitted)).

The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages.  See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.  An improper use of process may be shown by: (i) filing a complaint without probable cause; or (ii) an irregularity or impropriety suggesting extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process.  See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.

The Counterclaimants have sufficiently alleged an improper use of process based on filing a complaint without probable cause. The Supreme Court of New Mexico has defined probable cause in the malicious-abuse-of-process context as "a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury."  Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (internal quotations and citation omitted).  "The lack of probable cause must be manifest." Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (citation omitted). Probable cause is to be judged on the facts as they appeared at the time; it is not to be judged on later-discovered facts.  See Weststar Mortg. Corp. v. Jackson, 133 N.M. at 122, 61 P.3d at 831 ("Probable cause . . . is to be judged by facts as they appeared at the time, not by later-discovered facts." (citing Restatement (Second) of Torts § 662 cmt. e (stating that an accusation leading to the initiation of a criminal proceeding must be based on probable cause, determined as of the time the action was filed)(other citations omitted)).  The existence of probable cause in the underlying proceeding is a question of law to be decided by the court.  See Weststar Mortg. Corp. v. Jackson, 133 N.M. at 123, 61 P.3d at 832 ("[T]he existence of probable cause in the underlying proceeding,

-61-

that is, whether the facts amount to probable cause, is a question of law and shall be decided by the trial judge.")(internal quotation marks and citation omitted).  A malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim."  DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

Many of the allegations in the Addendum and Counterclaim relate to Walker's proposed SAC.  An improper use of process may be shown by filing a complaint without probable cause.  See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.  Because the proposed SAC was not filed as a complaint -- it was filed as an attachment to the Motion to File Second Amended Complaint and Memorandum in Support -- even if Walker did not have probable cause to make the allegations in the proposed SAC, this motion is not sufficient to demonstrate that she filed a complaint without probable cause.  See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.  The remaining relevant allegations in the Addendum and Counterclaim are: (i) Walker filed an EEOC/New Mexico Human Rights Division Charge of Discrimination alleging only a belief that she was discharged on the basis of race; (ii) neither during her employment nor in her charge of discrimination, nor in her interviews and statements with EEOC investigators, did Walker allege to have been subjected to racial comments or slurs in her employment; (iii) Walker's attorney obtained Walker's EEOC file; (iv) in filing her Complaint, Walker exaggerated allegations and for the first time alleged a number of persons made racist remarks during her employment; (v) in her Amended Complaint, Walker added six more Defendants; (vii) in her Complaint and Amended Complaint, Walker repeatedly made allegations against "Defendants," resulting in confusion; and (viii) the Counterclaimants will likely have evidentiary support that Walker intentionally misrepresented facts to her lawyers and, because

they had her EEOC file and knew she never alleged racial slurs to the EEOC, they had an affirmative duty to verify the basis for the slurs and failed to do this before filing the Complaint.  Allegations about adding six defendants or making allegations against all "Defendants," without more, do not sufficiently state that Walker filed her complaints without probable cause.  DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287 (stating that a malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim").  The allegations that Walker intentionally misrepresented facts to her lawyers, that Walker's attorneys did not verify Walker's allegations that she was subjected to slurs, and that Walker's Complaint alleged, for the first time, that she was subjected to slurs are sufficient to state a plausible claim that Walker filed the Complaint without probable cause for her claims.   Taking these allegations as true, Walker did not conduct a reasonable pre-filing investigation and could not have had a reasonable belief in the validity of her allegations that she was subjected to racial discrimination because of racial slurs.  See Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177; Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (defining probable cause in the malicious-abuse-of-process context as "a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury")(internal  quotation marks and citation omitted); DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287 (stating that a malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim").  The Court thus finds that the Counterclaimants have sufficiently alleged that Walker filed a complaint without probable cause.

The Counterclaimants have sufficiently alleged improper use of process based on a procedural irregularity or impropriety.   A plaintiff may also prove misuse of process through procedural irregularity -- such as misuse of discovery, subpoenas, and attachments -- or an act that otherwise indicates wrongful use of proceedings -- such as an extortion attempt.   See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.   Some examples of misuse of process include: (i) excessive execution on a judgment; (ii) attachment of property other than the property involved in the litigation; (iii) oppressive conduct in connection with an arrest or seizure of property; and (iv) extortion of excessive sums of money.   See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.   "Complaints that assert a multitude of unfounded claims brought in bad faith and for the purpose of harassing a defendant, even though coupled with a valid claim, can constitute a procedural impropriety that will support a malicious abuse of process claim." Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 157, 164 P.3d at 38.

In Fleetwood Retail Corp. of N.M. v. LeDoux, although the Supreme Court noted that the plaintiff waived her counterclaim on procedural impropriety, the conduct she alleged might constitute a procedural impropriety.

> LeDoux did not simply allege that Fleetwood initiated the federal and state suits without probable cause; she also alleged that it maintained those suits and refused to consider evidence of her innocence without a reasonable belief of the factual allegations against her.  There was evidence that Fleetwood cancelled a meeting with LeDoux to discuss her role in the schemes of Fleetwood's employees, and refused to reschedule unless LeDoux had information about the other defendants. With a fuller exposition of the facts, a jury could have found that Fleetwood's actions were similar to an attempt to extort information out of LeDoux. Fleetwood did not dismiss its suit in federal court even after it did not directly respond to the part of LeDoux's letter alleging that the federal suit was legally and factually insufficient. It was only after LeDoux had expended considerable resources on a motion to dismiss that Fleetwood voluntarily dismissed its federal case. Arguably, this conduct goes beyond the mere filing of a complaint without probable cause and contains acts that could, under the circumstances, rise to the level of a procedural abuse. See, e.g., DeVaney, 1998–NMSC–001, ¶ 49, 124 N.M. 512, 953 P.2d 277 (noting that voluntary

dismissal, while not improper per se, could rise to the level of a procedural abuse where original plaintiff voluntarily dismissed case after losing a motion to compel discovery, thus supporting an inference that there was no legitimate basis for failure to produce); <u>Richardson v. Rutherford</u>, 109 N.M. at 502–03, 787 P.2d at 421–22 (reversing trial court's grant of j.n.o.v. on abuse of process verdict and remanding for new trial where ranch owner brought $3,000,000 lawsuit against former manager on sixty-one counts but could only establish that manager had improperly removed $3,000 worth of timber); <u>see also Fishman v. Brooks</u>, 396 Mass. 643, 487 N.E.2d 1377, 1383 (1986) (noting that while groundlessness of suit is not required for abuse of process, original plaintiff's knowledge that his claim was groundless is relevant as tending to show that the process was used for an ulterior purpose).

142 N.M. at 159, 164 P.3d at 40 (emphasis in original)

Because procedural irregularities include misuse of procedural devices such as discovery, subpoenas, and attachments, <u>see</u> <u>DeVaney v. Thriftway Mktg. Corp.</u>, 124 N.M. at 522, 953 P.2d at 287, misuse of proposed pleadings, such as the proposed SAC -- which are filed as attachments -- may constitute procedural irregularities.  The Counterclaimants have pled sufficient allegations to set forth procedural impropriety.  The Counterclaimants allege that, in the proposed SAC, Walker made allegations against them without evidentiary support or reasonable investigation, that Walker's allegations in the proposed SAC harassed and attempted to embroil in litigation persons irrelevant to the action, that she alleged that the conduct of these persons was the basis for direct liabilities against the Counterclaimants, that the Counterclaimants incurred substantial expense in seeking Walker to disclose the true basis for the allegations or to withdraw the allegations, that, after this activity, Walker withdrew or narrowed a number of these allegations without seeking consent from the opposing parties, changed the form of amendment after all the briefing had been completed and less than 24 hours before the hearing on the motion for amendment, and that, after these events, the Counterclaimants stipulated to orders in an effort to stem spiraling expenses under which Walker filed a substantially modified SAC.  This situation is similar to <u>Fleetwood Retail Corp. of New Mexico v. LeDoux</u>, where the Supreme Court of New Mexico found that the alleged conduct could

-65-

constitute procedural abuse when the plaintiff alleged that the defendant maintained a suit without probable cause, that the defendant cancelled a meeting and refused to reschedule unless the plaintiff had information about the other defendants in the underlying action, suggesting extortion, and that the defendant dismissed the suit only after the plaintiff expended considerable resources. The Court thus believes there are sufficient facts, which, if taken as true, allege procedural impropriety. See Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 159, 164 P.3d at 40; DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 528, 953 P.2d at 293 (noting that voluntary dismissal, while not improper per se, could rise to the level of a procedural abuse where original plaintiff voluntarily dismissed case after losing a motion to compel discovery, thus supporting an inference that there was no legitimate basis for failure to produce).

        The Counterclaimants have also sufficiently alleged a purpose to accomplish an illegitimate end. Under the requirement of a primary improper motive, it is insufficient that the malicious-abuse-of-process defendant acted with ill will or spite. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287 (citation omitted). There must be a purpose to accomplish an illegitimate end. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. The Supreme Court of New Mexico has given several examples of improper purpose, including: (i) a litigant who pursues a claim knowing that the claim is meritless; (ii) a litigant who pursues a claim primarily to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (iii) a litigant who misuses the law primarily for harassment or delay; or (iv) a litigant who initiates proceedings primarily for the purpose of extortion. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. An overt misuse of process may support an inference of an improper purpose, but a court may not infer from evidence of an improper purpose alone that there was not probable cause or that there was not a proper use of process. See DeVaney

-66-

v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

The Counterclaimants sufficiently allege a primary motive in the use of process to accomplish an illegitimate end.

> The Twombly plausibility standard, which applies to all civil actions, see Iqbal, 129 S. Ct. at 1953, does not prevent a plaintiff from "pleading facts alleged 'upon information and belief' " where the facts are peculiarly within the possession and control of the defendant, see, e.g., Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, see Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010).  The Counterclaimants allege, upon information and belief, that, after a reasonable opportunity for further investigation and discovery, they will likely have evidentiary support to show that Walker made claims without probable cause, and/or engaged in procedural irregularities or improprieties for the primary purpose of an illegitimate end.   See Counterclaim ¶ 47, at 14.   The Counterclaim also alleges specific circumstances from which intent may be inferred; for example, it alleges that Walker's asserted claims in the proposed SAC contained false representations of fact and law, and that Walker intentionally misrepresented allegations regarding whether she was subjected to racial slurs. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287 ("[A]n overt misuse of process, such as a lack of probable cause, or an excessive attachment, may support an inference of an improper purpose . . . .").  The Court thus finds that the Counterclaim sufficiently pleads a primary motive in the use of process to accomplish an illegitimate end.

The Counterclaimants have also sufficiently pled that they suffered damages.

> A malicious institution of civil proceedings without probable cause will be tortious even though there has been no showing of an arrest of the person or attachment of the property of the defendant, and no special injury sustained.  A plaintiff may recover the normal expenses of defending against the underlying claim.

-67-

DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 525, 953 P.2d at 290.  The Counterclaimants allege

that they have been damaged in having to respond to Walker's claims, in amounts including but not

limited to costs and attorneys' fees.

Because the Counterclaimants have pled sufficient facts to state a claim for relief for

malicious abuse of process that is plausible on its face, the Court will deny Walker's request that

it dismiss the malicious-abuse-of-process counterclaim.

**IT IS ORDERED** that the Plaintiff's Motion to Dismiss Defendants' Counterclaim and

Memorandum in Support, filed January 18, 2011 (Doc. 174) is denied.


_____

UNITED STATES DISTRICT JUDGE


*Counsel:*

Daniel Yohalem
Richard Rosenstock
Santa Fe, New Mexico

-- and --

Katherine E. Murray
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*


R. Shawn Oller
Christie L. Kriegsfeld
Littler Mendelson
Phoenix, Arizona

    *Attorneys for the Defendants*

Danny Jarrett
Trent A. Howell
Jackson Lewis, LLP
Albuquerque, New Mexico

      *Attorneys for Defendants THI of New Mexico at*
        *Hobbs Center, LLC and THI of New Mexico, LLC*

Barbara G. Stephenson
Quentin Smith
Sheehan & Sheehan, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendants Fundamental Administrative Services, LLC,*
        *Karen Hood (Miller), Debbie Lothridge, and Diana Melton*

John A. Bannerman
Margaret A. Graham
Bannerman & Johnson, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendants Jaime Andujo and Fundamental*
        *Clinical Consulting, LLC*