## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SARAH WALKER,

      Plaintiff,

vs.                                                                     No. CIV 09-0060 JB/KBM

THI OF NEW MEXICO AT HOBBS CENTER d/b/a
HOBBS HEALTH CARE CENTER, DIANA
MELTON, JAIME ANDUJO, DEBBIE
LOTHRIDGE, KAREN HOOD (MILLER),
THI OF NEW MEXICO, LLC, FUNDAMENTAL
CLINICAL CONSULTING, LLC, FUNDAMENTAL
ADMINISTRATIVE SERVICES, LLC,
THI OF BALTIMORE, INC., and FUNDAMENTAL
LONG-TERM CARE HOLDINGS, LLC,

      Defendants,

and

THI OF NEW MEXICO AT HOBBS CENTER, LLC,
THI OF NEW MEXICO, LLC, FUNDAMENTAL
ADMINISTRATIVE SERVICES, LLC, AND
FUNDAMENTAL CLINICAL CONSULTING, LLC,

      Counter-Plaintiffs,

vs.

SARAH WALKER,

      Counter-Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on : (i) Defendant THI of Baltimore, Inc.'s Motion

to Dismiss Pursuant to Rules 12(b)(1), (2), and (6), filed February 2, 2011 (Doc. 183); and

(ii) Defendant Fundamental Long Term Care Holdings, LLC's Motion to Dismiss Pursuant to Rules

12(b)(1), (2), and (6), filed February 25, 2011 (Doc. 211).  The Court held a hearing on April 29,

2011.  The primary issues are: (i) whether the Court has personal jurisdiction over Defendant THI of Baltimore, Inc. ("THI of Baltimore"), because THI of Baltimore has minimum contacts with New Mexico such that maintenance of Walker's suit against THI of Baltimore does not offend traditional notions of fair play and substantial justice; and (ii) whether the Court has personal jurisdiction over Defendant Fundamental Long Term Care Holdings, LLC ("FLTCH"), because FLTCH has minimum contacts with New Mexico such that maintenance of Walker's suit against FLTCH does not offend traditional notions of fair play and substantial justice.  The Court will grant THI of Baltimore's and FLTCH's motions to dismiss, because Walker has not made a prima-facie showing that either THI of Baltimore or FLTCH have minimum contacts with New Mexico sufficient to satisfy due-process concerns.

## FACTUAL BACKGROUND

Walker was employed as a Business Office Manager ("BOM") at Defendant THI of New Mexico at Hobbs Center ("THI of Hobbs"), a nursing home in Hobbs, New Mexico, from August 2005 until January 2007.  See, e.g., Second Amended Complaint ¶ 3, at 2, filed December 14, 2009 (Doc. 50)("SAC").  Walker, an African American, alleges that the Defendants unlawfully subjected her to numerous acts of racial discrimination and terminated her employment with THI of Hobbs because of her race.  See SAC ¶ 1, at 1.  Additional background on the case is set forth in the Court's Memorandum Opinion and Order deciding Walker's first motion to compel discovery.  See Walker v. THI of N.M. at Hobbs Ctr., No.CIV 09-0060 JB/RLP, 2010 WL 552661, at *1-4 (D.N.M. Feb. 8, 2010)(Browning, J.).

FLTCH wholly owns THI of Baltimore.  See Nursing Facility Licensure Application at 2, 4, filed March 25, 2011 (Doc. 248, Ex. 2, Ex. A)("Nursing Licensure Application"); Declaration of Eva Gonzalez, ¶ 4, at 2 (dated February 23, 2011), filed February 25, 2011(Doc. 212-1).  FLTCH

is the sole member of Defendant Fundamental Administrative Services, LLC ("FAS"), which has

no subsidiaries.  Defendant Fundamental Administrative Services, LLC's Answers to Plaintiff's

First Interrogatories Interrogatory No. 14, filed March 25, 2011 (Doc. 248, Ex. 3)("FAS' Answers

to Interrogatories").  THI of Baltimore is the sole member of Defendant Fundamental Clinical

Consulting, LLC ("FCC"), which has no subsidiaries.  Defendant Fundamental Clinical Consulting,

LLC's Answers to Plaintiff's First Interrogatories Interrogatory No. 15, filed March 25, 2011 (Doc.

248, Ex. 3)("FCC's Answers to Interrogatories").  THI of Baltimore wholly owns Defendant THI

of New Mexico ("THI of New Mexico").  Nursing Licensure Application at 2, 4.  See Gonzales

Decl. ¶ 3, at 2.  During the relevant time period, THI of New Mexico wholly owned THI of Hobbs.

See Nursing Licensure Application at 2, 4.

FLTCH's address is 930 Ridgebrook Road, Sparks, Maryland.  See Deposition of Christine

Zack at 183:9-13, Prendergast v. Fundamental Long Term Care Holdings, LLC, Civ. No. 07-1265

CEG/LFG (D.N.M.), filed March 25, 2011 (Doc. 248, Ex. 10).  THI of Baltimore's address is 930

Ridgebrook Road, Sparks, Maryland.  See Zack Depo. at 170:24-170:3.  FAS' address is 930

Ridgebrook Road, Sparks, Maryland.  See Electronic Mail Transmission from Wade R. Swanson

to Whitney Warner at 1, filed March 25, 2011 (Doc. 248, Ex. 11)("Swanson Electronic Mail

Transmission").

FLTCH is a Delaware limited liability company with its principal place of business in

Sparks, Maryland.  See Gonzales Decl. ¶ 3, at 1-2.  FLTCH has not filed, nor has it ever sought to

file, Articles of Incorporation or Articles of Organization with the State of New Mexico at any time;

it has never been incorporated or regulated to do business in New Mexico at any time; and it is not

authorized, and has never been authorized to do business in New Mexico.  See Gonzales Decl. ¶ 5,

at 2.  FLTCH maintains that it is not and has never been engaged in the transaction of any business

or the performance of any services in the State of New Mexico.  See Gonzales Decl. ¶ 5, at 2.  Since 2006, when FLTCH acquired THI of Baltimore and its subsidiaries, FLTCH "has been treated for federal tax purposes as the holding company for pass through entities."  Gonzales Decl. ¶ 6, at 2.  The pass-through entities are the individual nursing and rehabilitation facilities.  See Gonzales Decl. ¶ 6, at 2.  "As a practical matter, that means FLTCH files a single tax return in each of the approximately 20 states in which the facilities do business (and in which this method of taxation is allowed), on behalf of all of its subchapter S companies, such as THI of New Mexico at Hobbs Center, LLC."  Gonzales Decl. ¶ 6, at 2.  FLTCH is not, and has never been, a resident of New Mexico, and it has never been required to maintain, and has never maintained, any mailing address or telephone listing in the State of New Mexico at any time.  See Gonzales Decl. ¶ 7, at 3.  FLTCH does not maintain, and has never maintained a place of business in New Mexico, and does not have, and has never had, an agent or employee who was based in New Mexico, and it has never contracted to supply services or things in the State of New Mexico.  See Gonzales Decl. ¶ 7, at 3.  "FLTCH does not own or lease, and has never owned or leased, any real property in New Mexico, and has never paid any property taxes in New Mexico."  Gonzales Decl. ¶ 8, at 3.  FLTCH does not own or lease, and has never owned or leased, any equipment located in New Mexico and does not have, and has never had, any accounts with any financial institutions in New Mexico.  See Gonzales Decl. ¶ 8, at 3.  "FLTCH has no employees, and thus has no payroll, benefits, personnel or training departments.  Consequently, FLTCH does not prepare or issue paychecks to any employees of its subsidiaries.  FLTCH also does not establish any personnel or payroll policies, or control the personnel issues of the entities . . . ."  Gonzales Decl. ¶ 9, at 3.  FLTCH does not pay the salaries, expenses, or losses of any of the named Defendants.  See Gonzales Decl. ¶ 9, at 3.

THI of Baltimore is not authorized, and has never been authorized, to do business in New

Mexico.  See Declaration of Kenneth Tabler ¶ 11, at 2 (dated February 2, 2011), filed February 2, 2011 (Doc. 184-1).  THI of Baltimore is not, and has never been, engaged in the transaction of any business or the performance of any services in the State of New Mexico.  See id. ¶ 11, at 2.  THI of Baltimore has no employees, and thus conducts no operations in New Mexico or anywhere else. See id. ¶ 10, at 2.  THI of Baltimore is not, and has never been a resident of New Mexico, and has never been required to maintain, or maintained, a registered agent for service of process in New Mexico.  See Tabler Decl. ¶ 12, at 3.  THI of Baltimore has never maintained a mailing address, telephone listing, or a place of business in New Mexico, and has never had an agent or employee based in New Mexico.  See Tabler Decl. ¶ 12, at 3.  THI of Baltimore has never owned or leased any real property, personal property, or equipment in New Mexico, and has never had any accounts with financial institutions in New Mexico.  See Tabler Decl. ¶ 15, at 3.  THI of Baltimore does not provide goods or services to the general public, including New Mexico, has never contracted to supply goods or services in New Mexico, has never contracted to supply goods or services in New Mexico, and has made no sales in New Mexico.  See Tabler Decl. ¶ 17, at 3.  THI of Baltimore has never paid any taxes or filed any tax returns in New Mexico.  See Tabler Decl. ¶ 19, at 4.  THI of Baltimore has never been the licensee of and did not own, operate or control any facility in Hobbs, and has never operated, managed, or controlled any other skilled nursing facilities.  See Tabler Decl. ¶ 22, at 4.

FLTCH's two directors are Mary Foreman and Leonard Grunstein.  See Zack Depo. at 183:14-16.  THI of Baltimore's officers and directors are Kenneth Tabler, W. Bradley Bennett, and Mark Fulchino.  See Deposition of Kenneth Tabler at 10:15-17, 12:13-17, Prendergast v. Fundamental Long Term Care Holdings, LLC, Civ. No. 07-1265 CEG/LFG (D.N.M.), filed March 25, 2011 (Doc. 248, Ex. 9); Zack Depo. at 171:3-172:9.  FAS' directors are Bennett and Fulchino,

and its officers are Bennet, Fulchino, Toni-Jean Lisa, Sean Nolan, Kimberly McCarty, Melissa Warlow, and Tabler.  See Swanson Electronic Mail Transmission at 1.  The FAS tax department prepares tax filings for THI of New Mexico, THI of Baltimore, and FLTCH.  See Tabler Depo at 56:20-59:2.

Christine Zack is the senior vice president for FAS, and although she has no direct supervisor, she presumes FLTCH shareholder Foreman could ask her to become dis-associated.  See Zack Depo. at 6:19-23, 20:17-21:13.  In her deposition in Prendergast v. Fundamental Long Term Care Holdings, LLC, Zack testified that she keeps Foreman "apprised of what's going on."  Zack Depo. at 23:11-20.

FLTCH has elected to treat THI of Hobbs and similar facilities as "disregarded entit[ies]"[1] for federal tax purposes.  Tabler Depo. at 60:16-61:16.  In 2006, FLTCH filed a 2006 PTE[2] New Mexico Income and Information for Pass-Through Entities.[3]  See 2006 PTE New Mexico Income and Information for Pass-Through Entities, filed March 25, 2011 (Doc. 248, Ex. 8(a))("2006 PTE").

---

[1] A "disregarded entity" may be defined as "an eligible entity that is treated as an entity not separate from its single owner for income tax purposes."  Reply at 10 (citing IRS Form 8832, Entity Classification Election at 5)(emphasis added).

[2] PTE is an acronym for Pass-Through Entities.

[3] The 2006 New Mexico Instructions for Income and Information Return For Pass-Through Entities Form PTE state:

> Corporations electing to be taxed as S corporations for federal income tax purposes, or any partnership, joint venture, common trust fund, limited association, pool or working agreement, limited liability company or any other combination of persons or interests required to file a federal partnership return of income must file a New Mexico *Income and Information Return for Pass-Through Entities* (PTE) if the entity is registered to do business in the state, transacts business in, into or from the state, or derives any income from property or employment within the state.

The 2006 PTE states: "D.  Name and address of registered agent in New Mexico: NATIONAL REGISTERED AGENTS, INC. 433 PASEO DE PERALTA, SANTA FE, NM 87501."[4] 2006 PTE at 1.  The 2006 PTE lists FLTCH's total property within New Mexico as $25,660,505.00, with its average annual value of inventory as $78,580.00, the average annual value of personal property as $1,197,645.00, and with the rented property as $24,384,200.00.  See 2006 PTE at 2.  The 2006 PTE lists "Total compensation of employees" "within New Mexico" as $17,236,984.00.  2006 PTE at 2.  The 2006 PTE also lists the "Gross receipts" "within New Mexico" as $41,265,021.00.  2006 PTE at 2.

In 2007, FLTCH filed a 2007 PTE New Mexico Income and Information Return for Pass-Through Entities.  See 2007 PTE New Mexico Income and Information for Pass-Through Entities, filed March 25, 2011 (Doc. 248, Ex. 8(b))("2007 PTE").  The 2007 PTE listed National Registered Agents Inc. as its registered agent in New Mexico.  See 2007 PTE at 1.  The 2007 PTE lists total property within New Mexico as $45,240,777.00, with the average annual value of inventory as $157,623.00, the average annual value of personal property as $1,200,570.00, and the value of rented property as $43,882,584.00.  See 2007 PTE at 2.  The 2007 PTE listed the total compensation of employees within New Mexico as $23,942,571.00 and the gross receipts within New Mexico as $57,515,744.00.  See 2007 PTE at 2.

FLTCH is the plan sponsor of the employee benefits offered to the employees of all entities of which it is either a direct or indirect member.  See Fundamental Long Term Care Holdings, LLC Employee Benefit Options 2007, filed April 13, 2011 (Doc. 262, Ex. 20)("Employee Benefits

---

[4] This address "is the registered agent address of the limited liability companies conducting business in New Mexico, such as THI of New Mexico at Hobbs Center, LLC."  Gonzales Decl. ¶ 7, at 3.

Options").

## PROCEDURAL BACKGROUND

Walker filed this case on January 22, 2009.  See Complaint, filed January 22, 2009 (Doc. 1).

The Complaint originally named THI of Hobbs and three Doe Corporations as the Defendants.  See

Complaint ¶¶ 4-5, at 2.  On December 14, 2009, Walker filed an Amended Complaint adding

Defendants Diana Melton, Jaime Andujo, Debbie Lothridge, Karen Hood (Miller), THI of New

Mexico, FCC, and FAS.  See Amended Complaint, filed December 14, 2009 (Doc. 50).  On

November 15, 2010, Walker filed the SAC, adding THI of Baltimore, Inc., and Fundamental Long

Term Care Holdings, LLC as Defendants.  In her SAC, Walker alleges that "THI-Hobbs and all the

other Corporate Defendants acting as a single, integrated enterprise subjected [Walker] to race

discrimination and/or to retaliation for having complained internally about race discrimination" in

violation of Title VII and of the New Mexico Human Rights Act.  SAC ¶¶ 79-80, at 23-24.  Walker

alleges that the Defendants' conduct violated her rights under 42 U.S.C. § 1981 and "constituted an

intentional infliction of emotional distress."  SAC ¶ 81, at 24.  She also alleges that the Defendants'

conduct in terminating her constituted an unlawful breach of her employment contract.  See SAC

¶ 82, at 24.

On February 2, 2011, THI of Baltimore filed Defendant THI of Baltimore, Inc.'s Motion to

Dismiss Pursuant to Rules 12(b)(1), (2), and (6).  See Doc. 183.  THI of Baltimore moves the Court

to dismiss Walker's SAC as to it.  On the same day, THI of Baltimore filed the Memorandum of

Law in Support of Defendant THI of Baltimore, Inc.'s Motion to Dismiss Pursuant to Rules

12(B)(1), (2), and (6).  See Doc. 184.  THI of Baltimore argues that New Mexico courts lack

personal jurisdiction over it, because it does not have minimum contacts with New Mexico, because

it is not THI of New Mexico, LLC's "alter ego," and because the bedrock principle of corporate law

-- that shareholders are not personally responsible for the acts of a corporation -- bars a finding of personal jurisdiction.  THI of Baltimore argues that the single-employer test[5] is irrelevant to the issue of jurisdiction.  THI of Baltimore also argues that, even if the single-employer test were relevant, the factors do not establish personal jurisdiction over it.  THI of Baltimore also argues that the Court does not have subject-matter jurisdiction over Walker's Title VII, NMHRA claim, and breach-of-contract claim.  THI of Baltimore further argues that the SAC fails to state a claim as to which relief can be granted against it.

On February 25, 2011, FLTCH filed the Defendant Fundamental Long Term Care Holdings, LLC's Motion to Dismiss Pursuant to Rules 12(B)(1), (2), and (6).  <u>See</u> Doc. 211.  FLTCH moved the Court to dismiss Walker's SAC as to it.  On the same day, FLTCH filed the Memorandum of Law in Support of Defendant Fundamental Long Term Care Holdings, LLC's Motion to Dismiss Pursuant to Rules 12(B)(1), (2), and (6).  <u>See</u> Doc. 212.  FLTCH argues that New Mexico courts lack personal jurisdiction over it, because it does not have minimum contacts with New Mexico, because it is not THI of New Mexico's "alter ego," because the fact that it filed a tax return in New Mexico on behalf of its pass-through entities does not change the analysis, and because the "bedrock principle" of corporate law that shareholders or members are not personally responsible for the corporation's acts bars a finding of personal jurisdiction.  FLTCH also argues that the single-employer test is irrelevant to the issue of jurisdiction.  FLTCH argues, however, that even if the single-employer test were relevant, the factors do not establish personal jurisdiction over it.  FLTCH also argues that the Court does not have subject-matter jurisdiction over Walker's NMHRA, breach-

---

[5] The single-employer theory is a theory courts use to determine whether two entities constitute a single employer for purposes of Title VII liability.  <u>See</u> <u>Sandoval v. City of Boulder, Colo.</u>, 388 F.3d 1312, 1322 (10th Cir. 2004).

of-contract, and Title VII claims against it.  FLTCH further argues that the SAC fails to state a claim as to which relief can be granted as to FLTCH.

On March 25, 2011, Walker filed the Plaintiff's Response to Defendant Fundamental Long Term Care Holdings's [sic] and Defendant THI of Baltimore's Motions to Dismiss.  See Doc. 248 ("Response").  The Response sets out a statement of material facts.  In the Response, Walker argues that FLTCH and THI of Baltimore operate as part of a single, integrated enterprise that includes all the corporate Defendants in this case.  Walker further argues that the Defendants are collaterally estopped from arguing otherwise.  Walker argues that the Court has personal jurisdiction over THI of Baltimore and FLTCH, because they transacted business in New Mexico, because the events addressed in the lawsuit arise out of the business they transacted in New Mexico, and because the Defendants have substantial contacts with New Mexico.  Walker further argues that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.  Walker argues that, because THI of Baltimore and FLTCH operate as a part of a single, integrated enterprise, the Court has personal jurisdiction.  Walker also argues that she has exhausted her administrative remedies against THI of Baltimore and FLTCH.  She argues that the SAC states multiple causes of action against THI of Baltimore and FLTCH that satisfy the federal pleading requirements.

On April 24, 2011, THI of Baltimore and FLTCH filed a single Reply in Support of Motions to Dismiss Filed by THI of Baltimore Inc. and Fundamental Long Term Care Holdings, LLC. See Doc. 274 ("Reply").  THI of Baltimore and FLTCH state that Walker's arguments regarding the single-employer theory is irrelevant to the issue of personal jurisdiction.  They argue that the facts demonstrate a lack of minimum contacts as to them both.  They argue that vaguely referencing a respondent to an ("Equal Employment Opportunity Commission") EEOC charge is inadequate to

demonstrate compliance with a condition precedent to suit.  They also argue that there are no allegations against them adequate to place them on notice as to the claims against them.

At the hearing, counsel for THI of Baltimore and FLTCH, Faith Reyes, stated that she did not believe that it was necessary for the Court to determine the integrated or single-corporation doctrine at this stage, and that her clients did not have sufficient contacts in New Mexico to support personal jurisdiction.  Walker's counsel, Daniel Yohalem, stated that Walker believes the Court has jurisdiction over FLTCH and THI of Baltimore independent of the single integrated-enterprise theory.  Walker stated that THI of Baltimore's and FLTCH's contacts with New Mexico are sufficient for the Court to exercise personal jurisdiction over them.  See Transcript of Hearing at 53:2-14 (taken April 2, 2011)("Tr.")(Yohalem)("We are claiming that the contacts enumerated in our brief . . . taken altogether are sufficient, and that's what the cases hold.").[6]  The Court asked Walker's counsel:

> THE COURT: So you're making an argument that there's minimum contacts.  You're not making an argument that alter ego gives the court jurisdiction, but you're saying, if the Court doesn't feel like it has minimum contacts, it should look at this Texas case to see if this integrated corporate enterprise single corporation doctrine -- see if I would adopt it.
>
> MR. YOHALEM:  That's right.
>
> THE COURT:  Is that fair.
>
> MR. YOHALEM:  Yes.  That's exactly right, Your Honor.
>
> THE COURT:  And the reason that you didn't rely on alter ego is that -- is that.
>
> MR. YOHALEM:  We don't have the discovery to allow us.
>
> THE COURT:  Allow it.

---

[6] The Court's citations to the transcript are to the court reporter's original, unedited version. A final version of the transcript may have slightly different line or page numbers.

MR. YOHALEM:  At this point.

THE COURT:  You're not . . . . -- you're not relying on it either for jurisdiction or yet for liability?

MR. YOHALEM:  That's right.  Alter ego at this point is not a factor in this case. We are relying on [minimum] contacts bolstered by the single integrated enterprise for jurisdiction.

Tr. at 45:24-47:6 (Court, Yohalem).[7]  Mr. Yohalem stated that, in her SAC, Walker made a Title

VII, a NMHRA, an intentional-infliction-of-emotional distress, and interference-with-contract claim.

Mr. Yohalem stated that the substance of Walker's claims against FLTCH and THI of Baltimore

---

[7] Walker does not appear to argue that the Court has general personal jurisdiction over THI of Baltimore and FLTCH, and THI of Baltimore and FLTCH argue that they do not have sufficient minimum contacts with New Mexico to justify specific personal jurisdiction over them.  The minimum contacts standard may be met in two ways. Specific jurisdiction exists when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958). The minimum-contacts necessary for specific personal jurisdiction are established "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)).  General jurisdiction, on the other hand, lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant even if the suit is unrelated to the defendant's contacts with the state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n.9 (1984).  To prove general personal jurisdiction, the plaintiff "need not demonstrate a connection between the defendant's contacts and the cause of action." Zavala v. El Paso County Hosp. Dist., 143 N.M. 36, 42, 172 P.3d 173, 179 (Ct. App. 2007)(internal quotations omitted and alteration in original). Walker alleges that FLTCH and THI of Baltimore "purposefully entered New Mexico and transacted a great deal of business there" and that her injuries "that are the subject of this lawsuit were caused by FLTCH's and THI-Baltimore's business in New Mexico." Response at 23.  It thus appears that the only issue is whether the Court has specific personal jurisdiction. See Memorandum of Law in Support of Defendant Fundamental Long Term Care Holdings, LLC's Motion to Dismiss Pursuant to Rules 12(B)(1), (2), and (6), filed February 25, 2011 (Doc. 212)(stating that FLTCH must have acted in such a manner in which it purposefully availed itself of the privilege of conducting activities within the forum state); Plaintiff's Response to Defendant Fundamental Long Term Care Holdings's and Defendant THI of Baltimore's Motions to Dismiss at 22, filed March 25, 2011 (Doc. 249)(stating that a non-resident's activities in the forum state should be such that there is some act by which the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (citations omitted)).

arise out of the single-integrated enterprise.  Mr. Yohalem asked the Court to grant Walker leave to obtain discovery from the two shareholders of FLTCH to determine whether they are controlling operations in a way where Walker could allege an alter ego claim, if the Court rules that it does not believe that, at this moment, it has personal jurisdiction over these defendants.

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9
(D.N.M. Mar.11, 2009)(Browning, J.)(citations omitted).  As the United States Court of Appeals for
the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very
> power to hear the case -- there is substantial authority that the trial court is free to
> weigh the evidence and satisfy itself as to the existence of its power to hear the case.
> In short, no presumptive truthfulness attaches to plaintiff's allegations, and the
> existence of disputed material facts will not preclude the trial court from evaluating
> for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortenson v. First Fed. Sav.
& Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint
to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or
other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64
F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  In
those instances, a court's reference to evidence outside the pleadings does not necessarily convert
the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003
(citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court
determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's
merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav.
Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d
1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits
of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question
requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343
F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320,

1324 (10th Cir. 2002)).

## STANDARD FOR DETERMINING RULE 12(b)(2) MOTIONS

Motions to dismiss under rule 12(b)(2) of the Federal Rules of Civil Procedure test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999). Rule 12(b)(2) concerns lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). In determining personal jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated. See Credit Lyonnais Sec. (USA), Inc. V. Alcantara, 183 F.3d at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements. See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J). At this stage of the proceedings, it is not for the court to resolve disputed facts. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 45 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the

sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (internal citation omitted). "[T]he Supreme Court [of the United States] recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge

at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

## RELEVANT LAW REGARDING PERSONAL JURISDICTION

When a defendant couples a 12(b) motion to dismiss for lack of personal jurisdiction with other issues, the court must first determine the jurisdictional issue.  See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998).  If jurisdiction is lacking, the court cannot render a valid judgment on the merits of the other issues.  See OMI Holdings, Inc. V. Royal Ins. Co. Of Canada, 149 F.3d at 1090.  As the United States Court of Appeals for the Second Circuit has explained:

> Not only does logic compel initial consideration of the issue of jurisdiction over the defendant -- a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim -- but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first.  A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.

Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963).  If a court determines that personal jurisdiction is lacking for some or all of the defendants, all other claims and issues related to those claims brought against those defendants are rendered moot.  See Daugherty v. United States, 73 Fed. App'x 326, 329-30 (10th Cir. 2003)(unpublished).  The court should then dismiss the claims without prejudice on jurisdictional grounds.  See Posner v. Essex Ins. Co., 178 F.3d 1209, 1221 (11th Cir. 1999).  Dismissing the case for lack of personal jurisdiction, therefore, acts as res judicata

-17-

in courts subject to the same jurisdiction limits, but does not preclude litigation of the merits in a court with jurisdiction.  See Posner v. Essex Ins. Co., 178 F.3d at 1221.  "The plaintiff bears the burden of establishing personal jurisdiction over the defendant."  Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984).  See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'"  Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000)(quoting Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir.1997); other citations omitted)).

### 1.   New Mexico's Long-Arm Statute.

New Mexico's long-arm statute provides:

A.    Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

. . . .

(3) the commission of a tortious act within this state;

. . . .

C.    Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

NMSA 1978, § 38-1-16.  The New Mexico long-arm statute is coextensive with constitutional

-18-

limitations that the due process-clause imposes.  See Tercero v. Roman Catholic Diocese, 132 N.M. 312, 316, 48 P.3d 50, 54 (2002).  Thus, if jurisdiction is consistent with the due-process clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant.  See Tercero v. Roman Catholic Diocese, 132 N.M. at 316, 48 P.3d at 54.

New Mexico may have jurisdiction over a defendant who "transacts business" in New Mexico within the meaning of N.M.S.A. 1978, § 38-1-16A(1).  In Monks Own, Ltd. v. Monastery of Christ In Desert, 142 N.M. 549, 168 P.3d 121 (2007), the Supreme Court of New Mexico explained that "[t]ransaction of any business . . . is defined as doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."  142 N.M. at 556, 168 P.3d at 128 (internal quotations omitted).  The court must look to the facts of each case to determine if the transaction of business category is met.  See Monks Own, Ltd. v. Monastery of Christy In Desert, 142 N.M. at 556, 168 P.3d at 128.  Even if a plaintiff receives correspondence or a call from the defendant, this contact may be insufficient to constitute transacting business and to satisfy due process requirements as a matter of New Mexico law.  See Diamond A Cattle Co. v. Broadbent, 84 N.M. 469, 471, 505 P.2d 64, 66 (1973)(holding that, where defendant mailed three payments into the state, there was barely any transaction of business, if any at all, and there were not the requisite minimum contacts to satisfy due-process requirements); Fox v. Fox, 103 N.M. 155, 156-57, 703 P.2d 932, 933-34 (Ct. App. 1985)(holding that the sole activity of supporting minor children within the state did not fall within any provision of the long-arm statute, nor did it constitute minimum contacts sufficient to subject non-resident parent to the jurisdiction of New Mexico courts).

To satisfy the requirements of the New Mexico long-arm statute, the court must evaluate a

three-prong test: (i) did the defendant commit an act or omission set forth in N.M.S.A. 1978, §38-1-16; (ii) does the plaintiff's cause of action arise out of the alleged acts or omissions; and (iii) does the defendant have sufficient minimum contacts with New Mexico to satisfy due-process concerns. See Tercero v. Roman Catholic Diocese, 132 N.M. at 316, 48 P.3d at 54.  New Mexico decisions have consistently recognized that its courts may exercise personal jurisdiction over a nonresident defendant only if sufficient minimum contacts exist between the defendant and the forum state, meaning "the degree to which [the] defendant purposefully initiated activity within the State." Sanchez v. Church of Scientology of Orange County, 115 N.M. 660, 664, 857 P.2d 771, 775 (1993)(internal quotations omitted).  "The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Sanchez v. Church of Scientology of Orange County, 115 N.M. at 664, 857 P.2d 775.  "New Mexico has extended the reach of its long-arm statute to the limits of due process." Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(citing United Nuclear Corp. v. General Atomic Corp., 91 N.M. 41, 42, 570 P.2d 305, 306 (1977)).

> **2.    Due-Process Limitations.**

The minimum-contacts inquiry "protects the defendant from having to defend a lawsuit in a jurisdiction where it has no meaningful contacts and therefore may be unfamiliar with both the substantive and procedural law." Origins Natural Res., Inc. v. Ben Kotler and LDI, L.L.C., 133 F. Supp. 2d 1232, 1235 (D.N.M. 2001)(Black, J.)(citing OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d at 1090).  The minimum contacts standard may be met in two ways.  Specific jurisdiction exists when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. at 253.  The minimum contacts necessary for specific personal jurisdiction are

established "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d at 1091 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. at 471-72). General jurisdiction, on the other hand, lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant even if the suit is unrelated to the defendant's contacts with the state. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 415-16 & n.9. To prove general personal jurisdiction, the plaintiff "need not demonstrate a connection between the defendant's contacts and the cause of action." Zavala v. El Paso County Hosp. Dist., 143 N.M. at 42, 172 P.3d at 179 (internal quotations omitted and alteration in original). In either case, the court must confirm that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). See Zavala v. El Paso County Hosp. Dist., 143 N.M. at 42, 172 P.3d at 179. This determination is made by balancing five factors: (i) the burden on the defendant; (ii) the forum's interest; (iii) the plaintiff's interest; (iv) the interest in an efficient judicial system; and (v) the interest in promoting public policy. See Zavala v. El Paso County Hosp. Dist., 143 N.M. at 42, 172 P.3d at 179 (citing Burger King Corp. v. Rudzewicz, 471 U.S. at 467-77)

## ANALYSIS

The Court first must "ask whether any applicable statute authorizes the service of process on defendants." Dudnikov v. Chalk & Vermiliion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008)(citing Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006)). Neither 42 U.S.C. §§ 2000e through 2000e-17 nor 42 U.S.C. § 1981 "provides for nationwide service of process, so Fed. R. Civ. P. 4(k)(1)(A) commands the [Court] . . . to apply the law of the state in which the

district court sits." Dudnikov v. Chalk & Vermiliion Fine Arts, Inc., 514 F.3d at 1070.  See Berry v. Lee, 428 F. Supp. 2d 546, 551 (N.D. Tex. 2006)("Title VII does not provide for nationwide service of process." (citing Goyette v. DCA Adver., Inc., 830 F. Supp. 737, 742 (S.D.N.Y. 1993)).  To satisfy the requirements of the New Mexico long-arm statute, the court must evaluate a three-prong test: (i) did the defendant commit an act or omission set forth in N.M.S.A. 1978, §38-1-16; (ii) does the plaintiff's cause of action arise out of the alleged acts or omissions; and (iii) does the defendant have sufficient minimum contacts with New Mexico to satisfy due process concerns.  See Tercero v. Roman Catholic Diocese, 132 N.M. at 316, 48 P.3d at 54.  "New Mexico has extended the reach of its long-arm statute to the limits of due process."  Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. at 1342 (citation omitted).  Because New Mexico has extended the reach of its long-arm statute to the limits of due process, the Court will address only whether THI of Baltimore and FLTCH have minimum contacts with New Mexico such that maintenance of Walker's suit against them does not offend traditional notions of fair play and substantial justice.  The Court finds that Walker has not made a prima-facie showing that either THI of Baltimore or FLTCH have minimum contacts with New Mexico such that the maintenance of Walker's suit against them does not offend traditional notions of fair play and substantial justice.

I.     **THE COURT WILL NOT USE THE SINGLE-EMPLOYER TEST IN DETERMINING WHETHER IT HAS PERSONAL JURISDICTION OVER THI OF BALTIMORE AND FLTCH.**

The single-employer theory is a theory courts use to determine whether two entities constitute a single employer for purposes of Title VII liability.  See Sandoval v. City of Boulder, Colo., 388 F.3d at 1322.  Walker argues that THI of Baltimore and FLTCH operate as part of a single employer, which includes all the corporate defendants in this case.  She argues that, because THI of Baltimore and FLTCH operate as part of a single employer, and because there is no dispute

that FAS, FCC, THI of New Mexico, and THI of Hobbs are subject to personal jurisdiction in New Mexico, the Court has personal jurisdiction over THI of Baltimore and FLTCH.  Walker argues that, even if the Court decides that the single-employer status of THI of Baltimore and FLTCH by itself does not confer personal jurisdiction, this status augments the Defendants' other minimum contacts with New Mexico.

THI of Baltimore and FLTCH argue that the single-employer test is irrelevant to the issue whether the Court has jurisdiction over them.  They argue that New Mexico law controls the question whether the Court has personal jurisdiction and that the single-employer concept is absent from New Mexico jurisprudence in the area.  They argue that other courts have rejected plaintiffs' attempts to use the single-employer theory to establish personal jurisdiction over a corporate defendant.

Several courts have rejected plaintiffs' attempts to use the single-employer theory to establish personal jurisdiction over corporate defendants based upon subsidiaries' actions.  See, e.g., Smit v. Isiklar Holding A.S., 354 F. Supp. 2d 260, 267 (S.D.N.Y. 2005)("Even if ERISA[, 29 U.S.C. §§ 1001 through 1461,] considers all the defendants a "single employer" and a 'controlled group' under 'common control' with Isiklar Holding -- issues I need not reach here -- it would not empower this Court to impute the actions of one entity to another for purposes of establishing personal jurisdiction over foreign defendants.").

In Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934 (7th Cir. 2000), the United States Court of Appeals for the Seventh Circuit affirmed the district court's finding that it did not have personal jurisdiction over the defendants, two Canadian companies -- Reimer Express Enterprises, Limited ("REE") and Reimer Express World Corporation ("REWCOR").  230 F.3d at 937.  The plaintiff pension fund prevailed in a suit under

the Multiemployer Pension Plan Amendments to ERISA against Inter-City Truck Lines, Inc.

("ICTL") -- a Canadian corporation that operated a United States trucking enterprise out of Detroit,

Michigan and engaged in extensive business in the United States.  230 F.3d at 938.  The judgment

was not satisfied, however, and after determining that REE and REWCOR were affiliated with

ICTL, the plaintiff filed an action in federal district court in Illinois, seeking payment of the

judgment.  See 230 F.3d at 938.  The defendants filed a motion to dismiss under rules 12(b)(1),

12(b)(2), and 12(b)(6).  See 230 F.3d at 938.

> As part of that motion, the defendants submitted the affidavit of W.A.
> Redekopp, the general counsel of REWCOR. Redekopp said that REE, REWCOR
> and its subsidiaries such as ICTL have observed all corporate formalities, and that
> neither defendant exercised day-to-day management control of ICTL, 141622
> Canada, Inc., or 140593 Canada, Inc. Redekopp also stated that REE or REWCOR
> have not done any business, have not had an office or telephone number, or owned
> or leased any property in Illinois or anywhere in the United States.
>
> Accompanying the defendants' reply brief was an affidavit from James D.
> Cockburn and a second affidavit from Redekopp.  Cockburn stated that in 1991 he
> was employed by REE and served as a consultant to REE's operating subsidiaries on
> labor matters.  REE charged its subsidiaries a fee for the use of Cockburn's services.
> Cockburn further averred that prior to executing the aforementioned fringe benefit
> agreement, he discussed the matter with Hugh Richardson, then president of ICTL,
> who orally authorized Cockburn to sign the document on behalf of ICTL.  Thus,
> Cockburn claims that he was serving as an agent of ICTL and not REE when he
> signed the agreement.  Redekopp stated that REE provided administrative services
> to its subsidiaries in return for fees.  Redekopp explained that Messel was employed
> by REE and, at the request and direction of ICTL management, provided payroll
> services to ICTL, which was charged by REE for these services.  He also claimed
> that none of these REE employees were involved in the day-to-day management of
> the subsidiaries.

230 F.3d at 938-39.  The district court granted the defendants' motion to dismiss after finding that

"personal jurisdiction was absent."  230 F.3d at 939.

> The court stated that corporate ownership generally is not a sufficient basis for
> personal jurisdiction.  Likewise, the provision of administrative services by a parent
> for a subsidiary does not trigger personal jurisdiction over the parent.  The Fund had
> not alleged that REE and REWCOR were the alter egos of ICTL, controlled ICTL

-24-

to the degree necessary to pierce the corporate veil, or exerted substantial control over ICTL's day-to-day activities. The court also denied the Fund's request for discovery, finding that the activities plaintiffs wished to investigate were attributable only to ICTL and were not related to the ERISA cause of action. The Fund timely appealed.

230 F.3d at 939. On appeal, the plaintiff argued that the district court had specific personal jurisdiction over the defendants based on their contacts with "Illinois or the United States as a whole," and that the "standard rule that corporate ownership cannot confer jurisdiction over the parent does not apply in the context of a statutory scheme that premises liability on such affiliation." 230 F.3d at 939. The Seventh Circuit first analyzed the plaintiff's corporate affiliation argument. See 230 F.3d at 943.

> The Fund acknowledges the general rule that corporate ownership alone is not sufficient for personal jurisdiction. Nevertheless, the Fund claims that this principle does not apply in the context of withdrawal liability under MPPAA because 29 U.S.C. § 1301(b)(1) states that all businesses under common control shall be treated as a single entity. The Fund argues that because this provision has been in effect since 1980, REE and REWCOR should have reasonably anticipated being subject to MPPAA liability in Illinois and the United States. The Fund concludes that because a district court in Illinois was able to assert personal jurisdiction over ICTL, Illinois can exercise such jurisdiction over the defendants.

230 F.3d at 943. The Seventh Circuit stated that, although it had "not squarely considered th[e] issue before, [it had] h[e]ld that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." 230 F.3d at 943. The Seventh Circuit stated:

> The Fund's argument that this analysis changes where a federal statute premises liability on corporate affiliation ignores the process by which courts determine whether specific personal jurisdiction exists and confuses liability and jurisdiction. To decide whether specific personal jurisdiction may be exercised, a court must engage in three distinct steps in the following order: (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum

contacts sufficiently comports with fairness and justice; (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit. If the court determines at the second step that a defendant does not have sufficient minimum contacts with the forum, then its personal jurisdiction analysis ends without examining the plaintiff's causes of action. The laws on which the suit are based would be irrelevant because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action, since this would violate due process. See AT & T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 590-91 (9th Cir. 1996). Similarly, jurisdiction and liability are two separate inquiries. See id.; Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1061 (3d Cir. 1982); Witt v. Scully, 539 F.2d 950, 951-52 (3d Cir. 1976). The fact that a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised. MPPAA's definition of corporate affiliation as an element of withdrawal liability cannot confer personal jurisdiction on the basis of such affiliation any more than a California cause of action's inclusion of a defective product as an element of liability can confer jurisdiction over a Japanese manufacturer whose defective product causes injury in California but who does not have sufficient minimum contacts with that state. See Asahi Metal Indus. v. Superior Court of California, Solano County, 480 U.S. 102, 105-06, 112-13 . . . (1987) (opinion of O'Connor, J.). In many circumstances, the conduct of a foreign defendant may satisfy the elements of liability contained in a statute, but this defendant will escape judgment because personal jurisdiction is lacking. Thus, MPPAA's control group provision regarding withdrawal liability does not alter the rule that corporate affiliation or ownership is not a sufficient minimum contact for the exercise of personal jurisdiction.

230 F.3d at 944-45 (footnote omitted). The Seventh Circuit applied this holding, and found that "corporate affiliation cannot serve as a basis for personal jurisdiction over REE or REWCOR." 230 F.3d at 945.

In Vogt v. Greenmarine Holding, LLC, No. CIV.A.1:01-CV0311JOF, 2002 WL 534542 (N.D. Ga. Feb. 20, 2002), the United States District Court for the Northern District of Georgia granted the defendants' motion to dismiss the plaintiffs' complaint. See 2002 WL 534542, at *8. The plaintiffs argued that the proper test for personal jurisdiction "is whether OMC and Defendants constitute a 'single employer' so as to be liable under WARN." 2002 WL 534542, at *3. The district court found, however, "that it [wa]s improper to conflate an issue of subject matter

jurisdiction with personal jurisdiction[;] [l]iability and jurisdiction are two separate inquiries." 2002 WL 534542, at *3.  The district court thus "analyze[d] Defendants' motion to dismiss for lack of personal jurisdiction under the minimum contacts test."  2002 WL 534542, at *3.

Walker directs the Court's attention to one case -- Berry v. Lee -- in support of her argument that the Court should consider that THI of Baltimore and FLTCH operate as part of a single, integrated enterprise in its personal-jurisdiction analysis.  In Berry v. Lee, the Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, denied the defendants' motion to dismiss under rule 12(b)(2).  See 428 F. Supp. 2d at 549.  Judge Fitzwater considered Berry's contention that the court had "general jurisdiction over CBPC through the corporate defendants and Lee's doing business in Texas." 428 F. Supp. 2d at 553.  Judge Fitzwater noted that Berry alleged three related theories of personal jurisdiction: "BSC, CBPC, BSI, and BSUSA constitute a single business enterprise, CBPC is the alter ego of BSC, and CBPC is the alter ego of Lee." 428 F. Supp. 2d at 553.  The district court noted that, "[a]lthough Berry presents these contentions separately, the evidence she proffers to support each is generally coextensive."  428 F. Supp. 2d at 553.

> Defendants maintain that CPBC must be viewed as a distinct company that lacks minimum contacts with this forum.  They contend that CPBC is incorporated under the laws of China; CPBC manufactures cosmetics products that are sold to customers (including BSC) in China and Korea; BSC sells the manufactured products of CBPC and other manufacturers outside China; one BSC customer is BSI, who markets CBPC's products to distributors in the United States and around the world; and CBPC has separate ownership from BSI and is operated separately from BSI, BSC, and BSUSA.  Defendants also dispute that the single business enterprise theory can be used to establish personal jurisdiction.  Principally, they contend that, under Texas law, liability cannot be imposed on an entity based on the single business enterprise theory absent a showing of that entity's actual fraud.

428 F. Supp. 2d at 553.  Judge Fitzwater rejected the "defendants' challenge to Berry's reliance on the single business enterprise theory," stating that "Berry is not relying on this theory to prove that

CPBC is liable; she is doing so for the purpose of establishing that CBPC is amenable to suit in this forum[;] [t]his distinction is recognized in Texas" and that "[m]oreover, Texas courts rely on the single business enterprise theory to assert jurisdiction."  428 F. Supp. 2d at 553.  The district court, after considering the evidence as a whole, concluded that Berry made "a prima facie showing that BSI, CBPC, BSUSA, and BSC are a single business enterprise," and that CBPC thus, "as a component of a single business enterprise, ha[d] sufficient minimum contacts with the state of Texas to support the exercise of general jurisdiction over it."  428 F. Supp. 2d at 556.

The Court has not found, and the parties have not directed the Court's attention to, any jurisprudence from New Mexico adopting or using the single-employer concept to gain personal jurisdiction over a corporate entity.  There is a case from the Court of Appeals of New Mexico, which discusses "whether alter ego is a viable theory for obtaining personal jurisdiction over a foreign corporation in New Mexico."  Alto Eldorado P'ship v. Amrep, 138 N.M. 607, 611, 124 P.3d 585, 589 (Ct. App. 2005).[8]  In Alto Eldorado Partnership v. Amrep, the Court of Appeals addressed whether the district court had personal jurisdiction over the defendant Amrep Corporation ("Amrep").  138 N.M. at 611, 124 P.2d at 589.  The Court of Appeals found that the plaintiffs made a sufficient showing to satisfy the due-process requirement of minimum contacts for jurisdiction over Amrep.  See 138 N.M. at 611, 124 P.2d at 589.  The plaintiffs filed a complaint against

_____

[8] The Court of Appeals certified this case to the Supreme Court of New Mexico, as it "believed that [its] differing views of jurisdiction required resolution."  Alto Eldorado P'ship v. Amrep, 138 N.M. at 611, 124 P.3d at 589.  "Following oral argument above, [the] Supreme Court quashed certification as improvidently granted and returned the case to [the] Court [of Appeals]."  138 N.M. at 611, 124 P.3d at 589.  The Court of Appeals "enter[ed] [the judges'] respective opinions as they were set forth in the order of certification."  138 N.M. at 611, 124 P.3d at 589.  The Honorable Roderick T. Kennedy, Court of Appeals Judge, wrote the opinion, the Honorable Jonathan B. Sutin specially concurred and filed an opinion, and the Honorable Lynn Pickard wrote a dissenting opinion.

Eldorado Utilities, Inc. ("EUI") -- a "New Mexico incorporated public utility that has the 'right and obligation' to provide water to its franchise area."  138 N.M. at 611, 124 P.2d at 589.  EUI was a wholly owned subsidiary of Amrep, and the plaintiffs later filed an amended complaint naming Amrep as a defendant and Amrep Southwest -- a wholly owned subsidiary of Amrep incorporated in New Mexico -- and Eldorado at Santa Fe -- a subsidiary of Amrep incorporated in New Mexico.  See 138 N.M. at 611, 124 P.3d at 589.

Amrep is a holding company publicly traded on the New York Stock Exchange. Amrep essentially has two ventures: cable television and real estate.  The real estate branch of Amrep owns the New Mexico Amrep subsidiaries listed above.  In 1973, EUI, not its parent Amrep, applied to run a water utility in New Mexico.  Minutes from a special meeting of EUI's board in 1973 stated that EUI "was formed for the purpose of providing water utility service at El Dorado at Santa Fe."  EUI was created to facilitate the real estate interests or ventures of Amrep.  According to EUI's president, who also serves as vice president for Amrep, when Amrep's land subsidiaries no longer need EUI, Amrep will sell it.  Specifically, Amrep is in the land business, not the utility business.

PUC required that Amrep subsidize any of EUI's operating shortfalls.  The 1973 PUC order noted that "[a]s the revenues from the utility operation will be insufficient to maintain the utility in a 'no-loss' position for several years, the payments made by AMREP are the additional revenues needed to maintain the utility in a 'no-loss' financial position."  PUC ordered that "AMREP . . . shall annually pay . . . the amount required to maintain [EUI] in a 'no-loss' financial position until such a time as [EUI] becomes a self sustaining utility."  The final order approving this subsidization agreement found jurisdiction over the parties, but does not state who those parties were.  In 1993, EUI asked PUC to end this requirement, since the subsidization requirement interfered with Amrep's desire to sell EUI.  The subsidization requirement ended in 1994.  In its 1994 order, PUC stated that it had jurisdiction over EUI and "all the parties to [the] case," and that EUI had become self-sustaining.  However, from 1994 until 1999, Amrep gave EUI millions of dollars in what it called "capital contributions."  EUI's employee supervisor, James William McLean, stated that EUI never had any money.  If EUI needed money, such as to drill a well, it looked to Amrep to pay for it.

By 2001, EUI had an income of $1,300,000.  In 2002, its assets alone were worth $8,500,000.  EUI had 2700 customers, some employees, and contracts in its own name.  Amrep referred to EUI as a subsidiary, and not as a department or division.  EUI filed its own separate financial statement with PUC as part of that Commission's requirements.

Amrep officers were also officers for its New Mexico subsidiaries.  James Wall served as the senior vice president for Amrep and the president of Amrep's New Mexican subsidiaries, including EUI.  He considered himself an employee of Amrep and of Amrep Southwest; he was the primary link between the two.  He was also the common link between Amrep Southwest and EUI.  Below, counsel argued over whether EUI's board ever elected Wall as their chief executive officer.  Defense counsel, however, only pointed to EUI board minutes appointing Wall as president of EUI.  When asked about his relationship with EUI, Wall stated that he served as the "CEO for all the real estate for AMREP," and that the only position he held with Amrep itself was as its senior vice president.  However, he did not have a contract with EUI nor a job description with this subsidiary.  Wall's salary and raises were set by Amrep, but Amrep Southwest actually paid him.  Wall reported directly to an executive committee that served as the CEO of Amrep, and considered it his "boss."  Amrep and its various subsidiaries, including EUI, had a common payroll system, and consolidated their annual reports and financial statements.

When Wall reported the Santa Fe County moratorium to Amrep, he was directed to "[f]ix it."  When asked why EUI did not fight this moratorium, Wall said that "[w]e have a lot of other things that came before the county [and] [w]e didn't feel it was in our best interest at that time to challenge [the county] legally."  These issues included a road system for its subdivision and zoning.  Being in the land business, and not the utility business, Amrep apparently chose to make the interests of its land development subsidiaries superior to the issues facing EUI.

EUI's officers also included Gary Sullivan, Mohan Vachani as vice president, and Wendy Mitchell as secretary.  Vachani was the Corporate Finance Officer for Amrep, plus an officer and director of its subsidiaries, serving as vice president for Eldorado at Santa Fe.  Sullivan was the comptroller of Amrep Southwest and a director at Eldorado at Santa Fe.  Mitchell served as vice president of human resources for Amrep Southwest, and secretary for Eldorado at Santa Fe.

Amrep asserts that EUI, and not Amrep, ran the day-to-day operations of EUI.  Wall stated that McLean ran EUI's day-to-day operations.  McLean supervised at least some of EUI's employees.  McLean, however, stated that he did not work for EUI or have a contract with that subsidiary.  Rather, McLean's contract was with Amrep Southwest.

EUI's board of directors existed because Wall needed a "legal board" to conduct business.  EUI shared officers with Amrep from its incorporation in 1973.  EUI board meetings were held in Amrep's corporate offices in New York for approximately ten years.  The Santa Fe County moratorium and the litigation that resulted in the appeal before us never went before the board of EUI.  The board minutes reflect elections, such as electing Wall president (but not CEO) of EUI, adoption of a retirement plan, and a special meeting regarding a loan agreement.  The sale of EUI's assets appeared not in the minutes of EUI, but in the minutes of Amrep,

where it was ultimately approved in 1990.  The record is unclear as to what happened
to this deal, and there are not any minutes from EUI pertaining to it.

138 N.M. at 612-13, 124 P.2d at 590-91.  The plaintiffs argued that EUI was Amrep's alter ego, and

that "this relationship g[ave] New Mexico courts personal jurisdiction over Amrep."  138 N.M. at

613, 124 P.2d at 591.  The Court of Appeals stated "[i]ndirectly . . . agency principles may be useful

to the question of jurisdiction over Amrep."  138 N.M. at 613, 124 P.2d at 591.

> Agency and alter ego might require a separate analysis when used to assert
> liability over a foreign corporation, but "it is difficult to see a significant distinction
> between the two theories for jurisdictional purposes."  SGI Air Holdings II LLC v.
> Novartis Int'l AG, 239 F.Supp.2d 1161, 1166 (D.Colo.2003).  Both theories "often
> depend on the same type of evidence."  Id.  As we will explain, the true inquiry must
> be focused on minimum contacts and not substantive principles of corporate law; we
> address the theory of alter ego with the understanding that agency cases may be
> useful in our analysis.  To do this, we must first decide whether alter ego is even a
> viable theory to establish personal jurisdiction in New Mexico, and if so, to what
> extent.  This fundamental question went unaddressed by the parties, who focused
> only on the application of an alter ego theory to the facts.
>
> Alter ego, however, is primarily used to establish liability.  See, e.g.,
> Antoinette Sedillo López, Comment, The Alter Ego Doctrine: Alternative Challenges
> to the Corporate Form, 30 UCLA L.Rev. 129 (1982).  When we are called upon to
> review an "alternative challenge[ ]" to the corporate form, "[t]he traditional alter ego
> analysis is often inadequate when applied . . . and, as a result, rulings are often
> inconsistent."  Id. at 131. Assertions of jurisdiction based on an alter ego theory are
> one such category of "unusual challenges."  Id. at n.12.
>
> The usual challenge using the alter ego theory seeks to pierce the corporate
> veil, to disregard the separate nature of a corporation and its subsidiary for purposes
> of liability.  Id. at 129-30; see, e.g., Scott v. AZL Res., Inc., 107 N.M. 118, 121, 753
> P.2d 897, 900 (1988) (stating that piercing the corporate veil requires findings not
> only of instrumentality, but of improper purpose and proximate cause).  We have
> applied the alter ego exception to a question of the liability of a parent corporation
> for the acts of its subsidiaries in cases like Cruttenden v. Mantura, 97 N.M. 432,
> 434-35, 640 P.2d 932, 934-35 (1982).  Liability based on an alter ego theory lies
> "where the shareholders have so manipulated the corporation to further their own
> individual interests that the identity of the corporation has merged into its
> shareholders."  Scott Graphics, Inc. v. Mahaney, 89 N.M. 208, 211, 549 P.2d 623,
> 626 (Ct.App.1976).  Liability through an alter ego theory thus focuses on the identity
> of each entity and the use of substantive principles of corporate law.  For example,
> Cruttenden says that referring to the subsidiary "as such or as a department or

> division" is one factor in assessing whether one corporation is the alter ego of another. Cruttenden, 97 N.M. at 435, 640 P.2d at 935 (internal quotation marks and citation omitted). Yet the long-arm statute focuses on minimum contacts. NMSA 1978, § 38-1-16(A) (1971). We hold that liability and jurisdiction are different inquiries that focus on different principles and frequently on different bodies of law.

138 N.M. at 614, 124 P.3d at 592. The Court of Appeals noted that "[t]hese differing inquiries have

led courts to apply alter ego theories to questions of jurisdiction in two distinctly separate ways."

138 N.M. at 614, 124 P.3d at 592.

> One approach imports the state's own unique alter ego test into the state long-arm statute. See, e.g., Jemez Agency, Inc. v. CIGNA Corp., 866 F.Supp. 1340, 1343-44 (D.N.M. 1994)(requiring the plaintiffs to satisfy all three prongs of the alter ego test for liability as set forth in Scott, 107 N.M. at 121, 753 P.2d at 900). The result of satisfying the alter ego test when applied to jurisdiction would be to "attribut[e] [the] contacts of one person or entity to another." Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc., 45 F.Supp.2d 1255, 1258 (D.N.M.1999). If we took this approach here, for example, and held that EUI was the alter ego of Amrep, then EUI's contacts with New Mexico would be attributed to Amrep. See id.; see also N. Laminate Sales, Inc. v. Matthews, 249 F.Supp.2d 130, 137 (D.N.H.2003)(applying a traditional alter-ego test to the question, and discussing the use of an alter-ego theory to pierce the corporate veil to establish jurisdiction so that corporate contacts may be attributed to another); Snell v. Bob Fisher Enters., Inc., 106 F.Supp.2d 87, 90 (D.Me.2000) (same). Put another way, our general jurisdiction over EUI would give our courts general jurisdiction over Amrep.

138 N.M. at 614-15, 124 P.3d at 592-93. The Court of Appeals noted that "[t]his approach has

found favor with may state and federal courts," and that "[e]ven some law reviews favored this

approach." 138 N.M. at 615, 124 P.3d at 593. The Court of Appeals stated "[t]his approach would

allow a court to satisfy the constitutional requirements by sole use of a straightforward alter ego test

instead of focusing on a broader, amorphous, constitutional test." 138 N.M. at 615, 124 P.2d at 593.

> The second approach to questions of jurisdiction that seek to employ alter ego theories rejects such a use of substantive corporate law. Id. at 1259. Cases like Purple Onion Foods would require that the corporation "have sufficient contacts of its own with New Mexico in order to be subject to suit." Id. Energy Reserves Group, Inc. v. Superior Oil Co., 460 F.Supp. 483, 490 (D.Kan.1978), also rejected a strict application of substantive corporate law when faced with a question of jurisdiction over a foreign corporation. Energy Reserves examined in great detail how the

-32-

Supreme Court decision in Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333 . . . (1925), precipitated the use of substantive corporate law when evaluating jurisdiction over an entity not incorporated within a forum's borders. Energy Reserves, 460 F.Supp. at 495-99; see [Lonny Sheinkopf Hoffman, The Case Against Vicarious Jurisdiction, 152 U. Pa. L. Rev. 1023,] at 1029 [(2004)]. Amrep relies in part on Cannon Manufacturing for the proposition that New Mexico incorporation of a subsidiary does not subject its non-resident parent to New Mexico jurisdiction. Cannon Manufacturing, however,

> was decided in a context where extraterritorial service of process on a non-resident corporation was statutorily unauthorized and constitutionally restricted by the old notions of territorial power limitations on a state's ability to issue service beyond its borders. Cannon therefore imposed merely a statutory obstacle to service on a non-resident corporation on the basis of its subsidiary's business in the forum.  That statutory obstacle, however, was reflective of the constitutional obstacle to extraterritorial service then extant under the territorial due process constraint that a state might exercise jurisdiction only over those persons present in the forum . . . .

> Although often cited for the proposition that the mere presence of a subsidiary corporation within a state does not provide a basis for personal jurisdiction over a non-resident parent corporation, Cannon specifically held that the business of a subsidiary in the state did not constitute sufficient "doing business" in that state by the parent to warrant an inference of the parent's "presence" there.  Thus, local service of process on the domestic subsidiary was held insufficient as a means to invoke jurisdiction over the non-resident parent.

Energy Reserves, 460 F.Supp. at 495-96.  Thus, under Cannon, the foreign corporation needed to be "present" in the state, which required showing that the corporation was "doing business" in the forum. Energy Reserves, 460 F.Supp. at 497 (internal quotation marks and citation omitted); see Cannon, 267 U.S. at 334-35, 45 S.Ct. 250; see also Hoffman, supra, at 1042, 1044.  Since the corporation had to be "present," and a state long-arm statute was not available, that court had to establish jurisdiction over a foreign corporation by use of an alter ego theory. Energy Reserves, 460 F. Supp. at 497.

This Court is not bound by such restraints.  First, unlike Cannon, New Mexico has a long-arm statute authorizing service on foreign corporations.  Section 38-1-16(A)(1); see Cannon, 267 U.S. at 336, 45 S.Ct. 250 ("The claim that jurisdiction exists [did] not rest[ ] upon the provisions of any state statute."). Second, New Mexico's long-arm statute has language reflecting Cannon's "doing business" requirement.  Section 38-1-16(A) (stating that the court has jurisdiction when a cause of action arises from "the transaction of any business within this

-33-

> state"); <u>Cannon</u>, 267 U.S. at 334-35, 45 S.Ct. 250 ("The main question for decision is whether, at the time of the service of process, defendant was doing business within the [s]tate in such a manner and to such an extent as to warrant the inference that it was present there.").  Third, fulfillment of the technical requirements for service under the long-arm statute has been equated with minimum contacts.  <u>Santa Fe Techs.</u>, 2002-NMCA-030, ¶ 13.  The equation of technically "doing business" with a minimum contacts analysis reflects an ideological shift from <u>Cannon's</u> "presence" requirement to the "minimum contacts" requirement of <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 . . . (1945).

138 N.M. at 615-16, 124 P.3d at 593-94.  The Court of Appeals noted that <u>International Shoe Co. v. Washington</u> sets forth the constitutional standard for personal jurisdiction -- a defendant must have minimum contacts with the forum state such that maintaining the suit against the defendant does not offend traditional notions of fair play and substantial justice.  <u>See</u> 138 N.M. at 616, 124 P.3d at 594.  The Court of Appeals stated that, even if EUI were Amrep's alter ego, that factor would not be relieve the court of a due process inquiry.  <u>See</u> 138 N.M. at 616, 124 P.3d at 594 ("Due process requirements must be satisfied no matter what theory a plaintiff uses.  An alter ego theory under substantive corporate law principles is not a substitute for minimum contacts.").

> Furthermore, "[t]o read <u>Cannon</u> or the alter ego doctrine as a limitation upon <u>International Shoe Co.</u> is to elevate to a constitutional level a statutory obstacle to extraterritorial service of process that was generated in the context of a now obsolete jurisdictional analysis."  <u>Energy Reserves</u>, 460 F.Supp. at 504.  <u>Energy Reserves</u> further rejected any "constitutional immunity" from suit that would be the natural result of requiring the satisfaction of an alter ego test above and beyond minimum contacts to obtain jurisdiction over a foreign parent. <u>Id</u>. at 506-07.  Since New Mexico law allows jurisdiction to the full limits of constitutionality under <u>Federal Deposit Insurance Corp. v. Hiatt</u>, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994), we decline to impose such an unnecessary limitation.  Therefore, we do not require that all of the elements of alter ego be proven in order to hale a foreign corporate parent into court, but we can and will consider whatever elements a plaintiff shows in assessing minimum contacts.  "Put simply, separation of formal corporate identities does not impose a constitutional barrier to the exercise of jurisdiction over a non-resident corporation."  <u>Energy Reserves</u>, 460 F.Supp. at 508. Rather, we require only what is necessary to establish jurisdiction in any and all cases: the satisfaction of due process.

138 N.M. at 616, 124 P.3d at 594.  The Court of Appeals stated that, "[w]hile we might decline to

directly superimpose ill-fitting and questionably relevant principles of substantive corporate liability law onto our constitutional inquiry, the relationship between a parent and its subsidiary may be crucial in evaluating jurisdiction itself." 138 N.M. at 616, 124 P.3d at 594. The Court of Appeals stated that "'[t]he mere existence of the relationship is one relevant factor.'" 138 N.M. at 616, 124 P.3d at 594 (citation omitted). The Court of Appeals also noted that the corporate relationship might also be probative whether it is fundamentally fair to require the defendant to defend a suit in the forum and that a showing of formation for an improper purpose might also be probative. See 138 N.M. at 616, 124 P.3d at 594. In analyzing whether Amrep had minimum contacts with New Mexico, the Court of Appeals considered that Amrep's New Mexico subsidiaries were wholly owned, that an Amrep employee ran EUI's day-to-day operations, and that Amrep appeared to direct EUI's actions in New Mexico. See 138 N.M. at 618-19, 124 P.3d at 596-97.

The Court will not use the single-employer theory to determine whether it has personal jurisdiction over THI of Baltimore and FLTCH.[9] In Alto Eldorado Partnership v. Amrep, the Court of Appeals of New Mexico held that "liability and jurisdiction are different inquiries that focus on different principles and frequently on different bodies of law," and stated that the "alter ego theory under substantive corporate law principles is not a substitute for minimum contacts." 138 N.M. at 616, 124 P.3d at 594. Although Walker does not argue that the Court should use the alter ego theory as grounds for jurisdiction -- instead she argues only that the Court should use the single integrated-

---

[9] At the hearing, Walker stated that she was not arguing that the alter-ego theory gives the Court jurisdiction over THI of Baltimore and FLTCH. See Tr. at 45:24-47:6 (Court, Yohalem)("THE COURT: . . . You're not making an argument that alter ego gives the court jurisdiction . . . MR. YOHALEM: That's right. . . . THE COURT: And the reason that you didn't rely on alter ego is that -- is that. MR. YOHALEM: We don't have the discovery to allow us."). The Court therefore will not address alter ego as grounds for jurisdiction over THI of Baltimore and FLTCH.

enterprise theory -- as the Court in <u>Alto Eldorado Partnership v. Amrep</u> recognized the single integrated-enterprise theory is a different inquiry from a jurisdictional inquiry and derives from a different body of law.  The single integrated-enterprise theory derives from federal law regarding Title VII, a different body of law than law regarding minimum contacts.  The purpose of the single integrated-enterprise theory is to "determine whether two entities constitute a single employer for purposes of Title VII liability"; the minimum-contacts test makes certain that persons are not drug into the courts of far-away jurisdictions in which they did not envision being involved and in which the existence of jurisdiction would be fundamentally unfair.  The Court does not believe that it should "confuse[ ] liability and jurisdiction" by using the single-employer theory to determine whether it has personal jurisdiction over THI of Baltimore and FLTCH; instead, the Court will use the constitutional inquiry whether THI of Baltimore and FLTCH have minimum contacts with New Mexico such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.  <u>Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d at 944.  "The laws on which the suit are based [are] irrelevant because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making the[] contacts elements of a cause of action, since this would violate due process."  <u>Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d at 944 (citation omitted).  That FLTCH and THI of Baltimore might be liable under Title VII if the Court has personal jurisdiction over them is not relevant to the question whether the Court can exercise personal jurisdiction over them, <u>see</u> <u>Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d at 944, and if the Court does not have personal jurisdiction over FLTCH and THI of Baltimore, it cannot render a valid judgment on the merits of other issues -- such as whether FLTCH and THI of Baltimore are part of a single, integrated enterprise, <u>see</u> <u>OMI Holdings, Inc. v. Royal Ins. Co. of</u>

Canada, 149 F.3d at 1090.

      The Court is not persuaded that it should follow the Northern District of Texas' analysis in Berry v. Lee.  Unlike Berry v. Lee, where the Northern District of Texas rejected the defendants' challenge to the plaintiff's reliance on the single business enterprise theory to assert jurisdiction, stating that "Texas courts rely on the single business enterprise theory to assert jurisdiction," 428 F. Supp. 2d at 553, the Court has not found, nor have the parties directed the Court's attention to, a case from New Mexico using the single-employer theory to gain personal jurisdiction over a corporation.  The Court thus believes that Berry v. Lee is distinguishable, and that it should not follow Berry v. Lee and rely on the single integrated-enterprise theory to determine whether FLTCH and THI of Baltimore are amenable to suit in New Mexico.  Moreover, even if New Mexico endorsed use of the single integrated-enterprise theory to determine personal jurisdiction, the Court believes that ultimately the New Mexico courts -- state and federal -- would have to determine whether due process limited the exercise of jurisdiction, for the single reason that the Supremacy Clause requires federal law to trump state law.  See Altria Group, Inc. v. Good, 555 U.S. 70, ___, 129 S. Ct. 538, 543 (2008)(stating that "we have long recognized that state laws that conflict with federal law are 'without effect.'" (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)).  Moreover, if New Mexico law already goes as far as due process allows, adoption of the single integrated-enterprise doctrine in the personal-jurisdiction analysis would add nothing to New Mexico jurisprudence.  The single integrated-enterprise doctrine cannot confer jurisdiction where due process would not allow  the court to exercise jurisdiction over the defendant.

      Furthermore, if the Court were to use the single-employer theory to determine whether it has personal jurisdiction over THI of Baltimore and FLTCH, it might have the anomalous result of conferring jurisdiction only when the plaintiff has alleged a claim under Title VII.  On the other

-37-

hand, if the Court were to use the single-employer theory to determine personal jurisdiction, it might also create a situation where a party might find itself subject to personal jurisdiction, litigating both federal and state claims -- as Walker is -- based upon jurisdictional allegations relevant only to the claims under federal statutes.  The Court therefore will not use the single-employer theory to determine whether it has personal jurisdiction over THI of Baltimore and FLTCH.  Although the Court will not use the single-employer theory to determine whether it has personal jurisdiction over THI of Baltimore and FLTCH, the Court will consider several facts, that might later be relevant in a single integrated-employer analysis, however, in its analysis whether THI of Baltimore and FLTCH have minimum contacts -- such as FLTCH wholly owning THI of Baltimore, THI of Baltimore wholly owning FCC and THI of New Mexico, and Zack providing updates to Foreman.

## II.  THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THI OF BALTIMORE.

Walker argues that there is substantial evidence that THI of Baltimore purposefully entered New Mexico and transacted a great deal of business here.  She states that THI of Baltimore wholly owns FCC and THI of New Mexico, that THI of Baltimore shares officers and directors with FAS, and that FAS' tax department prepares tax filings for THI of Baltimore.  THI of Baltimore argues that none of these contentions, standing alone or together, demonstrate that THI of Baltimore is subject to personal jurisdiction in New Mexico.

"New Mexico has extended the reach of its long-arm statute to the limits of due process."  Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. at 1342 (citation omitted).  Thus, if jurisdiction is consistent with the Due-Process Clause, New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant.  See Tercero v. Roman Catholic Diocese, 132 N.M. 312, 316, 48 P.3d 50, 54 (2002).

-38-

The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(internal quotation marks omitted). The Supreme Court has instructed that the "minimum contacts" standard requires, first, that the out-of-state defendant must have "purposefully directed" its activities at residents of the forum state, and second, that the plaintiff's injuries must "arise out of" defendant's forum-related activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Additionally, exercising personal jurisdiction over defendants must always be consonant with traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. at 316.

Walker has not made a prima-facie showing that the Court has personal jurisdiction over THI of Baltimore. Walker asserts that THI of Baltimore has sufficient contacts with New Mexico, because THI of Baltimore wholly owns FCC and THI of New Mexico, because THI of Baltimore shares officers and directors with FAS, and because FAS' tax department prepares tax filings for THI of Baltimore.

THI of Baltimore is the sole member of FCC and the sole member of THI of New Mexico. See FCC's Answers to Interrogatories, Interrogatory No. 15; Nursing Licensure Application at 2, 4. During the relevant time period, THI of New Mexico wholly owned THI of Hobbs. See Nursing Licensure Application at 2, 4. Walker has put forth evidence that FCC and THI of New Mexico are subject to personal jurisdiction in New Mexico, and THI of Baltimore does not dispute this assertion. See, e.g., Clinical Support Agreement between FCC and THI of Hobbs, filed March 25, 2011 (Doc. 248, Ex. 4(a)). THI of Baltimore's status as the sole member of FCC and THI of New Mexico, in itself, is not sufficient for personal jurisdiction over THI of Baltimore. See Jemez

Agency, Inc. v. CIGNA Corp., 866 F. Supp. at 1343 ("The general rule, however, is that 'judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation[, even if] the parent owns all of the subsidiary's stock.'" (citing Restatement (Second) of Conflicts of Laws § 52 cmt. b (1971)); Alto Eldorado P'ship v. Amrep, 138 N.M. at 618, 124 P.3d at 596 ("Amrep's New Mexico subsidiaries are also wholly owned.  Even this fact, alone, is insufficient for personal jurisdiction over Amrep, as we will not subject passive investors to our jurisdiction solely on the basis of their investment.").  Although THI's of Baltimore's status as a sole member of FCC and THI of New Mexico is a contact with New Mexico, this contact does not itself give the Court personal jurisdiction over THI of Baltimore.  See Alto Eldorado P'ship v. Amrep, 138 N.M. at 618, 124 P.3d at 596 ("Even [the fact that Amrep's New Mexico subsidiaries are wholly owned], alone, is insufficient for personal jurisdiction over Amrep, as we will not subject passive investors to our jurisdiction solely on the basis of their investment." (citation omitted)).

FAS' tax department prepares the tax filings for THI of New Mexico, THI of Baltimore, and FLTCH.  See Tabler Depo. at 56:20-59:2.  Walker has not, however, tied FAS' preparation of THI of Baltimore's tax filings to New Mexico.  THI of Baltimore, however, has never paid any taxes or filed any tax returns in New Mexico.  See Tabler Decl. ¶ 19, at 4.  Walker has thus not made a prima-facie showing that FAS' tax department's preparation of tax filings is an act "by which [THI of Baltimore] purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." FDIC v. Hiatt, 117 N.M. 461, 464, 872 P.2d 879, 882 (1994).  FAS' tax department's preparation of tax filings for THI of Baltimore is thus not a sufficient contact with New Mexico which might give the Court personal jurisdiction over THI of Baltimore.

THI of Baltimore's officers and directors are Tabler, Bennett, and Fulchino.  See Tabler

Depo. at 10:15-17, 12:13-17; Zack Depo. at 171:3-172:9.  FAS' directors are Bennett and Fulchino,

and its officers are Bennet, Fulchino, Lisa, Nolan, McCarty, Warlow, and Tabler.  See Swanson

Electronic Mail Transmission at 1.  Although FAS and THI of Baltimore share several officers and

directors, there is no evidence that the directors or officers of FAS did "not act independently in the

interest of [FAS] but t[ook] direction from" THI of Baltimore.  Alto Eldorado P'ship v. Amrep, 138

N.M. at 618, 124 P.3d at 596.  See Amiga, Inc. v. Hyperion VOF, No. C07-631RSM, 2008 WL

163623, at *4 (W.D. Wash. Jan. 17, 2008)("It is the citizenship, place of business, and business

activities of the corporation to which the Court must look in determining personal jurisdiction, not

the overlapping positions of the officers."); Stenholt v. Centex Real Estate Corp., No. 95 C 2664,

1995 WL 535118, at *3 (N.D. Ill. Sept. 1, 1995)(citing a case as "finding no personal jurisdiction

over parent, despite an overlapping board of directors with subsidiary, where non-resident parent

exercised minimal control over Illinois subsidiary"); J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131

F. Supp. 2d 544 (S.D.N.Y. 2001)(stating that J.L.B. failed to aver facts showing that Ocwen Bank

was a mere department of Ocwen such that Ocwen Bank's contacts with New York would "serve

as a basis for exercising jurisdiction over Ocwen," because, although they had overlapping officers

and directors, this is intrinsic to the parent-subsidiary relationship and the plaintiff was unable to

show that Ocwen exerted any significant level of control over Ocwen Bank).  The overlap between

THI of Baltimore's and FAS' directors and officers is thus not a sufficient contact with New Mexico

which gives the Court personal jurisdiction over THI of Baltimore.  See Alto Eldorado P'ship v.

Amrep, 138 N.M. at 618, 124 P.3d at 596 ("As a general rule, the mere relationship of parent

corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the

jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing

business in the forum state." (citing Smith v. Halliburton Co., 118 N.M. 179, 182, 879 P.2d 1198,

1201 (1994)).

THI of Baltimore does not have minimum contacts with New Mexico sufficient to satisfy due-process concerns, because there is evidence only that it has corporate relationships with subsidiary corporate entities, which "is insufficient for personal jurisdiction" over THI of Baltimore. Alto Eldorado P'ship v. Amrep, 138 N.M. at 618, 124 P.3d at 596.  THI of Baltimore is not authorized, and has never been authorized, to do business in New Mexico.  See Tabler Decl. ¶ 11, at 2.  THI of Baltimore is not, and has never been, engaged in the transaction of any business or the performance of any services in the State of New Mexico.  See id. ¶ 11, at 2.  THI of Baltimore has no employees and thus conducts no operations in New Mexico or anywhere else.  See id. ¶ 10, at 2.  THI of Baltimore is not, and has never been, a resident of New Mexico, and has never been required to maintain, or maintained, a registered agent for service of process in New Mexico. See Tabler Decl. ¶ 12, at 3.  THI of Baltimore has never maintained a mailing address, telephone listing, or place of business in New Mexico, and has never had an agent or employee based in New Mexico.  See Tabler Decl. ¶ 12, at 3.  THI of Baltimore has never owned or leased any real property, personal property, or equipment in New Mexico and has never had any accounts with financial institutions in New Mexico.  See Tabler Decl. ¶ 15, at 3.  THI of Baltimore does not provide goods or services to the general public, including New Mexico, has never contracted to supply goods or services in New Mexico, has never contracted to supply goods or services in New Mexico, and has made no sales in New Mexico.  See Tabler Decl. ¶ 17, at 3.  THI of Baltimore has never paid any taxes or filed any tax returns in New Mexico.  See Tabler Decl. ¶ 19, at 4.  THI of Baltimore has never been the licensee of and did not own, operate or control any facility in Hobbs, and has never operated, managed, or controlled any other skilled nursing facilities.  See Tabler Decl. ¶ 22, at 4. Because the Court finds that Walker has not made a prima-facie showing that THI of Baltimore has

minimum contacts with New Mexico "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. at 316, the Court does not have personal jurisdiction over THI of Baltimore.  Cf. Goodyear Dunlop Tires Operations, S.A. v. Brown et ux. Co-Adm'rs of the Estate of Brown, No. 10-76, 2011 WL 2518815, at *4-7 (U.S. June 27, 2011)(holding that foreign subsidiaries of a United States parent corporation were not amenable to suit in North Carolina, and stating that the North Carolina courts lacked specific and general personal jurisdiction over the subsidiaries); J. McIntyre Machinery, Ltd. v. Nicastro, No. 09-1343, 2011 WL 2518811, at *9-10 (U.S. June 27, 2011)(finding that New Jersey was "without power to adjudge the rights and liabilities of J. McIntyre, and its exercise of jurisdiction would violate due process," when the facts "d[id] not show that J. McIntyre purposefully availed itself of the New Jersey Market" when the "respondent's claim of jurisdiction center[ed] on three facts: The distributor agreed to sell J. McIntyre's machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey," and when "[t]he British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State").[10]  The Court will therefore grant THI of Baltimore's motion to dismiss Walker's SAC as to it.

## III.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER FLTCH.

Walker argues that there is substantial evidence that FLTCH purposefully entered New Mexico and transacted a great deal of business there.  She asserts that FLTCH wholly owns THI of

_____

[10] THI of Baltimore and FLTCH filed a Notice of Filing of Supplemental Authority Regarding Motions to Dismiss for Lack of Personal Jurisdiction, filed June 30, 2011 (Doc. 337). They attached two cases, Goodyear Dunlop Tires Operations, S.A. v. Brown et ux. Co-Administrators of the Estate of Brown and J. McIntyre Machinery, Ltd. v. Nicastro.

Baltimore, that FLTCH filed New Mexico income tax returns, that FLTCH received regular updates from Zack, that Zack presumes that Foreman controls her employment, and that the director-and-officer liability insurance is held in the name of FLTCH and covers all nursing homes as well as FAS, FCC, THI of New Mexico, FLTCH and THI of Baltimore.  FLTCH argues that none of these contentions, standing alone or together, demonstrate that FLTCH is subject to personal jurisdiction in New Mexico.

Walker has not made a prima-facie showing that the Court has personal jurisdiction over THI of Baltimore, because Walker has not demonstrated that FLTCH has contacts with New Mexico sufficient to satisfy due-process concerns.

FLTCH wholly owns THI of Baltimore.  See Nursing Facility Licensure Application at 2. FLTCH is the sole member of FAS, which has no subsidiaries.  See FAS' Answers to Interrogatories, Interrogatory No. 14.  THI of Baltimore is the sole member of FCC, which has no subsidiaries.  See FCC's Answers to Plaintiff's First Interrogatories, Interrogatory No. 15.  THI of Baltimore wholly owns THI of New Mexico.  See Nursing Licensure Application at 2, 4.  During the relevant time period, THI of New Mexico wholly owned THI of Hobbs.  See Nursing Licensure Application at 2, 4.  Walker has put forth evidence that FAS, FCC, and THI of New Mexico are subject to personal jurisdiction in New Mexico, and FLTCH does not dispute this assertion. See, e.g., Clinical Support Agreement between FCC and THI of Hobbs, filed March 25, 2011 (Doc. 248, Ex. 4(a)); Administrative Support Agreement between FAS and THI of Hobbs, filed March 25, 2011 (Doc. 248, Ex. 4(b)).  FLTCH's status as the sole member of THI of Baltimore and FAS, in itself, is not sufficient for personal jurisdiction over FLTCH.  See Alto Eldorado P'ship v. Amrep, 138 N.M. at 618, 124 P.3d at 596 ("Amrep's New Mexico subsidiaries are also wholly owned.  Even this fact, alone, is insufficient for personal jurisdiction over Amrep, as we will not subject passive

-44-

investors to our jurisdiction solely on the basis of their investment."). <u>See</u> <u>Jemez Agency, Inc. v.</u> <u>CIGNA Corp.</u>, 866 F. Supp. at 1343 ("The general rule, however, is that 'judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation[, even if] the parent owns all of the subsidiary's stock.'" (citing <u>Restatement (Second)</u> <u>of Conflicts of Laws</u> § 52 cmt. b (1971)). Although FLTCH's status as a sole member of FAS and THI of Baltimore is a contact with New Mexico, this contact does not itself give the Court personal jurisdiction over FLTCH.

In her deposition, Zack testified that, though she has no direct supervisor, she presumes Foreman could ask her to become dis-associated and that she keeps Foreman "apprised of what's going on." Zack Depo. at 6:19-23, 20:17-21:13, 23:11-20. There is no evidence that Zack conveyed information specifically about the New Mexico corporate entities to Foreman or that she was in New Mexico when she spoke to Foreman. There is no evidence tying these conversations to New Mexico. Instead, there is evidence that FLTCH does not establish any personnel or payroll policies or control personnel issues of the entities in which it has a membership or shareholder interest, that the officers, directors, managers and employees of the other named Defendants act independently in their own interests and do not take direction from FLTCH, and that the formal legal requirements of the other named Defendants as entities separate and independent from FLTCH are observed. <u>See</u> Gonzales Decl. ¶¶ 9-12, at 3-4. Furthermore, there is no evidence tying Zack's presumption that Foreman could ask her to become dis-associated from FAS to New Mexico. The Court thus finds that this evidence does not show a contact between FLTCH and New Mexico for due-process purposes.

FLTCH is the plan sponsor of the employee benefits offered to the employees of all entities of which it is either a direct or indirect member. <u>See</u> Fundamental Long Term Care Holdings, LLC

-45-

Employee Benefit Options 2007, filed April 13, 2011 (Doc. 262, Ex.20).  In <u>National Production</u>

<u>Workers Union Trust v. CIGNA Corp.</u>, No. 05 C 5415, 2007 WL 1468555 (N.D. Ill. May 16, 2007),

the United States District Court for the Northern District of Illinois addressed the plaintiff's

argument that CIGNA Corp.'s provision "to LINA employees of a pension plan, stock and incentive

plan, a deferred compensation plan, and a health and life insurance plan" were evidence that "the

defendant and LINA [we]re fully intertwined operations."  2007 WL 1468555, at *11.  The Northern

District of Illinois stated:

> Plaintiff cites no case where a court found that the mere provision of these kind of
> employee benefits drops to the bottom line of minimum contacts necessary to subject
> a parent corporation to personal jurisdiction in the forum where its subsidiary does
> business.  In our view, the provision welfare plans by a parent to employees of its
> subsidiary does not constitute the type of day-to-day control or management of the
> subsidiary necessary to satisfy the <u>Central States</u> test.

2007 WL 1468555, at *11.  <u>See</u> <u>Frank v. U.S. West, Inc.</u>, 3 F.3d 1357, 1363 (10th Cir.

1993)("Because it is not beyond the normal parent-subsidiary relationship for the parent to serve as

ERISA Plan Administrator for the subsidiary, we do not think that this policy evidences excessive

control by Defendant over Northwestern Bell's employment practices.").  Based on these cases, and

based on the lack of evidence that FLTCH's role as the plan sponsor is beyond the normal parent-

subsidiary relationship, the Court finds that FLTCH's role as the plan sponsor of employee benefits

offered to employees of all entities of which it is a direct or indirect member is not a contact which

gives the Court personal jurisdiction over FLTCH.

FLTCH has elected to treat THI of Hobbs and similar facilities as "disregarded entit[ies]"

for federal tax purposes.  Tabler Depo. at 60:16-61:16.  <u>See</u> Reply at 9 (stating that, "[b]eginning

in 2006, FLTCH filed its federal election to be taxed as an S Corporation, and then filed Q Sub

elections for all of the entities within FLTCH's group that were not already pass-through entities,"

and that "[t]he purpose of these elections was to permit income . . . for income tax purposes, to pass through and up to FLTCH").  In 2006, FLTCH filed a 2006 PTE New Mexico Income and Information for Pass-Through Entities.  See 2006 PTE at 1.  The 2006 PTE states: "D.  Name and address of registered agent in New Mexico:  NATIONAL REGISTERED AGENTS, INC. 433 PASEO DE PERALTA, SANTA FE, NM 87501."  2006 PTE at 1.  In 2007, FLTCH filed a 2007 PTR New Mexico Income and Information Return for Pass-Through Entities.  See 2007 PTE at 1.  The 2007 PTE listed National Registered Agents Inc. as its registered agent in New Mexico.  See 2007 PTE at 1.  The 2007 PTR listed total property within New Mexico as $45,240,777.00, with the average annual value of inventory as $157,623.00, the average annual value of personal property as $1,200,570.00, the rented property as $43,882,584.00.  See 2007 PTE at 2.  The 2007 PTE lists the total compensation of employees within New Mexico as $23,942,571.00 and the gross receipts within New Mexico as $57,515,744.00.  See 2007 PTE at 2.

In National Production Workers Union Trust v. CIGNA Corp., the Northern District of Illinois found that evidence of an Illinois tax return was "insufficient evidence to subject defendant to general personal jurisdiction in Illinois."  2007 WL 1468555, at *8.  The Northern District of Illinois stated:

> The instructions for the tax return require the subsidiaries of a common company to file as a unitary business group under Schedule UB if their operations are dependent on, are integrated with, and contribute to each other (Pl.'s Resp. Mem., Ex. M, Schedule UB).  Although the "purpose" of Schedule UB "is to enable a unitary business group to determine the amount of its unitary business income that is attributable to Illinois" (Pl.'s Resp. Mem. Ex M), at most, the fact that LINA and CGC consider their corporations to be a "unitary business group" for purposes of an Illinois tax return ( see 35 ILCS 5/1501) simply means that the corporate structures of LINA's direct parent, CGC, and LINA are interdependent.  The existence of an interdependent corporate structure for tax reporting purposes fails to shed light on whether CIGNA Corporation exercises "unusual control" over LINA on a day-to-day basis.

> Thus, we do not agree with plaintiff that Schedule UB means that defendants acknowledge that "despite their being formally separate corporate entities, they are acting as one" (Pl.'s Resp. Mem. at 8). The litmus test of <u>Central States</u> is whether a CIGNA Corporation would reasonably foresee being haled into Illinois courts simply because it filed a tax return with LINA in Illinois based on LINA's business as its subsidiary. We don't think the Schedule UB evidence satisfies this litmus test.

2007 WL 1468555, at *8. The Northern District of Illinois also noted that "the Seventh Circuit has held that filing joint returns does not create a basis for subjecting a subsidiary to personal jurisdiction, at least where the subsidiary is not undercapitalized." 2007 WL 1468555, at *9 n.5 (citation omitted)).

FLTCH's filing of New Mexico Income and Information Returns for Pass-Through Entities and its listing of a New Mexico corporation is not a contact with New Mexico sufficient to satisfy due-process concerns. As in <u>National Production Workers Union Trust v. Cigna Corp.</u>, where the Northern District of Illinois found that the evidence of the Illinois tax return was insufficient evidence to subject the defendant to personal jurisdiction in Illinois, because it did not believe that the act of the defendant filing a tax return with its subsidiary in Illinois based on its subsidiary's business would mean that the defendant could reasonably foresee being haled into Illinois courts, FLTCH could not reasonably foresee that it would be haled in court in New Mexico based upon its act of filing Income and Information Return for Pass-Through Entities. Although the 2006 New Mexico PTE Instructions state that corporations electing to be treated as S corporations must file a New Mexico Income and Information Return for Pass-Through Entities if the entity is registered to do business in the state, transacts business in, into or from the state, or derives any income from property or employment in the state, this request does not automatically submit FLTCH to New Mexico courts' jurisdiction. A S corporation is required to file a 2006 PTE even if they merely derive income from property or employment in the state, and are not registered, and do not transact

business in the state.  In other words, a S corporation might own the property -- another corporation

or entity -- yet not transact any business here itself.  The 2006 PTE-TA New Mexico Non-resident

Owner Income Tax Agreement states: "I agree to file New Mexico income tax returns and make

timely payment of all taxes imposed by the State of New Mexico with respect to my share of the

New Mexico income of the entity named above.  I also agree to be subject to the jurisdiction of the

State of New Mexico for purposes of the collection of unpaid income tax, related penalties and

interest."  As this agreement suggests, the State of New Mexico is not confident it has jurisdiction

over the nonresident entities without the agreement.

     FLTCH has not filed, nor has it ever sought to file, Articles of Incorporation or Articles of

Organization with the State of New Mexico at any time; it has never been incorporated or regulated

to do business in New Mexico at any time; it is not authorized, and has never been authorized, to

do business in New Mexico; and it is not and has never been engaged in the transaction of any

business or the performance of any services in the State of New Mexico.  <u>See</u> Gonzales Decl. ¶ 5,

at 2.  FLTCH is not, and has never been, a resident of New Mexico and it has never been required

to maintain, and has never maintained, any mailing address or phone listing in the State of New

Mexico at any time.  <u>See</u> Gonzales Decl. ¶ 7, at 3.  FLTCH does not maintain, and has never

maintained a place of business, in New Mexico, and does not have, and has never had, an agent or

employee who was based in New Mexico, and it has never contracted to supply services or things

in New Mexico. <u>See</u> Gonzales Decl. ¶ 7, at 3.  "FLTCH does not own or lease, and has never owned

or leased, any real property in New Mexico, and has never paid any property taxes in New Mexico."

Gonzales Decl. ¶ 8, at 3.  FLTCH does not own or lease, and has never owned or leased, any

equipment located in New Mexico and does not have, and has never had, any accounts with any

financial institutions in New Mexico. <u>See</u> Gonzales Decl. ¶ 8, at 3.  "FLTCH has no employees, and

thus has no payroll, benefits, personnel or training departments.  Consequently, FLTCH does not

prepare or issue paychecks to any employees of its subsidiaries.  FLTCH also does not establish any

personnel or payroll policies, or control the personnel issues of the entities . . . ."  Gonzales Decl.

¶ 9, at 3.  FLTCH does not pay the salaries, expenses, or losses of any of the named Defendants.

See Gonzales Decl. ¶ 9, at 3.  It appears that the only property that FLTCH owns in New Mexico

is its subsidiaries.

> [T]he State generally collects income tax from nonresidents for New Mexico
> operations of pass-through entities by requiring the operating entities in the State,
> over which it does have personal jurisdiction, to withhold taxes from the net income
> of the nonresident owners before it leaves the State, unless the nonresident owners
> consent to personal jurisdiction in New Mexico solely for tax collection purposes.

Reply at 11 (emphasis in original).  The Court thus finds that FLTCH could not reasonably foresee

that it would be haled in court in New Mexico based upon its act of filing Income and Information

Return for Pass-Through Entities.  See  Nat'l Prod. Workers Union Trust v. CIGNA Corp.,  2007

WL 1468555, at *8.   Furthermore, even if  FLTCH's acts of filing New Mexico Income and

Information Returns for Pass-Through Entities were more substantial contacts with New Mexico

than the Schedule UB in National Production Workers Union Trust v. Cigna Corp., Walker's cause

of action does not arise from FLTCH's filing of New Mexico Income and Information Returns.

Viewed together, FLTCH's sole shareholder status in THI of Baltimore, its filing of New

Mexico Income and Information Return for Pass-Through Entities, and FLTCH's sponsorship of

an employee benefit plan under ERISA to benefit the employees of its subsidiaries are not, alone

or together, sufficient minimum contacts with New Mexico, because these contacts reflect only a

general and typical relationship between a parent corporation and its subsidiaries.  See Alto

Eldorado P'ship v. Amrep, 138 N.M. at 618, 124 P.3d at 596 ("As a general rule, the mere

relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for

subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." (citing Smith v. Halliburton Co., 118 N.M. 179, 182, 879 P.2d 1198, 1201 (1994)).  Because the Court finds that Walker has not made a prima-facie showing that FLTCH has minimum contacts with New Mexico "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," International Shoe Co., 326 U.S. at 316, the Court does not have personal jurisdiction over FLTCH.  Cf. Goodyear Dunlop Tires Operations, S.A. v. Brown et ux. Co-Administrators of the Estate of Brown, 2011 WL 2518815, at *4-7; J. McIntyre Machinery, Ltd. v. Nicastro, 2011 WL 2518811, at *9-10.  The Court will therefore grant FLTCH's motion to dismiss Walker's SAC as to it.

## IV.    THE COURT WILL NOT ALLOW WALKER TO CONDUCT DISCOVERY REGARDING ALTER EGO.

At the hearing, Mr. Yohalem asked the Court to grant, if the Court rules that it does not believe that, at this moment, it has personal jurisdiction over these Defendants, Walker leave to obtain discovery from the two shareholders of FLTCH to determine whether they are controlling operations in a way where Walker could allege an alter ego claim.  The Court is not precluding Walker from conducting additional discovery regarding alter ego in this case, but it will not keep these two Defendants in the case while Walker conducts discovery.  It may be that Walker's discovery on her substantive claims will naturally be related to, or the same discovery on, the issue of alter ego, but this case has been pending since January, 2009, and discovery will soon close.  The parties have already conducted much discovery, and the Court is reluctant to delay granting these motions further to allow Walker to conduct further discovery into a new issue.  The Court will grant the motions, and if Walker's discovery on her case brings to light evidence related to the alter-ego issue, the Court can consider those developments at that time.

**IT IS ORDERED** that: (i) Defendant THI of Baltimore, Inc.'s Motion to Dismiss Pursuant to Rules 12(b)(1), (2), and (6), filed February 2, 2011 (Doc. 183), is granted in part and denied in part; and (ii) Defendant Fundamental Long Term Care Holdings, LLC's Motion to Dismiss Pursuant to Rules 12(b)(1), (2), and (6), filed February 25, 2011 (Doc. 211), is granted in part and denied in part.   The Court lacks personal jurisdiction over Defendant THI of Baltimore, Inc. ("THI of Baltimore") and Defendant Fundamental Long Term Care Holdings, LLC ("FLTCH").   Because the Court lacks personal jurisdiction over THI of Baltimore and FLTCH, the Court will not address whether it has subject-matter jurisdiction over Plaintiff Sarah Walker's claims against THI of Baltimore and FLTCH, or whether Walker's Second Amended Complaint ¶ 3, at 2, filed December 14, 2009 (Doc. 50) states a claim upon which relief may be granted against THI of Baltimore and FLTCH.   The Court is not precluding Walker from conducting additional discovery regarding alter ego in this case, but it will not keep THI of Baltimore and FLTCH in this case while Walker conducts discovery.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Katherine E. Murray
Santa Fe, New Mexico

-- and --

Daniel Yohalem
Richard Rosenstock
Santa Fe, New Mexico

     *Attorneys for the Plaintiffs*

-52-

Danny Jarrett
Trent A. Howell
Jackson Lewis, LLP
Albuquerque, New Mexico

-- and --

Lori D. Proctor
Johnson, Trent, West & Taylor, LLP
Houston, Texas

> *Attorneys for Defendants THI of New Mexico at*
> *Hobbs Center, LLC and THI of New Mexico, LLC*

Barbara G. Stephenson
Quentin Smith
Sheehan & Sheehan, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants Fundamental Administrative Services, LLC,*
> *Karen Hood (Miller), Debbie Lothridge, and Diana Melton*

John A. Bannerman
Margaret A. Graham
Bannerman & Johnson, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants Jaime Andujo and Fundamental*
> *Clinical Consulting, LLC*

Colin T. Cameron
Rubin, Katz Law Firm
Santa Fe, New Mexico

-- and --

Rick L. Brunner
Columbus, Ohio

> *Attorney for Defendants Diana Melton, Jaime Andujo, Debbie Lothridge, and*
> *Karen Hood (Miller)*